UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NICHOLAS K. MERIWETHER, :
:
       Plaintiff, :
: Case No. 1:18-cv-753
       vs. :
: Judge Susan J. Dlott
THE TRUSTEES OF SHAWNEE STATE : Magistrate Judge Karen L. Litkovitz
UNIVERSITY, ET AL. :
:
       Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JANE DOE AND SEXUALITY AND GENDER ACCEPTANCE'S
MOTION TO INTERVENE AS DEFENDANTS**

     Jane Doe and Sexuality and Gender Acceptance (SAGA) seek to intervene in this case to safeguard the right of all students at Shawnee State University, including those who are transgender, to equal and respectful treatment by faculty. Simultaneously with this motion, Jane Doe also moves to proceed pseudonymously.

     1.     Jane Doe is the transgender student at the center of this lawsuit. Ms. Doe's complaint about Professor Meriwether's differential treatment of her because she is transgender precipitated the investigation and disciplinary action Meriwether alleges violates his legal rights.

     2.     SAGA is a student-led organization at Shawnee State University founded in 2009. The organization is dedicated to promoting diversity and understanding by giving a voice to the LGBTQ students at Shawnee. SAGA furthers its mission by hosting educational programming and activities on campus, and advocating that Shawnee adopt and enforce policies that create a safe and welcoming learning environment for all students, including LGBTQ students.

     3.     Ms. Doe and SAGA seek to intervene to help protect the policies and practices that ensure transgender students at Shawnee have equal access to the educational opportunities at

Shawnee and highlight the harms caused by Professor Meriwether's conduct through the stories of transgender students, including Ms. Doe and other transgender members of SAGA.

4. Ms. Doe and SAGA seek to intervene as of right under Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention under Federal Rule of Civil Procedure 24(b).

5. Ms. Doe and SAGA satisfies all requirements for intervention of right under Rule 24(a): The motion to intervene is timely, Ms. Doe and SAGA have substantial legal interests in this case, denial of this motion to intervene would impair Ms. Doe's legal interests as well as those of SAGA's transgender members, and although Ms. Doe and SAGA share the same goal—dismissal of Meriwether's claims—with the existing Defendants, Shawnee will not make the same arguments as Ms. Doe and SAGA in defending against those claims.

6. Permissive intervention under Rule 24(b) would also be appropriate because Ms. Doe and SAGA seek to advance defenses that share common questions of law and fact with the main action. Here, Ms. Doe and SAGA intend to argue that, as a matter of law, Shawnee's policies and conduct are consistent with the First Amendment and state law. Similarly, if this case proceeds to discovery, Ms. Doe and SAGA intend to demonstrate the significant harm Professor Meriwether has caused Ms. Doe and other transgender students on campus.

7. Ms. Doe and SAGA submit a conditional answer, attached as Exhibit 1, in order to comply with Rule 24(c), but intend to separately seek to dismiss Meriwether's complaint, pursuant to Rule 12(b)(6), as each of his claims fail to state a cause of action as a matter of law.

8. Ms. Doe and SAGA have conferred with the parties to determine their positions with respect to this motion to intervene. Plaintiff opposes this motion and Defendants take no position.

For the foregoing reasons, as well as those expressed in the accompanying memorandum of law, Jane Doe and SAGA respectfully urges this Court to GRANT this motion and permit them to intervene in this case.

Dated: December 24, 2018

Respectfully submitted,

/s/ Jennifer L. Branch
Jennifer L. Branch #0038893
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
(513) 621-9100 (tel)
(513) 345-5543 (fax)
Jbranch@gbfirm.com

Adam G. Unikowsky (*pro hac vice* forthcoming)
Michael E. Stewart
Jennifer J. Yun
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000 (tel)
(202) 639-6066 (fax)
aunikowsky@jenner.com

Shannon P. Minter (*pro hac vice* forthcoming)
Asaf Orr (*pro hac vice* forthcoming)
Christopher F. Stoll (*pro hac vice* forthcoming)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street Suite 370
San Francisco, California 94102
(415) 392-6257 (tel)
(415) 392-8442 (fax)
sminter@nclrights.org
aorr@nclrights.org
cstoll@nclrights.org

*Attorneys for JANE DOE and SEXUALITY AND GENDER ACCEPTANCE*

3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS K. MERIWETHER, | : | |
| Plaintiff, | : | |
| | : | Case No. 1:18-cv-753 |
| vs. | : | |
| | : | Judge Susan J. Dlott |
| THE TRUSTEES OF SHAWNEE STATE UNIVERSITY, ET AL. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF JANE DOE AND SEXUALITY AND GENDER ACCEPTANCE'S MOTION TO INTERVENE AS DEFENDANTS

Jane Doe and Sexuality and Gender Acceptance (SAGA) seek to intervene in this case to safeguard the right of all students at Shawnee State University, including those who are transgender, to equal and respectful treatment by faculty. Ms. Doe is at the center of this case. Professor Meriwether's suit alleges that Shawnee State University ("Shawnee") improperly required him to use female pronouns in addressing a transgender female student; Ms. Doe is that student. SAGA is a student organization at Shawnee that advocates for LGBT students. Its members include Ms. Doe and other transgender students. Thus, this case will determine how Ms. Doe and other similarly situated SAGA members will be treated by their university. Ms. Doe and SAGA seek to intervene on Shawnee's side; they do not intend to pursue affirmative claims in this case. This Court should permit Ms. Doe and SAGA to intervene as of right because their significant legal interests will not be adequately represented by the current parties, or alternatively, grant permissive intervention because the defenses Ms. Doe and SAGA intend to raise share common questions of law and fact with the underlying case.

## FACTUAL BACKGROUND

Jane Doe is a young transgender woman and has been living as female in all aspects of her life for over five years. (Doe Decl. ¶¶ 6, 8-10.) Over that time, she has legally changed her name and corrected her identity documents to accurately reflect her female identity. (Doe Decl. ¶ 9.)

Ms. Doe enrolled at Shawnee beginning in the Spring 2017 semester, four years after her gender transition. (Doe Decl. ¶ 10.) She is listed as female in her student records and treated as a female student by Shawnee in all respects. (Doe Decl. ¶ 10.) During the Spring 2018 semester, Ms. Doe enrolled in Professor Meriwether's Political Philosophy course because the course fulfilled a general education requirement and she was interested in the subject. (Doe Decl. ¶ 12.) Prior to this class, Ms. Doe had never met or interacted with Professor Meriwether. (Doe Decl. ¶ 12.)

On the first day of class, January 9, 2018, Ms. Doe raised her hand to participate in the class discussion and Professor Meriwether incorrectly referred to Ms. Doe as "sir." (Doe Decl. ¶ 14.) Not wanting to call too much attention to herself, Ms. Doe decided not to correct Professor Meriwether at that time. (Doe Decl. ¶ 13.) After class, Ms. Doe approached Professor Meriwether and informed him that she is a woman and asked that he use female honorifics. Professor Meriwether refused. (Doe Decl. ¶ 14.) Ms. Doe showed Professor Meriwether her driver's license, which states that Ms. Doe is a female and confirms that Ms. Doe is legally recognized as female by the State of Ohio. (Doe Decl. ¶ 14.) But Professor Meriwether continued to insist on using male honorifics. (Doe Decl. ¶ 14.)

Ms. Doe's interaction with Professor Meriwether led to a cascade of negative consequences for Ms. Doe, both in and outside of Professor Meriwether's class. She dreaded participating in Professor Meriwether's class because of his refusal to use the correct gender

2

honorifics for her, but felt compelled to continue participating because Professor Meriwether grades students on class participation. (Doe Decl. ¶ 18.) She also was concerned that her classmates would notice and take cues from the differential treatment she received from Professor Meriwether. (Doe Decl. ¶ 19.) Indeed, on several occasions, her classmates copied Professor Meriwether's incorrect use of honorifics and pronouns for Ms. Doe, mistakenly using male honorifics and pronouns. (Doe Decl. ¶ 19.)

Being singled out and treated disrespectfully also caused Ms. Doe significant psychological strain and distress, including an increase in both the severity and duration of her gender dysphoria. (Doe Decl. ¶ 20.) She had regular crying spells outside of class and was in a constant state of emotional exhaustion. (Doe Decl. ¶ 20.) That exhaustion in turn caused her to withdraw from friends and social activities that she previously enjoyed. (Doe Decl. ¶ 20.)

A few weeks after her initial interaction with Professor Meriwether, Ms. Doe reported Professor Meriwether's discriminatory mistreatment to Douglas Shoemaker, the Deputy Title IX Coordinator at Shawnee. (Doe Decl. ¶ 16.) Shortly thereafter, Ms. Doe was informed that Shawnee was investigating her complaint, and she provided a statement as part of the investigation. (Doe Decl. ¶ 16.)

Ms. Doe is a member of SAGA, a student-led organization at Shawnee that advocates for and engages in public education efforts on issues affecting LGBT people. (Doe Decl. ¶ 17; Keniston Decl. ¶¶ 3, 8-10.) SAGA regularly meets with administrators at Shawnee to discuss the needs and concerns of its members, which include Ms. Doe and other transgender students, particularly when specific issues or incidents arise. (Keniston Decl. ¶¶ 9, 12.) SAGA also advocates for Shawnee to adopt and implement policies that promote the health and well-being of its LGBT members and all LGBT students at the university, including fostering a safe and

3

welcoming learning environment. (Keniston Decl. ¶ 9.) SAGA complements that advocacy with public education and social events on campus to inform the community about issues affecting LGBT people, including the importance of referring to transgender people by their correct name and pronouns as well as the harms caused by not doing so. (Keniston Decl. ¶¶ 6-8.) After Ms. Doe shared her experience with some of her peers at SAGA, SAGA met with Christina Jones, Coordinator of the Women's & Gender Equity Center at Shawnee, and Tiffany Hartman, the Director of Student Life, to express the concerns of their members that transgender students were being mistreated by Professor Meriwether and to ensure that Shawnee understood this was an important issue for transgender students and should be taken seriously. (Keniston Decl. ¶¶ 10-12.)

Professor Meriwether's actions have limited the courses that Ms. Doe and SAGA's other transgender members are willing to take. (Keniston Decl. ¶ 13.) Ms. Doe would have taken other classes with Professor Meriwether because she is interested in the courses he teaches, but now will only consider doing so if Professor Meriwether refers to her by the correct honorifics. (Doe Decl. ¶ 22.) Likewise, other transgender members of SAGA will be deterred from taking Professor Meriwether's courses if he mistreats transgender students as he mistreated Ms. Doe. (Keniston Decl. ¶ 13.) Some of SAGA's transgender members, however, may not be able to avoid registering for a class with Professor Meriwether because he regularly teaches "Ethics in Public/Private Life," one of only three classes that fulfills Shawnee's graduation requirement in the category of Ethical Insight & Reasoning. (Keniston Decl. ¶ 14.)

Shawnee concluded its investigation of Professor Meriwether's mistreatment of Ms. Doe in May 2018. (Compl. ¶ 214 & Ex. 13.) Based on the findings of that investigation, Shawnee decided to issue a written warning to Professor Meriwether for his conduct. (Compl. ¶ 235 &

4

Ex. 20.) On November 5, 2018, Professor Meriwether sued Shawnee seeking a judicial declaration that Shawnee cannot discipline him for discriminating against transgender students.

In response, a small group of faculty have expressed support for Professor Meriwether. (Doe Decl. ¶ 23.) Ms. Doe and the other transgender members of SAGA are increasingly concerned that other professors may start mistreating transgender students or otherwise create a hostile environment for transgender students in their classes. (Doe Decl. ¶ 23; Keniston Decl. ¶ 15.) In fact, Ms. Doe already dropped a course for next semester, deciding instead to take that class when it is taught by a professor that has not publicly supported Professor Meriwether's unwillingness to comply with Shawnee's policy. (Doe Decl. ¶ 23.)

## ARGUMENT

Federal Rule of Civil Procedure 24 establishes two avenues for a party to intervene in pending litigation: intervention of right or permissive intervention. Fed. R. Civ. P. 24(a)-(b). "Rule 24 should be broadly construed in favor of potential intervenors." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (internal quotation marks omitted)).

In this case, Ms. Doe and SAGA seek to intervene on the side of Shawnee. They do not seek to pursue any affirmative claims for relief. Ms. Doe and SAGA readily satisfy the requirements for both intervention of right and permissive intervention.

### A. Ms. Doe and SAGA are entitled to intervene as defendants as of right.

To intervene as of right, a proposed intervenor must establish "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). Ms. Doe and SAGA meet those requirements.

5

First, this motion is timely. Whether a motion to intervene is timely is evaluated in light of five factors: "1) the point to which the suit has progressed; 2) the purpose for which intervention is sought; 3) the length of time preceding the application during which proposed intervenors knew or should have known of their interest in the case; 4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and 5) the existence of unusual circumstances militating against or in favor of intervention." *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990) (quotation marks omitted)). Here, Ms. Doe and SAGA diligently filed their intervention motion only six weeks after the complaint was filed, and before Shawnee's deadline for answering or moving to dismiss. Given that discovery has not yet begun, there is no possibility of prejudice. Thus, the motion is plainly timely. Indeed, courts within this Circuit routinely grant intervention to parties who sought to intervene at later points in the litigation.[1]

Second, both Ms. Doe and SAGA have a "substantial legal interest" in this case. Both the Sixth Circuit and a court in this District have found the requisite substantial legal interest under Rule 24 on closely similar facts to this case. In *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), white students sued the University of Michigan and its law school, alleging their race-conscious admissions policies violated the Equal Protection Clause. *Id.* at 396-97. Students who were potential beneficiaries of the race-conscious admissions policies, as well as pro-affirmative action organizations, moved to intervene. *Id.* at 397. The court held that the proposed intervenors had a right to intervene under Rule 24(a). It explained that "in this circuit

---

[1] *See, e.g. Morelli v. Morelli*, No. 2:00–CV–988, 2001 WL 99859, at *2 (S.D. Ohio Feb. 1, 2001) (two months); *Ind. Ins. Co. v. Midwest Maint.*, No. C–3–99–351, 2000 WL 987829, at *2 (S.D. Ohio Jan. 7, 2000) (three months); *Hubbard v. Elec. Arts, Inc.*, No. 2:09–CV–233, 2011 WL 3469118 (E.D. Tenn. Aug. 5, 2011) ("several" months).

6

we subscribe to a rather expansive notion of the interest sufficient to invoke intervention as of right." *Id.* at 398 (internal quotation marks omitted). It further held that "Rule 24(a)(2)" does not "require[] a specific legal or equitable interest." *Id.* (quotation marks omitted). It concluded that the proposed intervenors' "specific interest in the subject matter of this case, namely their interest in gaining admission to the University," was a "substantial legal interest" for purposes of Rule 24. *Id.*

Likewise, in *Board of Education of the Highland Local School District v. United States Department of Education* ("*Highland*"), No. 2:16-CV-524, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016), a school refused to allow a transgender girl to use the same restrooms used by other female students. The Department of Education concluded that the school violated Title IX, precipitating the school's lawsuit against the Department. *Id.* at *2. The court granted the student's motion to intervene, finding that the student's "interest in being treated in a non-discriminatory manner by her school . . . easily satisfied" the requirement of showing a substantial interest. *Id.* at *3.

Ms. Doe is similarly situated to the intervenors in *Grutter* and *Highland*. Precisely like the intervenors in *Grutter*, Ms. Doe is the beneficiary of a university policy that the plaintiff challenges in a lawsuit against the university, and seeks to intervene, on the side of the university, in order to defend the constitutionality of its policy. Indeed, Ms. Doe's interest is more concrete than the interest of the proposed intervenors in *Grutter*—unlike those intervenors, who merely hypothetically stood to benefit from the university's affirmative action policy, Ms. Doe is the very individual whose interests are put at stake by Professor Meriwether's complaint. Likewise, Ms. Doe is similarly situated to the intervenor in *Highland*: she is a transgender student who asserts an interest in being treated in a non-discriminatory manner.

7

SAGA, too, has a substantial interest in this lawsuit. SAGA is not required to establish its Article III standing in order to intervene, given that it does not seek any relief beyond what Shawnee seeks: dismissal of this suit. *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[A]n intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."); *Grutter*, 188 F.3d at 398 ("[A]n intervenor need not have the same standing necessary to initiate a lawsuit."). Nevertheless, SAGA does have standing. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 181 (2000). Ms. Doe and other transgender students who are being constructively excluded from Professor Meriwether's classes have standing in their own right; the interests at stake are directly germane to SAGA's purpose of supporting transgender students on campus; and the relief requested—dismissal of Professor Meriwether's suit—does not require the participation of an individual student.

Because SAGA's interests mirror Ms. Doe's interests, SAGA has the requisite "substantial interest" in this case as well. In *Grutter*, the court held that not only students, but also a nonprofit organization devoted to preserving opportunities for minority students, had a right to intervene. 188 F.3d at 397. As the Sixth Circuit subsequently explained, the organization had argued, as its basis for intervention, "that its members would be directly affected by the outcome of the litigation." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 783 (6th Cir. 2007) (citing *Grutter*, 188 F.3d at 397). Thus, the organization, "by virtue of its minority members, enunciated a specific interest in the subject matter of the case."

8

*Id.* (internal quotation marks and alterations omitted). SAGA is similarly situated to the organization that intervened in *Grutter*—by virtue of its transgender members, SAGA has a specific interest in this case.

Third, denying Ms. Doe and SAGA's request to intervene would impair their respective interests. "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Grutter*, 188 F.3d at 399. For instance, in *Grutter*, the court held that the reduction of "access to the University" for minority students was "more than sufficient to meet the minimal requirements of the impairment element." *Id.* at 400 (quotation marks omitted). Likewise, in *Highland*, the court held that the possibility that a ruling in the district's favor would prevent the transgender student from asserting her own constitutional and statutory rights was sufficient to establish impairment. 2016 WL 4269080, at *3. Here, as in *Grutter*, Ms. Doe and other SAGA members face the prospect of a court order invalidating a university policy that protects their rights, leading to mistreatment by Professor Meriwether and potentially other professors. Further, as in *Highland*, a victory for Professor Meriwether would inhibit Ms. Doe and other SAGA members from pursuing their own claims in a future case that Professor Meriwether's conduct violates Title IX, the Equal Protection Clause, or applicable disability discrimination laws. Thus, Ms. Doe and SAGA satisfy the impairment requirement.

Fourth, Shawnee will not adequately represent Ms. Doe's and SAGA's interests in this case. To establish a right to intervene, "the proposed intervenors are not required to show that representation will in fact be inadequate." *Grutter*, 188 F.3d at 400 (internal quotation marks omitted). "Indeed, [i]t may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* (internal

9

quotation marks omitted). "[T]he proposed intervenors' burden in showing inadequacy is minimal," and "[t]he proposed intervenors need show only that there is a *potential* for inadequate representation." *Id.* (emphasis added). For instance, in *Grutter*, the court held that the defendants' prediction that "the University is unlikely to present evidence of past discrimination by the University itself or of the disparate impact of some current admissions criteria" was sufficient to show inadequacy. *Id.* at 401.

Here, there is at least a potential for inadequate representation. Shawnee is Professor Meriwether's employer and, as a result, has significantly different interests and motivations in this case than Ms. Doe and SAGA. Seeking to limit its legal liability, Shawnee will defend its authority to enforce antidiscrimination policies, like the one at issue in this case. But that same interest—limiting its legal liability—also gives Shawnee an incentive to disclaim any legal obligation to maintain and implement antidiscrimination policies that protect transgender students. Concretely, Ms. Doe and SAGA intend to argue that disparate treatment of students solely because they are transgender is barred by Title IX, the Equal Protection Clause, and disability discrimination laws. This is relevant to whether Shawnee has articulated a legitimate basis for its policy for purposes of First Amendment balancing; it may also establish that Professor Meriwether may not pursue his state-law claims to the extent they conflict with federal law. Shawnee, however, may be reluctant to advance these arguments, given that it would be the *defendant* in any Title IX, Equal Protection Clause, or disability discrimination claim concerning treatment of transgender students.

At a minimum, the parties' arguments are likely to have a different focus, given that Shawnee is a public entity and the proposed intervenors are not. Both the Sixth Circuit and courts in this District have consistently held that the possibility that a private intervenor may

10

make different arguments from a governmental litigant was sufficient to establish inadequate representation. *Mich. State AFL-CIO*, 103 F.3d at 1247 ("One would expect that the Chamber, as a target of the statutes' regulations, would harbor an approach and reasoning for upholding the statutes that will differ markedly from those of the state, which is cast by the statutes in the role of regulator."); *Allied Constr. Indus. v. City of Cincinnati*, No. 1:14-CV-450, 2014 WL 11429028, at *5 (S.D. Ohio Nov. 24, 2014) ("[I]t is not difficult to imagine that the private interests of Local 265 and its members may diverge with the public interests of the City"); *Orrand v. Hunt Constr. Grp., Inc.*, No. 2:13–CV–481, 2014 WL 3895555, at *5 (S.D. Ohio Aug. 8, 2014) (because non-governmental intervenor had "private economic concerns which are not shared by the NLRB," and "the NLRB represents and enforces the public interest," "the NLRB's perspective differs from that of the parties to this action"). Here, Shawnee will emphasize a public university's right to control the conduct of its employees. Ms. Doe and SAGA intend to make that argument as well, but they would also emphasize the specific harms of Professor Meriwether's conduct to transgender students—a perspective they are ideally situated to offer. The prospect that they will make different arguments from Shawnee is sufficient to establish inadequate representation.

Finally, the Court should permit both Ms. Doe and SAGA to intervene, because SAGA has a continuing interest in defending the rights of transgender students on campus even after Ms. Doe graduates. Although Ms. Doe and SAGA believe this case presents pure issues of law that should be resolved at the motion to dismiss stage, there is at least the possibility that the case will not have concluded by Ms. Doe's expected graduation in May 2021. At that point, however, Professor Meriwether or the University may argue that the case has become moot with respect to Ms. Doe. Permitting SAGA to intervene will ensure that transgender students at Shawnee have a

voice in this case until its conclusion. *See Franklin Cent. Gay/Straight All. v. Franklin Tp. Cmty. Sch. Corp.*, IP01–1518 C–M/S, 2002 WL 31921332, at *2 (S.D. Ind. Dec. 26, 2002) (presence of Gay/Straight Alliance as organizational plaintiff prevented lawsuit from being mooted by student's graduation); *cf. Pasadena City Bd. of Educ. v. Spangler*, 427 U.S. 424, 430-31 (1976) (intervention by United States prevented lawsuit filed by students from being mooted by their graduation); *Cook v. Colgate Univ.*, 992 F.2d 17, 20 (2d Cir. 1993) ("We have suggested that a student's claim may not be rendered moot by graduation if he or she sued in a 'representational capacity' as the leader of a student organization").

### B. Ms. Doe and SAGA also meet the standard for permissive intervention.

Pursuant to Federal Rule of Civil Procedure 24, the Court "may permit anyone to intervene" who has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention lies in the sound discretion of the trial court, and courts in this district have exercised their discretion liberally to grant permissive intervention.[2] In *Highland*, for instance, the court held in the alternative that the transgender student met the standard for permissive intervention, finding that her claims raised common questions of law and fact and her intervention would promote judicial economy. 2016 WL 4269080, at *4; *see also* Order, *Doe v. Boyertown Area Sch. Dist.*, Case No. 17-cv-1249, (E.D. Pa. May 24, 2017), ECF No. 29 (granting intervention to youth organization advocating for transgender youth in schools); *Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16 C

---

[2] *See, e.g.*, *Brewer v. Republic Steel Corp.*, 513 F.2d 1222, 1224-25 (6th Cir. 1975); *see also Wellington Res. Grp., LLC v. Beck Energy Corp.*, No. 2:212-cv-00104, 2012 WL 2995181 (S.D. Ohio July 23, 2012); *Berk v. Moore*, No. 2:10–CV–1082, 2011 WL 1792534 (S.D. Ohio May 9, 2011); *Shreve v. Franklin Cnty.*, No. 2:10-cv-644, 2010 WL 5173162 (S.D. Ohio Dec. 14, 2010); *Cooey v. Taft*, No. 2:04-cv-1156, 2007 WL 582490 (S.D. Ohio Feb. 20, 2007).

4945, 2016 WL 3269001 (N.D. Ill. June 15, 2016) (granting transgender students' motion to intervene).

Ms. Doe and SAGA have defenses that share common questions of law and fact with the main action. Ms. Doe and SAGA intend to argue that the First Amendment and state law permit Shawnee's policy as a matter of law. If this case proceeds to discovery, they intend to argue, as a factual matter, that Professor Meriwether's conduct is deeply harmful to transgender students on campus. These arguments will address the core questions of law and fact in this case.

Ms. Doe's and SAGA's participation would also promote efficiency and judicial economy. Ms. Doe and SAGA strongly believe that this case should be resolved on the pleadings without discovery. However, if this case proceeds to discovery, there is a strong probability that either party will subpoena Ms. Doe, given that she is at the center of this case. Permitting her to intervene will not delay the case, given that she will likely be required to participate even without intervention. Rather, it will allow her to advocate for her own interests instead of being a bystander.

### C. The Court Should Permit Ms. Doe and SAGA to Move to Dismiss.

Federal Rule of Civil Procedure 24(c) states that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." To comply with this rule, Ms. Doe and SAGA have filed a proposed Answer as an exhibit.

However, Ms. Doe and SAGA intend to file a motion to dismiss. If the Court grants their motion to intervene, the Court should afford Ms. Doe and SAGA the opportunity to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) before filing their Answer on the docket.

CONCLUSION

For the foregoing reasons, Jane Doe and SAGA respectfully request that this Court GRANT this Motion to Intervene.

Dated:  December 24, 2018

Respectfully submitted,

/s/ Jennifer Branch
Jennifer L. Branch #0038893
Gerhardstein & Branch Co. LPA
441 Vine Street, Suite 3400
Cincinnati, OH 45202
(513) 621-9100 (tel)
(513) 345-5543 (fax)
Jbranch@gbfirm.com

Adam G. Unikowsky (*pro hac vice* forthcoming)
Michael E. Stewart
Jennifer J. Yun
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000 (tel)
(202) 639-6066 (fax)
aunikowsky@jenner.com

Shannon P. Minter (*pro hac vice* forthcoming)
Asaf Orr (*pro hac vice* forthcoming)
Christopher F. Stoll (*pro hac vice* forthcoming)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street Suite 370
San Francisco, California 94102
(415) 392-6257 (tel)
(415) 392-8442 (fax)
sminter@nclrights.org
aorr@nclrights.org
cstoll@nclrights.org

*Attorneys for JANE DOE and SEXUALITY AND GENDER ACCEPTANCE*

14

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 24, 2018, a copy of the foregoing pleading, including Jane Doe and SAGA's Brief and Declarations in Support of the Motion to Intervene and the Conditional Answer, was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jennifer L. Branch
Attorney for Defendant-Intervenors
