**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **NICHOLAS K. MERIWETHER,** | : | |
| **Plaintiff,** | : | **CASE NO. 1:18-cv-00753** |
| **v.** | : | **JUDGE DLOTT** |
| **THE TRUSTEES OF SHAWNEE STATE UNIVERSITY, et al.,** | : | **MAGISTRATE JUDGE LITKOVITZ** |
| | : | |
| **Defendants.** | : | |
| | : | |

<u>**DEFENDANTS' MOTION TO DISMISS**</u>

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants respectfully move this Court to dismiss the claims of Plaintiff Nicholas Meriwether in this matter. As set forth in the attached Memorandum in Support, Plaintiff fails to state any claims upon which relief can be granted, and this case should be dismissed in its entirety.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
elsreview@ohioattorneygeneral.gov

HANNAH STONEBURNER (0092480)
Associate Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(877) 647-2550 – Facsimile
Hannah.stoneburner@ohioattorneygeneral.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

MEMORANDUM IN SUPPORT ........................................................................................ 1

I.      Introduction and Plaintiff's factual allegations ................................................... 1

II.     Meriwether's pleading burden and the standard of review ................................... 6

III.    Law & Argument ................................................................................................ 7

      A.    The individually-named members of the Board of Trustees and Department Chair Jennifer Pauley should be dismissed ........................................................... 8

      B.    Meriwether fails to state a claim upon which relief can be granted against any of the Defendants ................................................................................................ 10

            1.    Meriwether's "First Cause of Action" does not state a claim upon which relief can be granted because his refusal to use a pronoun or title in addressing one student in his classroom was not "speech" protected by the First Amendment, and the University was within its rights to direct him on how to address the student, and he did not suffer an adverse employment action ............................................................................................................. 10

            2.    Meriwether's "Second Cause of Action" also fails to state a claim upon which relief can be granted as it does not base a claim upon "speech" protected by the First Amendment, and his claim of "content" or "viewpoint discrimination" and unconstitutional overbreadth are without merit ................................................................................................ 16

            3.    Meriwether's "Third Cause of Action" for "compelled speech" also should be dismissed because his "speech" is not protected by the First Amendment ............................................................................................. 19

            4.    Meriwether's "Fourth Cause of Action" for violation of his rights to freely exercise his religion does not state a claim upon which relief can be granted ................................................................................................ 20

            5.    Meriwether's "Fifth Cause of Action" for being subject to unconstitutional conditions" does not state a claim upon which relief can be granted ........ 21

            6.    Meriwether's "Sixth Cause of Action" and Due Process Claim(s) that the University's non-discrimination policies are "overbroad" or "vague" are without merit and should be dismissed ................................................... 22

7.  Meriwether's "Seventh Cause of Action" for violation of his rights to Equal Protection under the Fourteenth Amendment does not state a claim based upon a suspect classification or fundamental right, and should be dismissed................................................................................................24

8.  Meriwether's "Eighth Cause of Action" for his "Rights of Conscience and Free Exercise of Religion" under the Ohio Constitution's Art. I, § 7, should be dismissed, either based on sovereign immunity grounds, or for prudential reasons ...................................................................................25

9.  Meriwether's "Ninth Cause of Action" for "Breach of Contract" should be dismissed, either on sovereign immunity grounds or because the collective bargaining agreement with the University is enforced exclusively through a grievance process that results in final and binding arbitration...............27

CONCLUSION.........................................................................................................29

CERTIFICATE OF SERVICE .................................................................................30

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................7

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007)....................................................................................6, 7, 9

*Brandenburg v. Housing Auth. of Irvine*,
253 F.3d 891 (6th Cir. 2001) ...........................................................................14

*Brannen v. Kings Local Sch. Dist. Bd. Of Educ.*,
144 Ohio App. 3d 620 (Ohio Ct. App. Warren 2001) .......................................28

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973)...................................................................................17, 23

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)..........................................................................................26

*Connick v. Myers*,
461 U.S. 138 (1983)...................................................................................11, 13

*Dambrot v. Cent. Michigan Univ.*,
55 F.3d 1177 (6th Cir. 1995) .....................................................................17, 23

*Dennison v. Murray State Univ.*,
465 F. Supp. 2d 733 (W.D. Ky. 2006)........................................................15, 16

*Doe v. Cong. of the United States*,
891 F.3d 578 (6th Cir. 2018) .....................................................................20, 21

*Dudenhoefer v. Fifth Third Bancorp*,
692 F.3d 410 (6th Cir. 2012) .............................................................................6

*Elrod v. Burns*,
427 U.S. 347 (1976)..........................................................................................22

*Engquist v. Oregon Dept. of Agriculture*,
553 U.S. 591 (2008)..........................................................................................25

*Fercello v. Cty. of Ramsey*,
612 F.3d 1069 (8th Cir. 2010) .........................................................................15

iii

*Fox v. Traverse City Area Pub. Schs. Bd. of Edn.*,
   605 F.3d 345 (6th Cir. 2010) ...................................................................11

*Frieder v. Morehead State Univ.*,
   770 F.3d 428 (6th Cir. 2014) ...................................................................12

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006)............................................................................ *passim*

*Garner v. City of Cuyahoga Falls*,
   311 Fed. Appx. 896 (6th Cir. 2009).........................................................14

*Goad v. Mitchell*,
   297 F.3d 497 (6th Cir. 2002) .....................................................................6

*Gragg v. Kentucky Cabinet for Workforce Development*,
   289 F.3d 958 (6th Cir. 2002) ...................................................................14

*Hall v. Med. Coll. Of Ohio*,
   742 F.2d 299 (6th Cir. 1984) .....................................................................9

*Hartsel v. Keys*,
   87 F.3d 795 (6th Cir. 1996) .....................................................................15

*Haynes v. City of Circleville*,
   474 F.3d 357 (6th Cir. 2007) ...................................................................14

*Hornbeak-Denton v. Myers*,
   361 Fed. Appx. 684 (6th Cir. 2010) .........................................................16

*Jackson v. Jamrog*,
   411 F.3d 615 (6th Cir. 2005) ...................................................................24

*Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities*,
   825 F.2d 946 (6th Cir. 1987) (en banc) ...................................................26

*Leon v. Boardman Twp.*,
   100 Ohio St.3d 335 (2003) ......................................................................28

*Leonardson v City of E. Lansing*,
   89 F.2d 190 (6th Cir. 1990) .........................................................17, 23, 24

*Lillard v. Shelby County Bd. of Educ.*,
   76 F.3d 716 (6th Cir. 1996) .......................................................................6

*Magley v. Wright*,
   2001 U.S. Dist. LEXIS 4612 (W.D. Mich. Mar. 30, 2001)...................16

iv

*Manning v. Ohio State Library Bd.,*
   62 Ohio St. 3d 24 (1991) ...................................................................................26

*McCloud v. Testa,*
   97 F.3d 1536 (6th Cir. 1996) ...........................................................................22

*Mixon v. Ohio,*
   193 F.3d 389 (6th Cir. 1999) ..............................................................................6

*New Orleans Pub. Serv. Inc. v. New Orleans,*
   491 U.S. 350 (1989)...........................................................................................26

*New York v. Ferber,*
   458 U.S. 747 (1982)......................................................................................17, 23

*Null v. Ohio Dep't of Mental Retardation & Developmental Disabilities,*
   137 Ohio App.3d 152 (Franklin Ct. App. 2000).................................................28

*O'Hare Truck Serv. v. City of Northlake,*
   518 U.S. 712 (1996)...........................................................................................22

*Parate v. Isibor,*
   868 F.2d 821 (6th Cir. 1989) ..............................................................................12

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984)..............................................................................................25

*Pickering v. Bd. of Educ.,*
   391 U.S. 563 (1968)......................................................................................11, 13

*Piggee v. Carl Sandburg College,*
   464 F.3d 667 (7th Cir. 2006) ........................................................................18, 19

*Poppy v. City of Willoughby Hills,*
   96 Fed. Appx. 292 (6th Cir. 2004)......................................................................15

*Reeves v. Shawnee State Univ.,*
   2017 U.S. Dist. LEXIS 29764 (S.D. Ohio March 2, 2017) ...........................25, 26

*Rodgers v. Banks,*
   344 F.3d 587 (6th Cir. 2003) ..............................................................................14

*Savage v. Gee,*
   665 F.3d 732 (6th Cir. 2012) ..................................................................... *passim*

*Speet v. Schuette,*
   7226 F.3d 867 (6th Cir. 2013) ......................................................................17, 19, 23

*Staley v. Jones*,
    239 F.3d 769 (6th Cir. 2001) ...................................................................................19

*VIBO Corp., Inc. v. Conway, et al.*,
    669 F.3d 675 (6th Cir. 2012) ...................................................................................25

*State ex rel. Wilkinson v. Reed*,
    99 Ohio St.3d 106 (2003) ........................................................................................27

*Will v. Mich. Dept. of State Police*,
    491 U.S. 58 (1989)......................................................................................................9

*Wurzelbacher v. Jones-Kelley*,
    675 F.3d 580 (6th Cir. 2012) ...................................................................................15

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     Introduction and Plaintiff's factual allegations.**

Plaintiff Nicholas Meriwether, a Professor at Shawnee State University, filed the present lawsuit after he received a "written warning" following an investigation and the finding that he was treating a transgender student in his classroom in a discriminatory fashion.  Plaintiff also challenges being directed to address that same transgender student using a female title ("Miss" or "Ms.") and pronouns ("she/her") or by not using such pronouns or titles to address any of the students in the class.  Meriwether objects to the latter directive in particular, citing his strongly-held personal, philosophical and/or religious beliefs that the student was born biologically male, and contending the University's investigation and directive lends "credence to cultural ideas Dr. Meriwether does not share or wish to advance."  *Doc. #1,* Comp. ¶ 4.  Meriwether's Complaint asserts nine (9) overlapping claims for relief based on the written warning (a "University disciplinary" action, *Doc. #1,* Comp. ¶ 103) he received for his conduct towards a transgender student in his classroom, and his objections to the "cultural ideas" the directive represents.

Meriwether has been a professor, in various capacities, and member of the Shawnee State University faculty since 1996.  *Doc. #1*, Comp. ¶ 91.  In over 200 paragraphs of factual allegations, Meriwether recounts interactions over a period of two years that he had with his Union and the University's administrators on the issue of transgenderism.  He alleges that in August 2016, he was notified by his then-Union President of a U.S. Department of Education "Dear Colleague" letter on issues of transgenderism, and that his Union President informed faculty members that they could face "disciplinary action from the University if they 'refused to use a [student's] requested name or pronoun.'"  *Doc. #1,* Comp. ¶¶ 104-05.

Based upon this notice from his Union, Professor Meriwether alleges that he contacted

1

Dr. Roberta Milliken, Dean of the University's College of Arts & Sciences, on or around October 27, 2016, inquiring what University policies required of faculty on issues related to gender identity.  *Doc. #1,* Comp. ¶¶ 32, 107.  He alleges that Dean Milliken informed him at that time that faculty must use "a student's preferred pronoun" when addressing the student "regardless of the professor's convictions or views on the subject."  *See id.,* ¶ 109.  On or around November 3, 2016, Professor Meriwether also addressed the issue with Department Chair for the University's Department of English and the Humanities, Dr. Jennifer Pauley.  *See id.,* ¶¶ 36-37, 114.[1]  During this meeting, Professor Meriwether alleges Dr. Pauley made negative statements regarding "Christian doctrines" and "exhibited hostility toward Dr. Meriwether and his religious beliefs."  *See id.,* ¶¶ 115 – 119.

Professor Meriwether states that, following a semester-long sabbatical, he returned to the University in January 2018, and began teaching a class titled "Political Philosophy." *Doc. #1,* Comp. ¶ 122.  On January 9, 2018, during the first meeting of the class, Professor Meriwether answered a student's question, "Yes, sir" because he viewed the student as male.  *See id.,* ¶¶ 124-25.  After class, the student approached Meriwether, and stated that the student was transgender, and asked to be addressed with "feminine titles and pronouns."  *See id.,* ¶ 133.  Professor Meriwether alleges that, when he told the student that "he was not sure students can dictate how professors must refer to them[.]", the student uttered a profanity [c---], and circled Meriwether in a belligerent and threatening fashion, and "promised" to attempt to have Meriwether, a Professor

---

[1] Although Dr. Pauley serves as "Department Chairperson", under the collective bargaining agreement between the University and the Shawnee Education Association, Department Chairs are members of the bargaining unit.  *Doc. #1,* Exhibit 4, Art. 5, § 1.A.3, p. 11.  Consequently, as will be discussed *infra,* the Department Chair is not an administrator of University policy, and cannot impose discipline or materially affect the terms and conditions of Plaintiff's employment any more that other faculty members under the University's shared governance model.

with full tenure rights, fired if he did not "accede" to the student's demands.  *See id.,* ¶¶ 134–37.

Professor Meriwether alleges that, after he notified the Dean of Students of this interaction with

the student, on January 11, 2018, Dean Milliken visited Meriwether's office and asked him to

begin referring to his students by their last names only, and "to eliminate all gender references

from his expression."  *See id.,* ¶¶ 146-47.  Meriwether alleges that he could not agree to this, but

instead proposed that he would continue to refer to his other students by "Mr.", "Mrs.", "Ms." or

"Miss", but that he would refer to the objecting student by the student's last name only, and that

Dean Milliken accepted this proposal.  *See id.,* ¶¶ 126, 150-51.

Meriwether alleges that this arrangement continued for about two weeks, including

multiple classroom interactions with the student, but that on January 25, 2018, Dean Milliken

came to speak with Professor Meriwether and indicated that the student was unhappy with how

Professor Meriwether addressed the student in class and had indicated that student might file a

Title IX grievance.  *Doc. #1,* Comp. ¶¶ 153-54.  Meriwether further alleges that, on February 1,

2018, he inadvertently referred to the student as "Mr.", and then corrected himself.  *See id.,* ¶

157.

Meriwether alleges he was subsequently provided a letter from Dean Milliken, on or

around February 13, 2018, outlining her position on the matter.  *Doc. #1,* Comp. ¶ 174, and letter

attached as Ex. 9.  The letter stated that it was a formal notification and that if Meriwether did

not conform his conduct to the expectations of the University, it may lead to an investigation that

could result in formal disciplinary action.  *See id.*  An investigation was subsequently initiated.

*See id.,* ¶¶ 180-81.  Meriwether alleges that the initiation and conduct of the investigation

violated several provisions of the collective bargaining agreement, *see id.* ¶¶ 182 – 192, but he

does not allege that he challenged any of those actions at that time, instead waiting until after the

3

investigation was completed. The "Investigation Report", attached to the Complaint as Exhibit 13, indicates that Meriwether was interviewed on March 15, 2018. *Doc. #1,* Ex. 13, p. 1. The "Findings" of the report stated succinctly that, "Professor Meriwether has been reluctant to address [the student] using she/her pronouns. When called upon in class, [the student] is referred to as "[last name]" whereas all other students are addressed using formal Mr. Surname and Ms. Surname. … Professor Meriwether refuses to use preferred pronouns when addressing transgender students. He views this as a matter of academic freedom and truth that he intends to exercise. Professor Meriwether on several occasions communicated that he does not recognize transgenderism – he specifically stated that he believes transgender is a lie and mental illness and that Professors should not have to change." *See id.,* Ex. 13, pp. 3- 4. Based on interviews with students, and the interview with Professor Meriwether, he was found to have been in violation of the University's non-discrimination/harassment policy. *See id.,* Ex. 13, p. 4.

On April 18, 2018, Dean Milliken notified Professor Meriwether that based upon the finding of disparate treatment of the student, a conference would be scheduled with him and his Union representative. *See Doc. #1,* ¶ 222, and Ex. 14. Professor Meriwether was allowed to reschedule a meeting with the Dean (and his Union representative) from April 27, 2018, to May 9, 2018. *See Doc. #1,* Ex. 16, p. 1. He subsequently received a report from the Dean on May 29, 2018, summarizing the dates, investigation findings, and the Dean's recommendations. *See id.,* Ex. 17. Professor Meriwether was then permitted to meet with the Provost. *See id.,* Ex. 18. The Provost adopted the Dean's recommendation for disciplinary action, and recommended that a "letter of warning" be placed in Professor Meriwether's personnel file on June 14, 2018. *See id.,* Exs. 19, 20.

On or around June 22, 2018, a written warning was placed in Professor Meriwether's

personnel file, consistent with the collective bargaining agreement between the Union and the University.  *See Doc. #1,* Ex. 20.  Meriwether contacted his Union, and pursued a grievance under the collective bargaining agreement.  *See id.,* Ex. 22.  On or around August 16, 2018, Meriwether's Union filed a formal challenge to the written warning with the University.  *See id.,* Ex. 23.  Meriwether and his Union Representative met with the Provost on August 22, 2018.  *See id.,* Ex. 25.  The grievance was denied, and the decision to issue a written warning was upheld. *See id.*  A subsequent appeal to the University's President was submitted, again consistent with the collective bargaining agreement.  *See id.,* Ex. 26.  Another grievance meeting was held, on or around September 14, 2018, including the attendance of Meriwether and his Union Representative, and a designee for the President, Labor Relations Director David Zender.  *See id.* In affirming the imposition of a written warning, the President's designee noted that the written warning was not based on any inadvertent slip-up or single incident.  *See id.,* Ex. 27, President's Grievance Response dated Oct. 4, 2018.  The letter stated, "Notably, however, Meriwether acknowledged that he refused to stop singling out the student because of her gender identity after receiving the notice of the policy's requirements and options to accommodate his religious beliefs…. Meriwether's differential treatment of the student was a violation of SSU's anti-discrimination policy."  *See id.,* Ex. 27, PAGEID # 337.  Although the Union had a right to take the matter to arbitration under the collective bargaining agreement, no facts are alleged that the Union has sought to take the matter to arbitration, and the time to seek an arbitration of the dispute has passed.

In the present lawsuit, Meriwether seeks to challenge the imposition of a written warning, challenging it under multiple, overlapping legal theories.  Meriwether's Complaint also attaches two Shawnee State University policies and procedures he challenges:    (1) the "Non-

5

Discrimination/Sexual Harassment" Policy, 5.01REV; and (2) "Reporting & Investigating Sexual Assault, Sexual Misconduct & Other Forms of Discrimination", 5.01:2REV.  *Doc. #1, Comp. Exhs. 1 and 2.*  He asserts similar, overlapping claims tied to his challenges to the written warning he received.

As will be discussed below, Meriwether's Complaint fails to allege any viable claim of any deprivation of First Amendment (or any) constitutional rights, and fails to state a claim upon which relief can be granted by failing to allege an adverse employment action, and his lawsuit should be dismissed.

## II.    Meriwether's pleading burden and the standard of review.

In assessing a complaint for failure to state a claim, the Court construes the complaint in the light most favorable to the plaintiff, and determines whether the complaint contains sufficient well-pled factual allegations to state a claim for relief that is plausible on its face.  *See Dudenhoefer v. Fifth Third Bancorp,* 692 F.3d 410, 416 (6th Cir. 2012), *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(internal citation and quotation omitted).  In standard Rule 12 practice, even though so-called "heightened pleading" is not required in § 1983 cases alleging the deprivation of constitutional rights, *see, e.g., Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002), a court is not required to accept a plaintiff's summary or conclusory allegations as true.  *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).  The Court "need not accept as true legal conclusions or unwarranted factual inferences."  *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 555 (2007).  "We do not require heightened fact pleading of specifics, but only enough facts to state a claim

to relief that is plausible on its face… [If] plaintiffs … have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* As the Court later explained in *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [quoting *Twombly,* 550 U.S. at 555]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557 (brackets omitted).
>
> … [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* at 555.

As will be discussed below, under this standard, the Court should dismiss all of Meriwether's claims against the named Defendants, and dismiss this lawsuit.

## III. Law & Argument.

Meriwether's claims should be dismissed. First, the individually-named members of the Board of Trustees, and Department Chair Jennifer Pauley should be dismissed. No specific allegations are made against the Board members, other than the conclusory allegations about their oversight role. The Department Chair, pursuant to the collective bargaining agreement between Professor Meriwether's Union and the University, is a member of the Union, not an administrator or supervisor who takes "disciplinary" action against Professor Meriwether or otherwise "oversees" his duties as a University Professor. On the merits, Meriwether's claims basically amount to a First Amendment retaliation claim, which is without merit based on, among other reasons, the U.S. Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410

(2006).  The "speech" he engaged in was actually nothing more than his own, personally defined "teaching method", which is not speech on a matter of public concern based on long-standing precedent in this Circuit.  Meriwether's attempt to recast his workplace conduct as the free exercise of religion and attacks on Shawnee's standard policies governing discrimination and harassment in the workplace on vagueness and overbreadth grounds simply misunderstands the law in this area, and should be dismissed.  Similarly, his arguments based on Ohio's Constitution and the collective bargaining agreement are either not within this Court's jurisdiction, or should be dismissed for prudential reasons.

### A.    The individually-named members of the Board of Trustees and Department Chair Jennifer Pauley should be dismissed.

The claims against the individually-named Board of Trustees members, and Department Chair Jennifer Pauley, should be dismissed.  Plaintiff asserts no fact, allegation, or even suspicion that any of the Board members were involved in any of the actions at the core of his constitutional challenges.  Nowhere is there an allegation that any of the Board members had anything to do with, or in any way participated in the actions and events that Plaintiff challenges. Similarly, the Plaintiff has not plausibly alleged that any Trustee is authorized to grant any relief he seeks in the Prayer for Relief.  The Complaint only generally alleges that the Trustees have "final policymaking authority for rules and regulations that govern the University" and that the Trustees "have not modified the policies challenged herein."  *See Doc. #1,* Comp. ¶¶ 13 – 16.  In addition, the Complaint names two student Board members, Leen Heresh and Brett Rappold, who under state law have no voting power on the Board.  *See Ohio Rev. Code* § 3362.01(B) ("The student members of the board of trustees of Shawnee State University have no voting power on the board.")

Other than naming the Board members as putative parties, Plaintiff asserts no allegations

against them.  Plaintiff does not allege any specific acts that the Board members had anything to do with developing or instituting the policies he challenges, or that the Board members were involved in communicating with him or carrying out the discipline he challenges under the University's policies.  Having alleged no identifiable facts against the Board members at all, Plaintiff has failed to adequately plead a claim against them, and the Court must dismiss them as parties. *See Twombly,* 550 U.S. at 555.  Lawsuits against state officials in their official capacities are the same as suits against the state itself.  *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989).  It is well settled in the Sixth Circuit that Ohio's public universities are instrumentalities of the state and, consequently, protected by the state's Eleventh Amendment immunity.  *See, e.g., Hall v. Med. Coll. Of Ohio,* 742 F.2d 299, 307 (6th Cir. 1984).  By naming the Board members in their official capacity only, the state becomes the real party in interest by virtue of the Board members' positions because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will,* 491 U.S. at 71.  These defendants should be dismissed.

In addition, Department Chair Dr. Jennifer Pauley should be dismissed.  The Complaint makes the same conclusory allegations that Pauley "possesses the authority and responsibility for governing and regulating faculty in the Department of English and Humanities at the University" and that her duties include "overseeing" Professor Meriwether.  However, the collective bargaining agreement, attached as Exhibit 4 to the Complaint, states that the position of "Department Chairperson", is a position in the faculty bargaining unit.  Doc. #1, Exhibit 4, Art. 5, § 1.A.3, p. 11.  Consequently, the Department Chair is not an administrator of University policy, and cannot impose discipline or materially affect the terms and conditions of Plaintiff's employment any more so than his other faculty colleagues can under academia's shared

governance system. *See, e.g., Doc. #1,* Ex. 4, Coll. Barg. Agreement, Art. 18.

      **B.    Meriwether fails to state a claim upon which relief can be granted against any of the Defendants.**

Each of Meriwether's claims fail to state a claim upon which relief can be granted. Although some of the claims, and controlling case law, overlap, they will be discussed below in the order in which they are pled in Plaintiff's Complaint.

      **1.    Meriwether's "First Cause of Action" does not state a claim upon which relief can be granted because his refusal to use a pronoun or title in addressing one student in his classroom was not "speech" protected by the First Amendment, and the University was within its rights to direct him on how to address the student, and he did not suffer an adverse employment action.**

Meriwether's allegations in his Complaint all relate to "speech" he made as an employee of the University, during a University-offered class, and was not protected by the First Amendment. In his first claim, Meriwether alleges that he has been punished for "expressing his views regarding gender identity." *Doc. #1,* Comp. ¶ 282. However, a plain reading of the Complaint indicates that the <u>only</u> interaction that is the subject of the University's disciplinary policy is Meriwether's refusal to respect the "choice of titles and pronouns" with one student in the context of a classroom. *See id.,* ¶ 283. The simple, ministerial act of using a "title" and/or "pronoun" is not part of academic discourse but instead a simple act of respect. As such, the act is simply part of Meriwether's responsibilities as a Professor at the University, and not a forum for him to express his personal beliefs. In order for a public employee's speech to warrant First Amendment protection (as incorporated through the Fourteenth Amendment and applied to state actors), the employee must show that: (1) his expressions were protected by the First Amendment; (2) he suffered an adverse employment action; and (3) the adverse action was motivated at least in part as a response to the exercise of his constitutional rights. *See Savage v.*

*Gee,* 665 F.3d 732, 738 (6th Cir. 2012), *citing Fox v. Traverse City Area Pub. Schs. Bd. of Edn.*, 605 F.3d 345, 348 (6th Cir. 2010). Meriwether's conduct, in refusing to use a title or pronoun as requested by the student, is not "speech" protected by the First Amendment, and his claim fails on that basis.

Whether a public employee's speech is protected by the First Amendment is a question of law for the court. *See Fox,* 605 F.3d at 350-51. The lengthy factual allegations and attachments to the Complaint give the Court an ample record to resolve this legal issue. For First Amendment protections to apply to a public employee's speech, the employee's speech must be made "as a citizen" and address "a matter of public concern." *Connick v. Myers,* 461 U.S. 138, 146-47 (1983). If the speech was made as a citizen and addresses a matter of public concern, the public employee must also show that his interest in speaking outweighs the government's interest "as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). A government employee's speech is not protected, however, where it is made "pursuant to his duties." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006) (finding that a prosecutor's speech in a memorandum challenging the probable cause to support an affidavit was not protected by the First Amendment because it related to his official duties as a calendar deputy for the prosecutor's office). On this last point, Meriwether cannot satisfy the *Garcetti* requirement because this simple act of the use of titles ("Ms." or "Miss") and pronouns ("she/her") relate to his position as a classroom instructor addressing students of the University in that capacity and are not protected by the First Amendment. Meriwether's "speech" involved one of the simplest, most ministerial acts possible for a University professor – how to address a student in his classroom. As a result, his speech was directly related to his job, and is not protected by the First Amendment.

11

The *Garcetti* case established conclusively that the restrictions the Constitution places upon the government in its capacity as lawmaker and sovereign are <u>not</u> the same restrictions that it places upon the government as an employer.  In *Garcetti,* the Court held that when public employees make statements related to their official duties, "the employees are not speaking as 'citizens' for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.  *Garcetti* and subsequent cases control Meriwether's constitutional claims in this matter, and justify dismissal of his claims.

The Sixth Circuit has also recognized that teaching "methods" are not entitled to First Amendment protections in the way that academic arguments may or may not be protected.  *See Frieder v. Morehead State Univ.,* 770 F.3d 428, 430 (6th Cir. 2014).  "[A] university may constitutionally choose not to renew the contract of a nontenured professor whose pedagogical attitude and teaching methods do not conform to institutional standards." *Parate v. Isibor,* 868 F.2d 821, 827 (6th Cir. 1989).

In *Savage v. Gee,* 665 F.3d 732 (6th Cir. 2012), plaintiff was the Head of Reference and Library Instruction at a public university, who also joined a committee formed to choose a book that would be assigned to all incoming first year students at the university.  *Savage,* 665 F.3d at 735.  Savage served on the committee with, among others, two faculty members and the university's Student Affairs Director.  *See id.*  A disagreement over which book to select resulted in a "discrimination/harassment" complaint being filed by a faculty member against Savage, to which Savage replied by filing his own "complaint of harassment" against multiple faculty members "for filing false complaints of sexual harassment against him." *Savage,* 665 F.3d at 736.  The university investigated both complaints and found no basis for either. *See id.*  Savage

also filed a lawsuit in federal court, alleging retaliation against him by virtue of his speech during his membership on the committee "related to academic scholarship or classroom instruction." *Savage,* 665 F.3d at 738. The Sixth Circuit rejected this argument, holding that his speech related to the committee was pursuant to his duties as Head of Reference and Library Instruction. *See id.* The *Savage* court noted that Savage did not disagree with the finding that his speech on the committee related to his official duties, but instead argued that his speech related to "academic scholarship" or "classroom instruction" that is exempt from the Court's holding in *Garcetti.* The Sixth Circuit rejected this argument. Since his speech was related to a workplace activity, and his role as an instructor in the department was the reason for his presence and his "speech", he had no claim that he was speaking as a "citizen" rather than as an employee.

More broadly, Meriwether's alleged "speech" does not relate to the rights of a public employee to "participate in public affairs", in the language of *Connick v. Meyers*, 461 U.S. 138, 144-45 (1983). The *Garcetti* Court recognized that public employees have a right to participate in the civic discourse as private citizens, and specifically pointed to the classic example of a letter to a newspaper by a school teacher in *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), "whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Garcetti*, 547 U.S. at 422. Public employees are protected by the First Amendment in the same manner as other citizens – they can contribute to the civic discourse as private citizens; "[t]his prospect of protection, however, does not invest them with a right to perform their jobs however they see fit." *Id.*, 547 U.S. at 422. Or, in the language of *Connick,* "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420, *quoting Connick,* 461 U.S. at 154. Meriwether's complaint instead relates to workplace

interactions, which the University has not only the right, but a responsibility to manage under a plethora of workplace rules and regulations.

To the extent that Meriwether claims his speech regarded his own personal concerns, neither does it satisfy the requirement that the speech be "on a matter of public concern." Speech on matters of public concern "involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001). "[S]peech falling into this category includes informing the public that a governmental entity failed to 'discharge its governmental responsibilities' or 'bringing to light actual or potential wrongdoing or breach of public trust [on the part of a governmental entity or any officials therein].'" *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003), *quoting Connick*, 461 U.S. at 148. "The point of the protection afforded public employees is to allow public employees a voice on issues actually affecting and interesting the community at large." *Gragg v. Kentucky Cabinet for Workforce Development*, 289 F.3d 958, 966 (6th Cir. 2002). The summary provided in Meriwether's complaint makes clear he cannot satisfy this requirement either.

Ultimately, however, Meriwether's claim should be dismissed because this is "employee" speech and not "citizen" speech under *Garcetti*. Even if the plaintiff-employee attempts to cast his work-related disputes as "matters of public concern" in an attempt to support a First Amendment claim, he must still plead and prove that their speech is made as a citizen. *See, e.g., Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007) (dog handler's criticism of the police chief's cost-related cutbacks in a canine training program unprotected, although the chief was responsible for the department's ultimate budgetary decisions); and *Garner v. City of Cuyahoga Falls*, 311 Fed. Appx. 896 (6th Cir. 2009) (safety concerns expressed in course of job

were unprotected).  In sum, Meriwether was not speaking as a concerned private citizen on a matter of public importance, and he was not speaking as an academic on a matter of intellectual debate.  He was simply managing his classroom in a formalistic way.

The written warning he challenges also fails to state any adverse employment action to support his First Amendment retaliation claim.  *See Savage,* 665 F.3d at 738; *see also Poppy v. City of Willoughby Hills*, 96 Fed. Appx. 292, 295 (6th Cir. 2004) ("Poppy fails to explain how conduct such as . . . reviewing her time sheets, requesting keys to her office to inspect records kept there, or installing a security camera in the hall outside her office adversely affected her employment and thereby deterred her from exercising her rights under the First Amendment."); *Dennison v. Murray State Univ*., 465 F. Supp. 2d 733, 747 (W.D. Ky. 2006) (in First Amendment retaliation case, court found that "decrease in the size of Plaintiff's office and the use of an 'antiquated' telephone do not constitute a material adverse employment action."); *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1078 (8th Cir. 2010) (in Title VII retaliation case, relocation to smaller office without window found to not be materially adverse employment action).  Meriwether's own conclusory and self-serving allegations about the effect of this investigation on him personally are irrelevant to this analysis. *See Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996) (conclusory statements, subjective beliefs, not evidence of actual injury). The Sixth Circuit has held that *de minimis* actions, including a state agency's review of a plaintiff's confidential files, do not constitute adverse actions that would deter a person of ordinary firmness from engaging in protected speech.  *See Wurzelbacher v. Jones-Kelley,* 675 F.3d 580 (6th Cir. 2012).

Neither are "an employer's commencement of an investigation, [or] . . . criticisms, accusations, threats, or 'bad mouthing'" enough to constitute adverse actions in First

Amendment retaliation cases. *Magley v. Wright*, 2001 U.S. Dist. LEXIS 4612 at *19 (W.D. Mich. Mar. 30, 2001) (citations omitted); *Hornbeak-Denton v. Myers*, 361 Fed. Appx. 684, 688 (6th Cir. 2010) (O'Connor, J., sitting by designation) (in First Amendment retaliation case, finding that "[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement") (*quoting Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)) (alterations in original). Meriwether fails to even allege an effect in the workplace as a result of this investigation. In *Dennison v. Murray State Univ.*, 465 F. Supp. 2d 733 (W.D. Ky. 2006), a First Amendment retaliation case, the court found that a "breakdown in communication" between plaintiff and his supervisor "and any cussing or yelling as a result thereof, does not constitute a material adverse employment action as it did not have a significant detrimental effect on Plaintiff's status." *Id.* at 747.

Meriwether has failed to meet this standard and his First Amendment claim should be dismissed.

> **2.    Meriwether's "Second Cause of Action" also fails to state a claim upon which relief can be granted as it does not base a claim upon "speech" protected by the First Amendment, and his claim of "content" or "viewpoint discrimination" and unconstitutional over breadth are without merit.**

In the second of his multiple claims for relief, Meriwether alleges again that his "speech", the use of a title and pronouns, is protected by the First Amendment, and that the "content" of his speech is subject to "viewpoint discrimination" in violation of the Constitution. *Doc. #1,* Comp. ¶¶ 294. As discussed above, this is "speech" about how to address students, which is not protected under *Garcetti.* The Complaint also generally alleges the policies are overbroad, however. In determining whether a policy is unconstitutionally overbroad, the Court first looks at whether "the regulation reaches a substantial amount of constitutionally protected speech."

*Leonardson v City of E. Lansing*, 89 F.2d 190, 195 (6th Cir. 1990). Meriwether's argument fails on this point, as he only points to his own, unprotected speech to support his claims, and therefore cannot, as a matter of law, demonstrate that the policy prohibits a "substantial amount" of constitutionally protected speech.

When a plaintiff makes a facial challenge to a statue (or policy) as unconstitutional, the "facial" challenge is an "overbreadth" challenge. *See Speet v. Schuette*, 7226 F.3d 867, 872-73 (6th Cir. 2013). "Only a statute that is substantially overbroad may be invalidated on its face." *See id., quoting City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987); *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). Additionally in a facial challenge, a plaintiff must show substantial overbreadth; that is, that the policy prohibits a "substantial amount of protected speech both in an absolute sense and relative to [the policy's] plainly legitimate sweep[.]" *Speet, supra, quoting Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010). Again, since Meriwether's Complaint relies only on his own misunderstood interpretation of the First Amendment, he fails to state a claim that the policy is overbroad.

Second, the Court must address whether the policy is unconstitutionally vague. *See Leonardson, supr*a; *see also Dambrot v. Cent. Michigan Univ*., 55 F.3d 1177, 1183-84 (6th Cir. 1995). Here, the Complaint's alternative argument that the policies are "unconstitutionally vague because they grant University officials unbridled discretion in deciding what constitutes 'gender identity' and 'gender identity discrimination'", *Doc. #1*, Comp. ¶ 327, is also without merit, since Meriwether's own Complaint (and attachments) shows that he was directed multiple times in how to address the student, and he chose not to follow those straightforward directives. He can understand the guidance he was given, he simply disagrees with it and refuses to follow the guidance. The University's ultimate decision upholding the written warning indicated that it

was not imposed because of any inadvertent slip-up or mistake on Meriwether's part, but because he failed to stop unfairly singling out the student in a discriminatory manner as he had been instructed.

The speech in this instance was not rendered by Meriwether during his non-working time, but rather was part of the simple process of how to address a student of the University, during a course taught pursuant to University curriculum and policy requirements, in a University classroom, and by a Professor who was compensated by the University and has been an employee of the University for over 20 years.

Meriwether has not plausibly alleged that he has ever been subject to potential discipline for conduct that occurred outside the University. Nonetheless, courts have even upheld enforcement of such discriminatory harassment by a professor outside the classroom, even in the face of First Amendment challenges. *See Piggee v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006). In *Piggee*, the plaintiff, an instructor at a public community college, upon learning that one of her students was Christian and was gay, placed religious pamphlets in the student's smock during a clinical teaching session, and invited the student to discuss the pamphlets with her at a later time. The exchange occurred at a private beauty salon away from the college campus. The pamphlets referred to, among other things, several Biblical lessons which set forth, from the instructor's standpoint, the "sinfulness" of homosexuality. A college investigation concluded that the student was sexually harassed. The instructor was ordered to cease commenting on sexual orientation and religion, and the instructor's contract was ordered to cease such behavior and her contract was not renewed the following year. The instructor sued in federal court on theories including violation of constitutional free speech, free exercise, and due process rights. The District Court granted summary judgment to the college on all claims, and

the Seventh Circuit Court of Appeals affirmed. The Court rejected Piggee's argument that the college could not restrict her speech because it happened in a private salon. The Court noted that the college had an interest that the employee "stay on message" when interacting with students in their clinical work off campus. *See Piggee,* 464 F.3d at 672. The directives placed on Meriwether were much narrower than that alleged in *Piggee*.

Meriwether's lawsuit is a similar attempt to challenge conduct-related policies, prohibiting discriminatory conduct and harassing conduct, under a superficial First Amendment analysis. The same arguments made here could be made regarding policies on equal employment opportunities, non-discrimination and discriminatory harassment for every employer in the United States who complies with Title IX for institutions of higher education, and Title VII of the Civil Rights Act of 1964, and various other federal and state non-discrimination laws. The vagueness and overbreadth doctrines are prudential doctrines, which are only relied upon by courts to strike down statutes (or policies) "as a last resort." *See Staley v. Jones*, 239 F.3d 769, 776-77 (6th Cir. 2001)(*quoting Broadrick v. U.S.,* 413 U.S. 601, 613 (1973)). "Sustaining a facial attack to the constitutionality of a state law … is momentous and consequential. It is an 'exceptional remedy.'" *Speet, supra, quoting Carey v Wolnitzek,* 614 F.3d 189, 201 (6th Cir. 2010). Meriwether's difference of opinion with the University's administration does not a constitutional claim make.

> **3.    Meriwether's "Third Cause of Action" for "compelled speech" also should be dismissed because his "speech" is not protected by the First Amendment.**

Meriwether does not state a claim for "compelled speech" for similar reasons cited in the arguments above, based above all on *Garcetti.* Neither has Meriwether stated a claim for First Amendment retaliation, because he has not suffered an actionable injury, or "adverse

employment action" under *Savage v. Gee, supra.* On this claim of "compelled speech", Meriwether's argument is particularly weak, since he was offered an alternative by the Dean on multiple occasions to simply stop using all articles/titles (i.e. "Mr." or "Ms.") when he addressed students in his class, and he rejected this option. *See Doc. #1,* Comp. ¶¶ 146-47, and Exhibit 17, Dean's Letter of May 29, 2018.

For all of these First Amendment claims, Professor Meriwether's claims are without merit and should be dismissed, since it involves his duties as a public employee, and instructor at a public institution, and he has not suffered any recognized adverse employment action under well-established case law. These claims should be dismissed.

> **4. Meriwether's "Fourth Cause of Action" for violation of his rights to freely exercise his religion does not state a claim upon which relief can be granted.**

In the constitutional context, only a law that is <u>not</u> neutral or of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *See Doe v. Cong. of the United States,* 891 F.3d 578, 591 (6th Cir. 2018) (free exercise challenge asserting that U.S. currency use of the motto "In God We Trust" motto promotes Christian monotheistic message), *quoting Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531-32 (1993). The nondiscrimination policies challenged by the Complaint are part of the University's obligations under Title IX and Title VII, and fall into this category of neutral rules of general applicability. The Supreme Court has held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Doe,* 891 F.3d at 591, *quoting Holt v. Hobbs,* 135 S. Ct. 853, 859 (2015)(*citing Emp't Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 878-82 (1990)).

The non-discrimination policy challenged here is neutral, and thus does not fall within caselaw requiring a "compelling" governmental interest or that need be "narrowly tailored." The policy is a requirement of the University based on federal and state laws prohibiting discrimination. A law, or the non-discrimination policies challenged in this case, is not neutral "if the object of [the] law is to infringe upon or restrict practices because of their religious motivation," or if the "purpose of [the] law is the suppression of religion or religious conduct." *Doe*, 891 F.3d at 591, *quoting Lukumi,* 508 U.S. at 533. Meriwether does not, and cannot, point to any language in these policies that has as its object or purpose, the suppression of the Christian religion or religious practices.

Neither does the Complaint state a claim for some "as applied" challenge to the implementation of the policies in this case. Although Meriwether, based on the attachments to his Complaint, frequently injected the subject of his religious beliefs into his challenges to the non-discrimination policy, the investigation of his conduct, and its application to his conduct towards the student in his classroom, his own Complaint demonstrates that the policy is one of general, neutral applicability. His Complaint states that he was first notified by his Union of the non-discrimination policy, and its applicability in the transgender context, back in August 2016. *See Doc. #1,* Comp. ¶¶ 104-05. The policy is neutral on its face, and, given the straightforward, undisputed nature of the conduct he admits in his Complaint, his attempts to cast this after-the-fact as prejudiced against his Christian beliefs ignores the neutral, general applicability of the policy. That same general directive was enforced throughout.

**5. Meriwether's "Fifth Cause of Action" for being subject to "unconstitutional conditions" does not state a claim upon which relief can be granted.**

In his "Fifth Cause of Action", Meriwether baselessly contends that his "status as a

21

professor in good standing at the University" and his employment at the University, are jeopardized by the "unconstitutional condition" the University has placed on him in violation of his First Amendment rights.  *Doc. #1*, Comp. ¶ 316.  He alleges that his "receipt of state benefits" (i.e., his employment) is threatened unless he "surrenders" his "constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection."  *See id.*, ¶¶ 317-19.  This claim essentially restates a First Amendment claim, and should be dismissed.

The U.S. Supreme Court has recognized and applied a form of the "unconstitutional conditions" doctrine in public employment cases involving the First Amendment and "political patronage" challenges.  *See, e.g., O'Hare Truck Serv. v. City of Northlake,* 518 U.S. 712, 716-17 (1996); *Elrod v. Burns,* 427 U.S. 347 (1976); *see, also, McCloud v. Testa,* 97 F.3d 1536, 1550-51 (6th Cir. 1996).  Notably, Meriwether remains a faculty member with full tenure rights.  To the extent Meriwether goes on at length about his own beliefs, whether he labels them "personal", "political" or "religious", the only adverse action he challenges here is the written warning, and the only act he challenges is the manner in which he addresses the student in his classroom, including references to "titles" and "pronouns".  As discussed above, the ministerial act of referring to a student as "Ms." or "she" is not First Amendment protected speech.  Since this claim is derivative of his First Amendment claims, it should also be dismissed.

6.    **Meriwether's "Sixth Cause of Action" and Due Process Claim(s) that the University's non-discrimination policies are "overbroad" or "vague" are without merit and should be dismissed.**

As discussed above, particularly in Section III.B.2. of this Motion to Dismiss, Meriwether's arguments of "due process" violations are without merit and should be dismissed. In the Sixth "Cause of Action", the Complaint alleges that the non-discrimination policies of the

University are unconstitutionally overbroad, alleging that Meriwether's "expression regarding gender identity is protected by the First Amendment." *See Doc. #1,* Comp.  ¶ 324.  This is the same argument above and, as discussed, the simple act of the use of a title or a pronoun during a class discussion is not speech protected under the First Amendment, based on *Garcetti, supra.*  In determining whether a policy is unconstitutionally overbroad, the Court first looks at whether "the regulation reaches a substantial amount of constitutionally protected speech."  *Leonardson v City of E. Lansing,* 89 F.2d 190, 195 (6th Cir. 1990).  Meriwether's argument fails on this point, as he only points to his own, unprotected speech to support his claims.

When a plaintiff makes a facial challenge to a statue (or policy) as unconstitutional, the "facial" challenge is an "overbreadth" challenge.  *See Speet v. Schuette,* 7226 F.3d 867, 872-73 (6th Cir. 2013).  "Only a statute that is substantially overbroad may be invalidated on its face." *See id., quoting City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987); *New York v. Ferber,* 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601 (1973).  In a facial challenge, a plaintiff must show substantial overbreadth; that is, that the policy prohibits a "substantial amount of protected speech both in an absolute sense and relative to [the policy's] plainly legitimate sweep[.]"  *Speet, supra, quoting Carey v. Wolnitzek,* 614 F.3d 189, 208 (6th Cir. 2010). Again, since Meriwether's Complaint relies only on his own misunderstood interpretation of the First Amendment, he fails to state a claim that the policy is overbroad.

Second, the Court must address whether the policy is unconstitutionally vague.  *See Leonardson, supra; see also Dambrot v. Cent. Michigan Univ.,* 55 F.3d 1177, 1183-84 (6th Cir. 1995).  Here, the Complaint's alternative argument that the policies are "unconstitutionally vague because they grant University officials unbridled discretion in deciding what constitutes 'gender identity' and 'gender identity discrimination'", *Doc. #1,* Comp. ¶ 327, is also without

23

merit, since Meriwether's own Complaint (and attachments) show that he was directed multiple times in how to address the student, and he chose not to follow those straightforward directives. He can understand the guidance he was given, he simply disagrees with it and refuses to follow the guidance. The Court should disregard the hypothetical and speculative confusion Meriwether alleges based on what "some sources" say, because he has not plausibly alleged any such confusion occurred under the University's policies or practices. *See Doc. #1,* ¶ 72 (referring to an "infinite" number of possible pronouns based on the Univ. of Cal., Davis LGBTQIA Res. Ctr., which is not at issue in this case).

A policy will be considered "void for vagueness" if it (1) "denies fair notice of the standard of conduct to which a citizen is held accountable" or (2) constitutes "an unrestricted delegation of power," inviting "arbitrary, discriminatory and overzealous enforcement." *Leonardson,* 896 F.2d at 196, *quoting Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, (D.C. Cir. 1977). Here, Meriwether's Complaint states that he was notified by his Union of these standards in August 2016, and that he had multiple interactions with his Dean and Department Chair on the issue before the investigation he challenges was even initiated. In the end, he was given only a written warning, which is not even an adverse action under well-established First Amendment case law, and he was afforded the opportunity to challenge the action through the applicable collective bargaining agreement's grievance process, which included Union representation, a process which was begun but abandoned.

7. **Meriwether's "Seventh Cause of Action" for violation of his rights to Equal Protection under the Fourteenth Amendment does not state a claim based upon a suspect classification or fundamental right, and should be dismissed.**

The Complaint's "Seventh Cause of Action" also misunderstands a claim under the Equal Protection clause, and should be dismissed. The Equal Protection Clause "protects against

arbitrary classifications, and requires that similarly situated persons be treated equally." *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005). Although the Complaint generally alleges that Professor Meriwether is "similarly situated to other professors at the University", he alleges disparate treatment based upon his refusal to "endorse" concepts of "gender identity." *Doc. #1, ¶¶* 331-32. His claim essentially restates his varied First Amendment claims which, as has been discussed above, are not based upon "speech" protected by the First Amendment. Essentially, the Complaint alleges an archaic "class of one" theory of the Equal Protection Clause that has been dismissed by the U.S. Supreme Court. *See Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 598 (2008) ("[T]he class of one theory of equal protection does not apply in the public employment context."). Meriwether's claim is based on his conduct in the classroom, and that is his only argument for a denial of equal protection; it is not based upon any recognized theory of an "arbitrary classification" under the Equal Protection clause. This claim should be dismissed.

> **8.  Meriwether's Eighth Cause of Action for his "Rights of Conscience and Free Exercise of Religion" under the Ohio Constitution's Art. I, § 7, should be dismissed, either based on sovereign immunity grounds, or for prudential reasons.**

As discussed above, the Defendants contend that Meriwether's claims under the U.S. Constitution are all without merit and should be dismissed. Any state law claims against the Defendants should be dismissed as not within this Court's jurisdiction. Shawnee State University is a public institution and "instrumentality of the state" of Ohio. *See, e.g.,* O.R.C. §§ 3362.01 *et seq.* (enabling statutes for Shawnee State University). Setting aside whether Meriwether's claims have any merit, his state law claims are barred in this Court by sovereign immunity as interpreted under the Eleventh Amendment. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984); *see also VIBO Corp., Inc. v. Conway, et al.,* 669 F.3d 675, 691 (6th Cir. 2012). "[T]he Eleventh Amendment bars suits for money damages or

25

injunctive relief against SSU [Shawnee State University]…" *Reeves v. Shawnee State Univ.,* 2017 U.S. Dist. LEXIS 29764 (S.D. Ohio March 2, 2017)(Dlott, J.). Meriwether's claims although denominated as claims against Board members, administrators and employees of the University in their official capacity for nominal damages and injunctive relief, still fall within this immunity. *See id.* The State of Ohio has not waived its sovereign immunity by consenting to federal courts' jurisdiction over claims against the State of Ohio. *See, e.g., Manning v. Ohio State Library Bd.,* 62 Ohio St. 3d 24 (1991); *Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities,* 825 F.2d 946, 954 (6th Cir. 1987) (en banc). Rather, Ohio has waived its sovereign immunity only as to actions filed in the Court of Claims of Ohio. O.R.C. § 2743.02; *see also* O.R.C. § 2743.03(A)(2) ("If the claimant in a civil action … also files a claim for declaratory judgement, injunctive relief, or other equitable relief that arises out of the same circumstances that gave rise to the civil action … the court of claims has exclusive original jurisdiction to hear and determine that claim in that civil action.")

Alternatively, absent the jurisdictional argument, if Meriwether seeks to assert that the Ohio Constitution has protections that, in this case, are broader or different than the U.S. Constitution, this Court should not, in the first instance, serve as a forum to so interpret Ohio's constitutional protections. The Court should abstain from hearing any claim for a different interpretation or novel extension of Ohio's constitution under doctrines, such as *Burford* abstention,

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent

policy with respect to a matter of substantial public concern.

*New Orleans Pub. Serv. Inc. v. New Orleans,* 491 U.S. 350, 361 (1989), *quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814 (1976), *interpreting Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).  In this Eighth Cause of Action, assuming Plaintiff sought to proceed with this Ohio state constitutional claim independently of his other federal claims, Meriwether would be seeking to invoke Ohio's state constitution to invalidate a nondiscrimination policy the University is obliged to use to comply with federal law.  This claim should be dismissed.

> **9.    Meriwether's "Ninth Cause of Action" for "Breach of Contract" should be dismissed, either on sovereign immunity grounds or because the collective bargaining agreement with the University is enforced exclusively through a grievance process that results in final and binding arbitration.**

Plaintiff's "breach of contract" claim does not state a claim upon which relief can be granted.  As discussed above in III.B.8., Meriwether's state law claims are not in this Court's jurisdiction, and barred by sovereign immunity.   Additionally, the collective bargaining agreement is not a common law "contract", but instead is a statutory agreement under Chapter 4117 of the Ohio Revised Code; it contains an Article on "Grievance Procedures" that culminates in binding arbitration. *See Doc. #1,* Comp. Ex. 4, PAGEID # 75 – 226.  Under Ohio law, it is enforced through the agreement's dispute resolution process, not through a breach of contract lawsuit in Court.   Alternatively, if a Union member such as Professor Meriwether believes he is not being fairly represented by his Union, he may even file an unfair labor practice charge against his Union with Ohio's State Employment Relations Board.   (O.R.C. § 4117.11(B)(6) ("It is an unfair labor practice for an employee organization, its agents, or representatives or pubic employees to … [f]ail to fairly represent all public employees in a

bargaining unit[.]")

Under Ohio law, which governs statutory agreements such as the collective bargaining agreement relied upon by the Complaint, courts are generally without jurisdiction to entertain disputes under collective bargaining agreements established under O.R.C. Chapter 4117.  *See, e.g., State ex rel. Wilkinson v. Reed,* 99 Ohio St.3d 106 (2003).  Specifically, courts are without jurisdiction to entertain a claim that a public employer subject to O.R.C. Chapter 4117 has violated a collective bargaining agreement where the agreement provides for the final and binding arbitration of grievances.  As the Ohio Supreme Court has recognized "an aggrieved worker whose employment is governed by a collective bargaining agreement that provides for binding arbitration will generally be deemed to have relinquished his or her right to act independently of the union in all matters related to or arising from the contract, except to the limited extent that the agreement explicitly provides to the contrary."  *Leon v. Boardman Twp*., 100 Ohio St.3d 335, 340 (¶ 17) (2003).  *See also, Null v. Ohio Dep't of Mental Retardation & Developmental Disabilities,* 137 Ohio App.3d 152 (Franklin Ct. App. 2000) (precluding an employee's effort to sue on a matter covered by a collective bargaining agreement with a binding arbitration clause); *see also Brannen v. Kings Local Sch. Dist. Bd. Of Educ*., 144 Ohio App. 3d 620, 628 (Ohio Ct. App. Warren 2001) (holding that "to the extent that appellant's claim that the actions of the board of education violated their rights under the collective bargaining agreement, binding arbitration is their exclusive remedy and the trial court had no jurisdiction to consider the merits of the complaint").

As relevant here, O.R.C. § 4117.10(A) provides, in part, as follows:

> An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement.  *If the agreement provides for a final*

> *and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure ....*

(Emphasis added). To allow Meriwether's claim for "breach of contract" to continue in this case would render this statutory language meaningless. As with Meriwether's other claims, this breach of contract claim fails to state a claim upon which relief can be granted, and/or is not within the jurisdiction of the Court, and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants submit that this Motion to Dismiss is well-taken and respectfully request that the Court dismiss Plaintiff's Complaint in its entirety as a matter of law.

Respectfully submitted,

MICHAEL DEWINE (0009181)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
ANNA SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
elsreview@ohioattorneygeneral.gov

HANNAH STONEBURNER (0092480)
Associate Assistant Attorney General
Education Section

30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(614) 644-7634 – Facsimile
Hannah.stoneburner@ohioattorneygeneral.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2019, a true and accurate copy of the foregoing *Defendants' Motion to Dismiss* was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
Principal Assistant Attorney General