NICHOLAS K. MERIWETHER,

Plaintiff,

v.

THE TRUSTEES OF SHAWNEE STATE
UNIVERSITY, et al.,

Defendants.

Case No: 1:18-cv-00753-SJD

THE HONORABLE SUSAN J. DLOTT

**PLAINTIFF'S RESPONSE TO
JANE DOE'S MOTION TO PROCEED PSEUDONYMOUSLY AND
TO REDACT THE COMPLAINT & ATTACHED EXHIBITS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.  Bruening has not shown that his interests substantially outweigh the constitutionally-embedded presumption of open judicial proceedings. ............ 2

      A.  Bruening is not challenging the government but enjoying its support. ....... 3

      B.  Bruening is not forced to disclose information of the utmost intimacy ....... 4

      C.  Bruening faces no risk of criminal prosecution and has produced no evidence he faces a real threat of harm. ...................................................... 8

      D.  Bruening is an adult university student, which normally requires that he utilize his own name. ............................................................................... 12

  II.  Dr. Meriwether would be prejudiced if Bruening were allowed to proceed via pseudonym ................................................................................................. 13

      A.  Proceeding via pseudonym could prevent witnesses from coming forward to support Dr. Meriwether. ...................................................... 13

      B.  Proceeding via pseudonym places Dr. Meriwether at a significant disadvantage, particularly if Bruening is allowed to intervene. ............... 14

      C.  In this fact-sensitive case, publicly identifying witnesses is key. ............. 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Nancy Baer Trucking, Inc.,*
    2005 WL 8163681 (D.N.M. Sept. 7, 2005) ............................................................ 7

*Bd. of Educ. of Highland Local Sch. Dist. v. U.S. Dep't of Educ.,*
    2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) ................................................... 4, 12

*Coe v. U.S. Dist. Court for the Dist. of Col.,*
    676 F.2d 411 (10th Cir. 1982) ................................................................................ 5

*Day v. Sebelius,*
    227 F.R.D. 668 (D. Kan. 2005) ....................................................................... 4, 5, 9

*Doe 1 v. City of Alabaster,*
    2012 WL 13088882 (N.D. Ala. Apr. 26, 2012) ................................................. 5, 12

*Doe 1 v. Trump,*
    No. 1:17-cv-1597, Dkt. 3 (D.D.C. Aug. 10, 2017) .................................................. 4

*Doe H. v. Haskell Indian Nations Univ.,*
    266 F. Supp. 3d 1277 (D. Kan. 2017) ................................................................... 12

*Doe v. Blue Cross & Blue Shield of R.I.,*
    794 F. Supp. 72 (D.R.I. 1992) ................................................................................ 7

*Doe v. Blue Cross & Blue Shield United of Wis.,*
    112 F.3d 869 (7th Cir. 1997) .................................................................................. 8

*Doe v. Cabrera,*
    307 F.R.D. 1 (D.D.C. 2014) .................................................................................. 12

*Doe v. City of Detroit,*
    2018 WL 3434345 (E.D. Mich. July 17, 2018) ........................................... 4, 5, 7, 8

*Doe v. Compact Info. Sys., Inc.,*
    2015 WL 11022761 (N.D. Tex. Jan. 26, 2015) ...................................................... 8

*Doe v. Del Rio*,

    241 F.R.D. 154 (S.D.N.Y. 2006) ............................................................ 5, 13, 14, 15

*Doe v. Dist. of Columbia*,

    No. 1:13-cv-878, Dkt. 4 (D.D.C. Jun. 11, 2013) ........................................ 4

*Doe v. F.B.I.*,

    218 F.R.D. 256 (D. Col. 2003) .............................................................. 6, 12

*Doe v. Fedcap Rehab. Servs., Inc.*,

    2018 WL 2021588 (S.D.N.Y. Apr. 27, 2018) ............................................ 6, 14, 15

*Doe v. Frank*,

    951 F.2d 320 (11th Cir. 1992) ....................................... 2, 3, 4, 10, 12, 17

*Doe v. Harris*,

    2014 WL 4207599 (W.D. La. Aug. 25, 2014) ...................................... 4, 15

*Doe v. Hartz*,

    52 F. Supp. 2d 1027 (N.D. Iowa 1999) .................................... 5, 14, 15, 16

*Doe v. Ind. Black Expo, Inc.*,

    923 F. Supp. 137 (S.D. Ind. 1996) ...................................... 11, 14, 15, 16

*Doe v. Kamehameha Schs.*,

    596 F.3d 1036 (9th Cir. 2010) ...................................................... 9, 10, 11

*Doe v. McConn*,

    489 F. Supp. 76 (S.D. Tex. 1980) .......................................................... 7

*Doe v. Megless*,

    2010 WL 3076246 (E.D. Pa. Aug. 5, 2010) .......................................... 15

*Doe v. Megless*,

    654 F.3d 404 (3d Cir. 2011) ...................................................... 2, 3, 9, 12

*Doe v. Merck & Co., Inc.*,

    2012 WL 555520 (D Col. Feb. 17, 2012) .......................................... 8, 14

*Doe v. N. State Aviation, LLC,*

    2017 WL 1900290 (M.D.N.C. May 9, 2017) ...................................................... 4, 12

*Doe v. Pleasant Valley Sch. Dist.,*

    2007 WL 2234514 (M.D. Pa. Aug. 1, 2007) ........................................................... 11

*Doe v. Porter,*

    370 F.3d 558 (6th Cir. 2004) ...................................... 3, 4, 8, 9, 12, 13, 16

*Doe v. Public Citizen,*

    749 F.3d 246 (4th Cir. 2014) ....................................................... 3, 5, 11, 17

*Doe v. Shakur,*

    164 F.R.D. 359 (S.D.N.Y. 1996) ................................................... 5, 6, 15

*Doe v. Stegall,*

    653 F.2d 180 (5th Cir. 1981) ......................................................... 2, 9, 11

*Doe v. Temple Univ.,*

    2014 WL 4375613 (E.D. Pa. Sept. 3, 2014) ........................................................ 12

*Doe v. Trs. of Ind. Univ.,*

    2013 WL 3353944 (S.D. Ind. Jul. 3, 2013) ........................................................... 16

*Doe v. United States,*

    2016 WL 3476313 (S.D. Ill. June 27, 2016) ............................................................ 4

*Doe v. Vill. of Deerfield,*

    819 F.3d 372 (7th Cir. 2016) ........................................................... 2, 8

*Doe v. Volusia Cty. Sch. Bd.,*

    No. 6:18-cv-102, Dkt. 8 (M.D. Fla. Jan. 30, 2018) ............................................. 4, 12

*Does v. Shalushi,*

    2010 WL 3037789 (E.D. Mich. July 30, 2010) ........................................................ 9

*F.B. v E. Stroudsburg Univ.,*

    2009 WL 2003363 (M.D. Pa. Jul. 7, 2009) ....................................................... 5, 15

*Femedeer v. Haun,*

    227 F.3d 1244 (10th Cir. 2000) ........................................................ 3, 9, 10

*Freedom from Religion Found., Inc. v. Emmanuel Cty. Sch. Sys.,*

    109 F. Supp. 3d 1353, 1355 (S.D. Ga. 2015) .................................... 9, 16

*James v. Jacobson,*

    6 F.3d 233 (4th Cir. 1993) ................................................................ 2, 10

*Lawrence v. Texas,*

    539 U.S. 558 (2003) .............................................................................. 7

*M.M. v. Zavaras,*

    139 F.3d 798 (10th Cir. 1998) ............................................................ 4, 5

*Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C.,*

    1997 WL 171011 (S.D.N.Y. Apr. 10, 1997) ...................................... 6, 15

*McClure v. Harris,*

    503 F. Supp. 409 (N.D. Cal. 1980) ...................................................... 7

*Obergefell v. Hodges,*

    135 S. Ct. 2584 (2015) ........................................................................ 7

*Patrick Collins, Inc. v. Does,*

    2013 WL 364637 (S.D. Ind. Jan. 29, 2013) ...................................... 5, 10

*Plaintiff B v. Francis,*

    631 F.3d 1310 (11th Cir. 2011) ................................................. 2, 13, 16

*Qualls v. Rumsfeld,*

    228 F.R.D. 8 (D.D.C. 2005) ............................................................... 13

*Raiser v. Brigham Young Univ.,*

    127 F. App'x 409 (10th Cir. 2005) ...................................................... 4

*Richmond Newspapers, Inc. v. Virginia,*

    448 U.S. 555 (1980) .......................................................................... 13

*Rowe v. Burton*,

    884 F. Supp. 1372 (D. Alaska 1994) ....................................................... 6

*Stockman v. Trump*,

    No. 5:17-cv-1799, Dkt. 13 (C.D. Cal. Sept. 28, 2017) ............................. 4

*Tracey P. v. Sarasota Cty.*,

    2006 WL 8440206 (M.D. Fla. Nov. 6, 2006) ............................................ 5

*W. Va. Bd. of Educ. v. Barnette*,

    319 U.S. 624 (1943) ................................................................................ 1

**Other Authorities**

Buzz Bissinger, *Caitlyn Jenner: The Full Story*, VANITY FAIR, Jun. 25, 2015, *available at* https://www.vanityfair.com/hollywood/2015/06/caitlyn-jenner-bruce-cover-annie-leibovitz (last visited Jan. 14, 2019) .................................................. 7

Comment to Jessa Powers, *Ohio Professor Attempts to Sue after Uni Punishes Him for Misgendering*, Nov. 7, 2018, ADVOCATE, *available at* https://www.advocate.com/transgender/2018/11/07/ohio-professor-attempts-sue-after-uni-punishes-him-misgendering (last visited Jan. 14, 2019) ...................... 11

Comment to Rebecca Pilar Buckwalter Poza, *The Ohio Professor Who's Suing for the Right to Violate His LGBTQ Students' Rights*, Nov. 13, 2018, DAILY KOS, *available at* https://www.dailykos.com/stories/2018/11/13/1812624/-The-Ohio-professor-who-s-suing-for-the-right-to-violate-his-LGBTQ-students-rights (last visited Jan. 14, 2019) ......................................................................................... 11

I Am Jazz, *About*, *available at* https://www.tlc.com/tv-shows/i-am-jazz/ (last visited Jan. 14, 2019) ......................................................................................... 7

Tim Fitzsimons, *Krysten Sinema Makes History as the First Bisexual Member of U.S. Senate*, NBC News, Nov. 13, 2018, *available at* https://www.nbcnews.com/feature/nbc-out/kyrsten-sinema-makes-history-first-bisexual-member-u-s-senate-n935816 (last visited Jan. 14, 2019) ....................... 7

Tim Layden, *An American Hero: 40 Years After Gold, Jenner Comfortable in Her Own Skin*, SPORTS ILLUSTRATED, Jun. 28, 2016, *available at* https://www.si.com/olympics/2016/06/28/caitlyn-jenner-1976-olympics-gold-medal (last visited Jan. 14, 2019) ...................................................................... 7

**Rules**

FED. R. CIV. P. 10(a) ...................................................................................... 2

As important as the public debate over gender identity is, it is not the central issue in this case. On that debate, both sides should have the right to defend their views passionately. Instead, this case is about whether the government can suppress and silence one side. That is, can the government force those like Dr. Meriwether to communicate views with which they disagree and to which they object? Can the government force even a philosophy professor—whose career is dedicated to weighing epistemological issues about what is true and discussing how to talk about them—to say things in class and outside of it that he does not believe to be true? Or as with so many other contentious cultural debates, does that "fixed star in our constitutional constellation" still shine, such that "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein"? *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). This constitutional issue is too important to be litigated in partial secrecy, but is one where both sides should publicly air their best arguments and subject those arguments to public scrutiny, as is the standard operating procedure for federal courts on a host of emotional, contentious cultural issues.

In addition, in seeking the unusual and rarely granted right to litigate from the shadows, Bruening—an adult university student—glosses over critical facts that contradict his claimed victim status.[1] He confronted an esteemed professor, threatened to get him fired, and then accused him formally of violating federal law in a serious and deliberate fashion. Compl. ¶¶ 133–37, 142–45, Doc. 1, PageID.18–19. Dr. Meriwether immediately proposed several ways to accommodate Bruening without compromising his own convictions, but Bruening and Defendants rejected them. *Id.* ¶¶ 150, 154–55, 162–67, PageID.20–22. Bruening then complained again, even threatening legal action, to ensure that Dr. Meriwether experienced professional

---

[1]    This brief uses pronouns according to their traditional usage (*i.e.*, based on a person's biological sex).

repercussions. *Id.* ¶ 158, PageID.21. A lengthy administrative process failed to produce a mutually acceptable solution and instead resulted in punishment for Dr. Meriwether. *Id.* ¶¶ 173–271, PageID.22–34. So Dr. Meriwether seeks to clear his name, protect his career, and vindicate his rights by invoking the First Amendment's protections in the impartial venue of this Court.

In so doing, Dr. Meriwether simply outlined the facts of the case, naming all the Defendants and key witnesses—as is standard in federal court. Bruening may dispute these facts, dislike the public nature of federal lawsuits, and resent that some people on campus and off disagree with his beliefs and actions, but this does not justify allowing him to proceed by pseudonym. He has failed to carry his legal burden to receive this unusual relief, and granting him the cloak of anonymity would prejudice Dr. Meriwether—the individual whose career and good name are on the line—in multiple ways affecting everything from discovery to settlement negotiations. Hence, Bruening's motion should be denied.

## ARGUMENT

### I. Bruening has not shown that his interests substantially outweigh the constitutionally-embedded presumption of open judicial proceedings.

Courts "have repeatedly voiced [their] disfavor of parties proceeding anonymously as anonymous litigation runs contrary to the rights of the public to have open judicial proceedings." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016). After all, "there remains a clear and strong First Amendment interest in ensuring that what transpires in the courtroom is public property." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). FED. R. CIV. P. 10(a) requires a complaint to "name all the parties" to protect "the public's legitimate interest in knowing all of the facts involved, including the identities of the parties," *Doe v. Frank*, 951 F.2d 320, 322 (11th Cir. 1992), and "witnesses by their real names." *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993).

"This creates a strong presumption in favor of parties' proceeding in their own names." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011); *Doe v. Megless*,

654 F.3d 404, 408 (3d Cir. 2011) (noting "public's strong interest in an open litigation process"). Using a pseudonym is an "unusual procedure," *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000), and a "rare dispensation," *Doe v. Public Citizen*, 749 F.3d 246, 273 (4th Cir. 2014), as "[l]awsuits are public events." *Frank*, 951 F.2d at 324.

This strong presumption yields "only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the [party's] identity." *Id.*; *accord Megless*, 654 F.3d at 411 (noting "thumb on the scale that is the universal interest in favor of open judicial proceedings"). To prevail here, Bruening must show that his "privacy interests *substantially* outweigh the presumption of open judicial proceedings." *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (emphasis added). This he has not done because he is not challenging government activity, is not compelled to disclose information "of the utmost intimacy," faces no risk of prosecution or harm, and is not a child. *Id.* Hence, his motion should be denied.

**A. Bruening is not challenging the government but enjoying its support.**

In weighing privacy interests, the Sixth Circuit first assesses whether the party is "challeng[ing] government activity." *Id.* Here, Bruening is not challenging Shawnee State University's actions. Indeed, the University punished Dr. Meriwether at his behest, with its Title IX office and numerous officials spending months acting in response to his complaints. Compl. ¶¶ 173–271, Doc. 1. PageID.22–34. He now seeks to join its efforts to dismiss this litigation and defend the challenged policy. Mot. to Intervene Br. at 7–8, Doc. 18, PageID.497–98. Not only has the University allowed him to enroll identified as female, Doe Decl. ¶¶ 7, 9, Doc. 18-2, PageID.515–16, but its Women's & Gender Equity Center exists to "enhance LGBTQ . . . experiences on campus" and its Office of Diversity & Inclusion oversees Sexuality and Gender Acceptance. Meriwether Decl. ¶¶ 14—21. It would be hard for Bruening to be more closely aligned with the government.

When "the government actors . . . are on the same side and seek the same outcome as the anonymous intervenors," this first factor does not weigh in favor of granting anonymity, *Day v. Sebelius*, 227 F.R.D. 668, 680 (D. Kan. 2005). Indeed, failing to challenge government action "weigh[s] against anonymity." *Doe v. Harris*, 2014 WL 4207599, *2 (W.D. La. Aug. 25, 2014); *Doe v. N. State Aviation, LLC*, 2017 WL 1900290, *3 (M.D.N.C. May 9, 2017) (same). Hence, most of the cases Bruening cites do not control because they opposed government action, Pseudonym Br. at 4–5 & n.1, PageID.531–32 (citing *Doe v. City of Detroit*, 2018 WL 3434345 (E.D. Mich. July 17, 2018); *Bd. of Educ. of Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016); *Porter*, 370 F.3d at 560; *Doe v. Volusia Cty. Sch. Bd.*, No. 6:18-cv-102, Dkt. 8 (M.D. Fla. Jan. 30, 2018); *Stockman v. Trump*, No. 5:17-cv-1799, Dkt. 13 (C.D. Cal. Sept. 28, 2017); *Doe 1 v. Trump*, No. 1:17-cv-1597, Dkt. 3 (D.D.C. Aug. 10, 2017); *Doe v. United States*, 2016 WL 3476313 (S.D. Ill. June 27, 2016); *Doe v. Dist. of Columbia*, No. 1:13-cv-878, Dkt. 4 (D.D.C. Jun. 11, 2013)), and Bruening's motion should be denied.

**B. Bruening is not forced to disclose information of the utmost intimacy.**

In addition, this case will not force Bruening to "disclose information 'of the utmost intimacy.'" *Porter*, 370 F.3d at 560. Courts have long set a very high bar for what qualifies as an issue of "utmost intimacy," requiring that it be "highly sensitive and personal information that would result in a social stigma." *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 2005). "The risk that a [party] may suffer some embarrassment is not enough" to warrant a pseudonym. *Frank*, 951 F.2d at 324.

As a result, under the strong presumption of open judicial proceedings, courts have denied litigants pseudonyms, even when this publicly exposes a wide variety of intensely personal information. For example, inmates have had to use their names to seek abortion funding. *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998). Doctors have had to use their names when defending against charges of "sexual or immoral

improprieties." *Id.* (citing *Coe v. U.S. Dist. Court for the Dist. of Col.*, 676 F.2d 411 (10th Cir. 1982)). Pseudonyms have also been denied to those seeking to shield their past drug use or involvement with pornography. *See, e.g.*, *Tracey P. v. Sarasota Cty.*, 2006 WL 8440206, *1 (M.D. Fla. Nov. 6, 2006) ("[P]rior drug use . . . [is] not highly sensitive and personal matters."); *Patrick Collins, Inc. v. Does*, 2013 WL 364637, *2 (S.D. Ind. Jan. 29, 2013) ("[The] social stigma attached to viewing pornography . . . does not constitute an exceptional circumstance that would warrant allowing defendant to proceed anonymously."). In civil cases involving sexual assault, sexual harassment, and even rape, the victims have been denied pseudonyms, despite the litany of embarrassing and sensitive facts inherent in them. *See, e.g.*, *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying pseudonym to sexual assault victim suing hip-hop artist and citing similar cases); *Doe v. Hartz*, 52 F. Supp. 2d 1027, 1047 (N.D. Iowa 1999) (same for victim suing Catholic priest for childhood sexual assault); *F.B. v E. Stroudsburg Univ.*, 2009 WL 2003363, *3 (M.D. Pa. Jul. 7, 2009) (same for sexual assault victims at college); *Doe v. Del Rio*, 241 F.R.D. 154, 160 & n.11 (S.D.N.Y. 2006) ("[A]nonymous pleading has frequently been rejected in cases alleging sexual assault."). Even illegal immigrant status—despite the accompanying legal risks—is not of "the utmost intimacy." *See, e.g.*, *Day*, 227 F.R.D. at 679 (finding illegal immigrant status "fundamentally distinguishable from the type of 'highly personal' information that has led other courts to grant leave to proceed anonymously"); *Doe 1 v. City of Alabaster*, 2012 WL 13088882, *5 (N.D. Ala. Apr. 26, 2012) ("undocumented status . . . is not highly sensitive or personal"). Thus, it is "impermissible" to use a pseudonym "merely to avoid the annoyance and criticism that may attend . . . litigation." *Public Citizen*, 749 F.3d at 275.

Of course, Bruening points to *City of Detroit*, 2018 WL 3434345, at *2 (finding that the plaintiff's history of being a man who later identified as a woman qualified as information of the utmost intimacy, justifying a pseudonym). Pseudonym Br. at 4,

Doc. 19, PageID.531. However, this case is not controlling here for several reasons.

First, Bruening's status as a biologically male person is not a secret. Indeed, it is visually evident. That is why Dr. Meriwether, who had no information from the University regarding Bruening's sex, concluded that he was male. Meriwether Decl. ¶¶ 5–8. Bruening was born male, and the visible evidence of this remains. By his own admission, he lived as male until just recently, meaning that many people know his biological sex. Doe Decl. ¶¶ 2–8, Doc. 18-2, PageID.514–15. When parties seek to protect information that is already disclosed, courts do not allow them to proceed by pseudonym. *See, e.g.*, *Rowe v. Burton*, 884 F. Supp. 1372, 1387 (D. Alaska 1994) (denying pseudonym in part because past sex offenses "is already public"); *Shakur*, 164 F.R.D. at 362 (same because press already knew victim's name and addresses); *Doe v. F.B.I.*, 218 F.R.D. 256, 260 (D. Col. 2003) (same because disclosure "has already happened" and "in large part, 'the cat is already out of the bag'"); *Doe v. Fedcap Rehab. Servs., Inc.*, 2018 WL 2021588, *2 (S.D.N.Y. Apr. 27, 2018) (same in part because genderqueer individual's "picture specifically illustrated Plaintiff's nonconformance with gender norms").

Second, Bruening made his gender identity an issue by demanding that Dr. Meriwether refer to him as a woman, by accusing Dr. Meriwether of violating federal law, and by refusing to accept any of the accommodations Dr. Meriwether proposed. And he continues to put it at issue when he claims that Dr. Meriwether's actions exacerbated his gender dysphoria symptoms and anxiety. Doe Decl. ¶¶ 17–23, Doc. 18-2, PageID.517–19; Pseudonym Br. at 2–3, 6, 8, Doc. 19, PageID.529–30, 533, 535. When parties put their private information at issue, courts do not allow them to proceed by pseudonym, even when that information is related to sexual matters. *See, e.g.*, *Mateer v. Ross, Suchoff, Egert, Hankin, Maidenbaum & Mazel, P.C.*, 1997 WL 171011, *2 (S.D.N.Y. Apr. 10, 1997) (denying pseudonym to AIDS patient who suffered genital lesion because he "himself has put his condition at issue by alleging

that defendants' conduct exacerbated his symptoms and endangered his health"); *Allen v. Nancy Baer Trucking, Inc.*, 2005 WL 8163681, *2 (D.N.M. Sept. 7, 2005) (same for PTSD-afflicted party because "she voluntarily put her own emotional condition at issue").

Third, the *City of Detroit* court grounded its finding regarding transgenderism and social stigma on three cases from the 1980s and 1990s. *City of Detroit*, 2018 WL 3434345, at *2 (citing *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 72 (D.R.I. 1992); *Doe v. McConn*, 489 F. Supp. 76, 77 (S.D. Tex. 1980); *McClure v. Harris*, 503 F. Supp. 409, 412 (N.D. Cal. 1980)). But since then, American society has changed markedly. Conduct that was widely criminal then is legal today, *Lawrence v. Texas*, 539 U.S. 558 (2003), as is same-sex marriage. *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). An open bi-sexual won election to the U.S. Senate,[2] Caitlyn Jenner has appeared on the covers of *Vanity Fair* and *Sports Illustrated*,[3] and Jazz Jennings (a transgender teen) stars in a popular cable television show.[4] Hence, the cultural stigma regarding sexuality in general and transgenderism specifically has lessened since the 1980s, rendering the cases cited in *City of Detroit* inapplicable here. Indeed, it is possible that Bruening's transgender status may actually cause him to attract support from many quarters, especially on campus. Meriwether Decl. ¶¶ 14–21.

Fourth, Bruening seeks a pseudonym to protect his medical (and perhaps psychological) information, particularly the details of his transition. Doe Decl. ¶ 10, Doc. 19-1, PageID.544. At present, Dr. Meriwether foresees no need to explore these details. After all, this case focuses on how the University violated his rights and is

---

[2]    Tim Fitzsimons, *Krysten Sinema Makes History as the First Bisexual Member of U.S. Senate*, NBC News, Nov. 13, 2018, *available at* https://www.nbcnews.com/feature/nbc-out/kyrsten-sinema-makes-history-first-bisexual-member-u-s-senate-n935816 (last visited Jan. 14, 2019).

[3]    Tim Layden, *An American Hero: 40 Years After Gold, Jenner Comfortable in Her Own Skin*, SPORTS ILLUSTRATED, Jun. 28, 2016, *available at* https://www.si.com/olympics/2016/06/28/caitlyn-jenner-1976-olympics-gold-medal (last visited Jan. 14, 2019); Buzz Bissinger, *Caitlyn Jenner: The Full Story*, VANITY FAIR, Jun. 25, 2015, *available at* https://www.vanityfair.com/hollywood/2015/06/caitlyn-jenner-bruce-cover-annie-leibovitz (last visited Jan. 14, 2019).

[4]    I Am Jazz, *About*, *available at* https://www.tlc.com/tv-shows/i-am-jazz/ (last visited Jan. 14, 2019).

trying to compel his speech, not Bruening's medical history. Should it somehow become necessary to explore this history, Dr. Meriwether is open to a protective order to cover specific details. But a litany of cases illustrate how concealing sensitive medical and psychological information—even when it relates to sexual issues—does not warrant anonymity. *See, e.g.*, *Vill. of Deerfield*, 819 F.3d at 377 (finding "fear of disclosure of . . . medical and psychiatric information through litigation was insufficient to warrant . . . anonymity"); *Doe v. Compact Info. Sys., Inc.*, 2015 WL 11022761, *4 (N.D. Tex. Jan. 26, 2015) (noting in cases involving "psychological trauma due to sexual assault, courts have declined to allow the plaintiff to proceed anonymously"); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997) ("But the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems."); *Doe v. Merck & Co., Inc.*, 2012 WL 555520, *1, 4 (D Col. Feb. 17, 2012) (denying pseudonym to plaintiff alleging sexual side effects from medication).

Last, the *City of Detroit* court did not grant the plaintiff use of a pseudonym simply because the case involved transgender issues. Instead, the plaintiff also satisfied two other *Porter* factors: challenging government action and demonstrating a threat of harm. *City of Detroit*, 2018 WL 3434345, at *2. Here, Bruening has failed to satisfy either one. *See supra* Part I.A; *infra* Part I.C. Plus, unlike *City of Detroit*, here Dr. Meriwether would face prejudice if Bruening gains anonymity. *See infra* Part II. Hence, that case is not controlling, Bruening will not be forced to reveal information of the utmost intimacy, and his motion should be denied.

### C. Bruening faces no risk of criminal prosecution and has produced no evidence he faces a real threat of harm.

Nor will this case force Bruening "to disclose an intention to violate the law." *Porter*, 370 F.3d at 560. The Sixth Circuit has expanded this inquiry to consider

whether a party has "invited an opprobrium analogous to the infamy associated with criminal behavior" by considering community reaction. *Id.* But even under this standard, Bruening falls short as he faces no realistic threat of serious harm.

"To support a fear of retaliation, [Bruening] must demonstrate that such retaliation is not merely hypothetical but based in some real-world evidence; a simple fear is insufficient." *Does v. Shalushi*, 2010 WL 3037789, *3 (E.D. Mich. July 30, 2010). That is, he must establish "real, imminent personal danger." *Femedeer*, 227 F.3d at 1246. He must show that his fears are reasonable, which he has not done. *Doe v. Kamehameha Schs.*, 596 F.3d 1036, 1044 (9th Cir. 2010) ("[F]ear of severe harm is irrelevant if the plaintiffs do not *reasonably* fear severe harm."); *Megless*, 654 F.3d at 408 (requiring "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable"). Instead, he has just alleged that he "*could* also [be] subject . . . to considerable harassment" or that such is "easy to imagine." Pseudonym Br. at 7–8, Doc. 19, PageID.534–35. That is, like other intervenors, he has just alleged a "general fear of stigma and retaliation," which "simply does not support" proceeding by pseudonym. *Day*, 227 F.R.D. at 680.

Notably, Bruening has not alleged that he faces any retribution from fellow students or University administrators. In many cases where students are granted anonymity, they face on-campus backlash. *See, e.g.*, *Porter*, 370 F.3d at 560–61 (quoting principal discussing how he would have cautioned student plaintiffs from filing suit); *Stegall*, 653 F.2d at 182 n.6 (recounting threats expressed at school board meeting); *Freedom from Religion Found., Inc. ("FFRF") v. Emmanuel Cty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1355, 1359–60 (S.D. Ga. 2015) (recounting how school officials "pressured [Doe children] to ignore their parents and adopt a theistic belief system"). Bruening does not. Indeed, University officials spent months disciplining Dr. Meriwether at Bruening's behest, Compl. ¶¶ 173–271, Doc. 1, PageID.22–34, and Bruening enjoys the support of at least two University offices. Meriwether Decl. ¶¶

14–21. The most he has alleged is that some students referred to him as male and "a small number of professors have expressed support for Professor Meriwether." Doe Decl. ¶¶ 18, 22, Doc. 18-2, PageID.517–18. But the mere exposure to a different viewpoint neither hardly qualifies as "severe harm" nor justifies anonymity.

Next, Bruening objects to news coverage. Pseudonym Br. at 6–8, Doc. 19, PageID.533–35. But "[l]awsuits are public events." *Frank*, 951 F.2d at 324, and the public's legitimate interest in them extends to knowing "witnesses by their real names." *James*, 6 F.3d at 242. That interest will only be magnified if Bruening intervenes, becoming a more active participant in this case. *Femedeer*, 227 F.3d at 1246 ("[T]hose using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials.").

Relatedly, Bruening highlights a press release from Plaintiff's counsel, Pseudonym Br. at 6–8, Doc. 19, PageID.533–35, which notably never mentions him by name. Instead, he complains that it presents him in an "extremely negative light" and Dr. Meriwether in a positive one. *Id.* at 7, PageID.534. But this simply presents the other side of the story, after he spent months making accusations that cast Dr. Meriwether in an "extremely negative light," accused him of discriminating and violating federal law, and rejected proposed compromises. Now that litigation has ensued, being "accused of behavior of which others may disapprove" is just "an unavoidable part of the litigation process." *Patrick Collins, Inc.*, 2013 WL 364637, at *2. "The proper remedy is not to depart from the 'constitutionally-embedded presumption' of openness of judicial proceedings. . . ." *Id.* For him, it is to give testimony at the proper time.

Next, Bruening points to internet comments, Pseudonym Br. at 7–8 & n. 10, Doc 19, PageID.535, but these do not represent genuine threats of serious harm. This Court should discount these comments "because the context demonstrates frustration." *Kamehameha Schs.*, 596 F.3d at 1044. Indeed, the Ninth Circuit did so

when four minor children were exposed to internet comments threatening race-based violence. It noted that the "magistrate judge correctly recognized that many times people say things anonymously on the internet that they would never say in another context and have no intention of carrying out." *Id.* at 1045. Like the plaintiffs there, Bruening has "culled only a few comments out of hundreds of anonymous comments regarding this case." *Id.* Doubtlessly, there are many others supporting him. Indeed, in LGBT and left-leaning outlets, comments threaten Dr. Meriwether with physical violence. Meriwether Decl. ¶ 23.[5] Indeed, Dr. Meriwether has even received backlash via e-mail. *Id.* ¶ 24. But none of these comments are "direct threat[s]" to either individual, but are "more likely idle chatter about public attitudes towards" this case. *Doe v. Pleasant Valley Sch. Dist.*, 2007 WL 2234514, *3 (M.D. Pa. Aug. 1, 2007). A lawsuit "often exposes the litigants to controversy and disapprobation," but "mere expressions of anger" do not "warrant allowing them to proceed anonymously." *Id.* Indeed, it has long been established that the "threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Stegall*, 653 F.2d at 186; *accord Public Citizen*, 749 F.3d at 275 (noting pseudonym is "impermissible" "merely to avoid the annoyance and criticism that may attend . . . litigation").

Last, Bruening speculates that publicity might impact his economic interests and future employment. Pseudonym Br. at 8–9, Doc. 19, PageID.535–36. But courts regularly refuse to allow anonymous litigation to protect these interests. *See, e.g.*, *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 142 (S.D. Ind. 1996) ("[C]ourts have

---

[5]  *See, e.g.*, Comment to Jessa Powers, *Ohio Professor Attempts to Sue after Uni Punishes Him for Misgendering*, Nov. 7, 2018, ADVOCATE, *available at* https://www.advocate.com/transgender/2018/11/07/ohio-professor-attempts-sue-after-uni-punishes-him-misgendering (last visited Jan. 14, 2019) ("If Meriwether would allow me, I'd love to use his head as a baseball and hit a home run."); Comment to Rebecca Pilar Buckwalter Poza, *The Ohio Professor Who's Suing for the Right to Violate His LGBTQ Students' Rights*, Nov. 13, 2018, DAILY KOS, *available at* https://www.dailykos.com/stories/2018/11/13/1812624/-The-Ohio-professor-who-s-suing-for-the-right-to-violate-his-LGBTQ-students-rights (last visited Jan. 14, 2019) ("Meriwether is a mythologically-hobbled, brain-dead moron with a degree. He should be immediately FIRED, and no one should ever hire him again. He should die homeless and broke in the streets.").

generally rejected attempts to proceed under fictitious names based solely on [a party's economic well-being].")`; *F.B.I.*, 218 F.R.D. at 259 (finding damage to state judge's "personal and professional reputation" "insufficient to outweigh the public's interest in an open court system"); *City of Alabaster*, 2012 WL 13088882, at *4 ("That a plaintiff may suffer . . . economic harm is not enough [to warrant a pseudonym]."); *Doe v. Temple Univ.*, 2014 WL 4375613, *1–2 (E.D. Pa. Sept. 3, 2014) (finding that endangering medical or dental school opportunities "is exactly the kind of 'embarrassment [and] economic harm' that does not support the use of a pseudonym" (citing *Megless*, 654 F.3d at 408)); *N. State Aviation, LLC*, 2017 WL 1900290, at *2 ("[F]ear of negative treatment from 'prospective future employers' does not justify allowing a plaintiff to proceed anonymously."). Simply put, these speculative concerns do not convert this into the "exceptional case" that justifies a pseudonym. *Frank*, 951 F.2d at 324. After all, Dr. Meriwether is the one with his entire career on the line.

In sum, Bruening has presented no evidence that he faces a reasonable threat of serious harm from this lawsuit. Thus, his motion should be denied.

### D. Bruening is an adult university student, which normally requires that he utilize his own name.

As an adult, Bruening fails the last of the Sixth Circuit's privacy factors. *Porter*, 370 F.3d at 560 ("whether the plaintiffs are children"). Many of the cases on which he relies do not control for this simple reason. Pseudonym Br. at 4–5, Doc. 19, PageID.531–32 (relying on *Bd. of Educ. of Highland Local Sch. Dist.*, 2016 WL 4269080, and *Volusia Cty. Sch. Bd.*, No. 6:18-cv-102, Dkt. 8). Instead, his age "weighs against [his] request for anonymity." *N. State Aviation, LLC*, 2017 WL 1900290, at *3; *Doe H. v. Haskell Indian Nations Univ.*, 266 F. Supp. 3d 1277, 1289 (D. Kan. 2017) ("Courts . . . in university settings have generally required adult plaintiffs to proceed in their own name"); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) ("Where victims are not minors, courts are generally less inclined to let the alleged victim proceed in

litigation under a pseudonym.").

* * *

By failing to satisfy any of the Sixth Circuit's privacy factors, Bruening has failed to do what he must to justify a pseudonym: prove that his "privacy interests *substantially* outweigh this presumption of open judicial proceedings." *Porter*, 370 F.3d at 560 (emphasis added); *accord Qualls v. Rumsfeld*, 228 F.R.D. 8, 13 (D.D.C. 2005) ("[I]t is the litigant seeking to proceed under pseudonym that bears the burden to demonstrate a legitimate basis for proceeding in that manner."). Regardless of the assessment of the "utmost privacy" issue, Bruening has provided no authority that this factor alone can justify departing from the "strong presumption" that parties proceed under their own names. *Plaintiff B*, 631 F.3d at 1315. This alone renders his motion worthy of denial. *Qualls*, 228 F.R.D. at 13 ("[F]ederal courts operate openly by default," and the party opposing anonymous litigation "need not come forward with reasons why this default procedure should be followed.").

## II. Dr. Meriwether would be prejudiced if Bruening were allowed to proceed via pseudonym.

Furthermore, this Court must assess the prejudice to Dr. Meriwether if Bruening were allowed to proceed anonymously. *See Porter*, 370 F.3d at 561 (assessing school district's claims of prejudice). While Bruening claims there is none, Pseudonym Br. at 10, PageID.537, case law says otherwise.

### A. Proceeding via pseudonym could prevent witnesses from coming forward to support Dr. Meriwether.

One feature of the open, public proceedings that are the default in federal court is that they "come to the attention of key witnesses unknown to the parties." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 596–97 (1980) (Brennan, J. concurring). As a result, "a yet unknown witness would . . . know to step forward with valuable information about the events or the credibility of witnesses." *Del Rio*, 241 F.R.D. at 159. But when the identity of a key witness (and possible intervenor) is cloaked in

anonymity, "information about only one side may thus come to light." *Id.*

Here, it is easy to imagine that another student, University employee, or even member of the community has information that could benefit Dr. Meriwether. This individual could have witnessed the initial conversation that led to this case, could have heard something that calls Bruening's testimony (either here or to University officials) into question, contradicts Bruening's narrative of on-campus stigma or opprobrium, or otherwise undermines Bruening's credibility. Every opportunity should be given for this type of information to emerge so that the Court is fully informed. But if Bruening's identity were to remain secret, this person would never know to come forward because he would not appreciate the importance of his knowledge, while those critical of Dr. Meriwether—whose identity is public—would know exactly where to go. This sort of imbalance should not occur, and thus, this motion should be denied.

## B. Proceeding via pseudonym places Dr. Meriwether at a significant disadvantage, particularly if Bruening is allowed to intervene.

Like many litigants seeking a pseudonym, Bruening claims that anonymity will not compromise the parties' ability to conduct discovery. Pseudonym Br. at 10, PageID.537. But courts rightly discount this argument when the person seeking anonymity has leveled serious charges of deliberate misconduct, discrimination, or harassment. *Merck & Co., Inc.*, 2012 WL 555520 at *3 (noting "no prejudice" argument "is undercut by Defendant's observation that they must defend themselves publicly, while Plaintiff is permitted to hurl his accusations from behind a cloak of anonymity"); *Hartz*, 52 F. Supp. 2d at 1047–48 (similar); *accord Fedcap Rehab Servs., Inc.*, 2018 WL 2021588, at *3 (noting genderqueer individual's public accusations of "discrimination and harassment"); *Ind. Black Expo, Inc.*, 923 F. Supp. at 140–41 (noting accusations of discrimination in violation of federal law that "attack[] the defendants' integrity and reputation"). Here, Bruening has done just that. He has

accused Dr. Meriwether of discrimination, harassment, and violating federal law. Not only did he attack Dr. Meriwether's professionalism and integrity, but he repeatedly voiced his accusations to Dr. Meriwether's superiors, rejected proposed compromises, and insisted that Dr. Meriwether be punished. He even threatened legal action to accomplish this. Compl. ¶¶ 133–37, 142–45, 150, 154–55, 158, 162–67, Doc. 1, PageID.18–22. Now that Dr. Meriwether must pursue federal litigation to clear his name and protect his career, basic fairness dictates that Bruening publicly stand behind his accusations. *Ind. Black Expo, Inc.*, 923 F. Supp. at 141–42. Otherwise, Dr. Meriwether will be at a "serious disadvantage," forced to "defend himself publicly while [Bruening] could make [his] accusations from behind a cloak of anonymity." *Shakur*, 164 F.R.D. at 361; *Mateer*, 1997 WL 171011, at *6 (same); *Hartz*, 52 F. Supp. 2d at 1048 (same); *Harris*, 2014 WL 4207599, at *3 (same); *accord Ind. Black Expo, Inc.*, 923 F. Supp. at 142 ("He cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism."). One-sided secrecy creates a serious imbalance, "particularly when it comes to settlement leverage" should Bruening be allowed to intervene. *Fedcap Rehab. Servs., Inc.*, 2018 WL 2021588, at *3. "Courts allow such an imbalance only in unique circumstances, and [Bruening] has not shown that this is one of those special cases." *Id.*

**C. In this fact-sensitive case, publicly identifying witnesses is key.**

Last, when evaluating motions like Bruening's, many courts assess whether the case involves purely legal issues or is fact-sensitive. In the latter, "the public has more of an interest in knowing who makes these allegations than in a case where purely legal issues are involved." *E. Stroudsburg Univ.*, 2009 WL 2003363, at *3; *accord Doe v. Megless*, 2010 WL 3076246, *4 (E.D. Pa. Aug. 5, 2010), *aff'd* 654 F.3d at 410; *Del Rio*, 241 F.R.D. at 157 (noting "purely legal nature of the issues" could lead to "an atypically weak public interest in knowing the litigants' identities"); *Hartz*, 52 F.

Supp. 2d at 1048 (same). The Sixth Circuit undertook a similar analysis when it noticed that the "only issue for which facts about Plaintiffs would have been crucial is . . . Plaintiffs' standing." *Porter*, 370 F.3d at 561; *accord FFRF*, 109 F. Supp. 3d at 1361 (noting Establishment Clause case did not involve "hotly disputed factual allegations," thus favoring anonymity for plaintiffs).

A retaliation and discrimination case is inherently fact-sensitive, with witness credibility potentially figuring prominently in the proceedings. *See Doe v. Trs. of Ind. Univ.*, 2013 WL 3353944, *4 (S.D. Ind. Jul. 3, 2013) (noting absence of "allegations of personal animus or personal discriminatory motives" lessened importance of plaintiff's credibility and weighed in favor of his anonymity). Here, "the parties' testimony is virtually certain to be at odds on material matters, so that their credibility will be directly at issue." *Ind. Black Expo, Inc.*, 923 F. Supp. at 142. Indeed, Bruening has already begun disputing the Complaint's allegations. *See, e.g.*, Doe Decl. ¶¶ 14, 17, Doc. 18-2, PageID.516–17. Hence, Dr. Meriwether and the public have a heightened interest in the "strong presumption" of open proceedings carrying the day. *Plaintiff B*, 631 F.3d at 1315.

* * *

Admittedly, the potential harms to Dr. Meriwether are maximized if Bruening is allowed to intervene in this lawsuit. If the Court allows him to participate as *amicus curiae*, as Defendants seems to suggest, Dr. Meriwether is willing to agree to the pseudonym, refile the complaint, and redact all relevant documents. Defs.' Resp. to Pseudonym Mot. at 1–2, Doc. 24, PageID.590–91.

## CONCLUSION

In sum, Bruening should not be allowed to proceed via pseudonym in this litigation because he failed to show that his privacy interests outweigh—let alone "substantially outweigh," as the Sixth Circuit requires—the "presumption of open judicial proceedings." *Porter*, 370 F.3d at 560. He failed to satisfy any of the four

factors that demonstrate such interests, and granting him anonymity would prejudice Dr. Meriwether in numerous ways. Put simply, this is not one of the "exceptional cases," *Frank*, 951 F.2d at 324, where this "rare dispensation," *Public Citizen*, 749 F.3d at 273, is warranted. Thus, Bruening's motion should be denied.

Respectfully submitted this 14th day of January, 2019.

/s/ Travis C. Barham

DAVID A. CORTMAN*
Georgia Bar No. 188810
TRAVIS C. BARHAM*
Arizona Bar No. 024867
Georgia Bar No. 753251
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE, Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

THOMAS W. KIDD, JR.
Ohio Bar No. 0066359
KIDD & URLING, LLC
8913 Cincinnati-Dayton Road
West Chester, Ohio 45069
Telephone: (513) 733–3080
Facsimile: (513) 577–7393
tkidd@kiddurlinglaw.com

TYSON C. LANGHOFER*
Arizona Bar No. 032589
JONATHAN M. LARCOMB*
Virginia Bar No. 47274
ALLIANCE DEFENDING FREEDOM
440 1st Street, NW, Ste. 600
Washington, D.C. 20001
Telephone: (202) 393–8690
Facsimile: (202) 347–3622
tlanghofer@ADFlegal.org
jlarcomb@ADFlegal.org

* Admitted *pro hac vice.*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of January, 2019, I filed a true and accurate copy of the foregoing document with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to the following attorneys of record:

RORY P. CALLAHAN
Principal Assistant Attorney General
Employment Law Section
ANNA M. SEIDENSTICKER
Principal Assistant Attorney General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
Telephone: (614) 644–7257
Facsimile: (614) 752–4677
Rory.Callahan@ohioattorneygeneral.gov
Anna.Seidensticker@ohioattorneygeneral.gov
elsreview@ohioattorneygeneral.gov

HANNAH STONEBURNER
Associate Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Telephone: (614) 644–7250
Facsimile: (614) 644–7634
Hannah.Stoneburner@ohioattorneygeneral.gov

*Attorneys for Defendants*

ADAM G. UNIKOWSKY
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639–6000
Facsimile: (202) 639–6066
aunikowsky@jenner.com

SHANNON P. MINTER
ASAF ORR
CHRISTOPHER F. STOLL
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market Street Suite 370
San Francisco, California 94102
Telephone: (415) 392–6257
Facsimile: (415) 392–8442
sminter@nclrights.org
aorr@nclrights.org

cstoll@nclrights.org

*Attorneys for Proposed Defendant-Intervenors*

Respectfully submitted on this the 14th day of January, 2019.

/s/ Travis C. Barham
Travis C. Barham
*Attorney for Plaintiffs*