**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS K. MERIWETHER, | : | |
| Plaintiff, | : | CASE NO. 1:18-cv-00753 |
| v. | : | JUDGE DLOTT |
| THE TRUSTEES OF SHAWNEE STATE UNIVERSITY, et al., | : | MAGISTRATE JUDGE LITKOVITZ |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants respectfully move this Court to dismiss the claims of Plaintiff Nicholas Meriwether in this matter. As set forth in the attached Memorandum in Support, Plaintiff fails to state any claims upon which relief can be granted, and this case should be dismissed in its entirety.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
elsreview@ohioattorneygeneral.gov

HANNAH STONEBURNER (0092480)
Associate Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(877) 647-2550 – Facsimile
Hannah.stoneburner@ohioattorneygeneral.gov

*Counsel for Defendants*

<u>**TABLE OF CONTENTS**</u>

TABLE OF AUTHORITIES ....................................................................................... iii

MEMORANDUM IN SUPPORT ................................................................................. 1

I.      Introduction and Plaintiff's factual allegations .................................................. 1

II.     Meriwether's pleading burden and the standard of review .................................. 5

III.    Law & Argument ......................................................................................... 6

      A.    The individually-named members of the Board of Trustees and Department Chair Jennifer Pauley should be dismissed ...................................................... 7

      B.    Meriwether fails to state a claim upon which relief can be granted against any of the Defendants ......................................................................................... 8

            1.    Meriwether's "First Cause of Action" does not state a claim upon which relief can be granted because his refusal to use a pronoun or title in addressing one student in his classroom was not "speech" protected by the First Amendment, the University was within its rights to direct him on how to address the student, and he did not suffer an adverse employment action ........................................................................................................ 8

            2.    Meriwether's "Second Cause of Action" also fails to state a claim upon which relief can be granted as it does not base a claim upon "speech" protected by the First Amendment, and his claim of "content" or "viewpoint discrimination" is without merit ....................................... 11

            3.    Meriwether's "Third Cause of Action" for "compelled speech" also should be dismissed ........................................................................... 13

            4.    Meriwether's "Fourth Cause of Action" for violation of his rights to freely exercise his religion should be dismissed .................................... 14

            5.    Meriwether's "Fifth Cause of Action" for being subject to "unconstitutional conditions" should be dismissed ................................. 15

            6.    Meriwether's "Sixth Cause of Action" and Due Process Claim(s) that the University's non-discrimination policies are "overbroad" or "vague" are without merit and should be dismissed ...................................... 16

            7.    Meriwether's "Seventh Cause of Action" for violation of his rights to Equal Protection under the Fourteenth Amendment does not state a claim based upon a suspect classification or fundamental right, and should be

dismissed ................................................................................................... 18

8.  Meriwether's "Eighth Cause of Action" for his "Rights of Conscience and
    Free Exercise of Religion" under the Ohio Constitution's Art. I, § 7,
    should be dismissed, either based on sovereign immunity grounds, or for
    prudential reasons ................................................................................... 18

9.  Meriwether's "Ninth Cause of Action" for "Breach of Contract" should be
    dismissed, either on sovereign immunity grounds or because the collective
    bargaining agreement with the University is enforced exclusively through
    a grievance process that results in final and binding arbitration ............... 20

CONCLUSION ..................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................6

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007)...........................................................................................6, 7

*Brannen v. Kings Local Sch. Dist. Bd. Of Educ.*,
144 Ohio App. 3d 620 (Ohio Ct. App. Warren 2001) ...........................................20

*Broadrick v. Oklahoma*,
413 U.S. 601 (1973).........................................................................................12, 17

*Carey v. Wolnitzek*,
614 F.3d 189 (6th Cir. 2010) ...............................................................................17

*Connick v. Myers*,
461 U.S. 138 (1983).........................................................................................9, 10

*Dambrot v. Cent. Michigan Univ.*,
55 F.3d 1177 (6th Cir. 1995) ..........................................................................12, 17

*Dennison v. Murray State Univ.*,
465 F. Supp. 2d 733 (W.D. Ky. 2006)...................................................................11

*Doe v. Cong. of the United States*,
891 F.3d 578 (6th Cir. 2018) ...........................................................................14, 15

*Dudenhoefer v. Fifth Third Bancorp*,
692 F.3d 410 (6th Cir. 2012) .................................................................................5

*Elrod v. Burns*,
427 U.S. 347 (1976)...............................................................................................16

*Engquist v. Oregon Dept. of Agriculture*,
553 U.S. 591 (2008)...............................................................................................18

*Fox v. Traverse City Area Pub. Schs. Bd. of Edn.*,
605 F.3d 345 (6th Cir. 2010) ...........................................................................6, 9

*Frieder v. Morehead State Univ.*,
770 F.3d 428 (6th Cir. 2014) .................................................................................9

*Garcetti v. Ceballos*,
　　547 U.S. 410 (2006)..................................................................................... *passim*

*Goad v. Mitchell*,
　　297 F.3d 497 (6th Cir. 2002) ...................................................................................6

*Hall v. Med. Coll. Of Ohio*,
　　742 F.2d 299 (6th Cir. 1984) ...................................................................................7

*Hornbeak-Denton v. Myers*,
　　361 Fed. Appx. 684 (6th Cir. 2010)........................................................................11

*Jackson v. Jamrog*,
　　411 F.3d 615 (6th Cir. 2005) .................................................................................18

*Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities*,
　　825 F.2d 946 (6th Cir. 1987) (en banc) .................................................................19

*Leon v. Boardman Twp.*,
　　100 Ohio St.3d 335 (2003)......................................................................................20

*Leonardson v City of E. Lansing*,
　　89 F.2d 190 (6th Cir. 1990) ...............................................................12, 16, 17

*Lillard v. Shelby County Bd. of Educ.*,
　　76 F.3d 716 (6th Cir. 1996) ...................................................................................6

*Magley v. Wright*,
　　2001 U.S. Dist. LEXIS 4612 (W.D. Mich. Mar. 30, 2001) ...................................11

*Manning v. Ohio State Library Bd.*,
　　62 Ohio St. 3d 24 (1991)........................................................................................19

*McCloud v. Testa*,
　　97 F.3d 1536 (6th Cir. 1996) .................................................................................16

*Mixon v. Ohio*,
　　193 F.3d 389 (6th Cir. 1999) ...................................................................................6

*New Orleans Pub. Serv. Inc. v. New Orleans*,
　　491 U.S. 350 (1989)................................................................................................19

*New York v. Ferber*,
　　458 U.S. 747 (1982)..........................................................................................12, 17

*Null v. Ohio Dep't of Mental Retardation & Developmental Disabilities*,
　　137 Ohio App.3d 152 (Franklin Ct. App. 2000)....................................................20

*O'Hare Truck Serv. v. City of Northlake*,
    518 U.S. 712 (1996)................................................................16

*Parate v. Isibor*,
    868 F.2d 821 (6th Cir. 1989) .........................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984).......................................................19, 20

*Pickering v. Board of Educ.*,
    391 U.S. 563 (1968)...........................................................10

*Piggee v. Carl Sandburg College*,
    464 F.3d 667 (7th Cir. 2006) .......................................13

*Poppy v. City of Willoughby Hills*,
    96 Fed. Appx. 292 (6th Cir. 2004)................................11

*Reeves v. Shawnee State Univ.*,
    2017 U.S. Dist. LEXIS 29764 (S.D. Ohio March 2, 2017)(Dlott, J.)......................19

*Savage v. Gee*,
    665 F.3d 732 (6th Cir. 2012) ...........................9, 10, 11, 14

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) ..............................12, 13, 17

*Staley v. Jones*,
    239 F.3d 769 (6th Cir. 2001) .......................................13

*VIBO Corp., Inc. v. Conway, et al.*,
    669 F.3d 675 (6th Cir. 2012) .......................................19

*State ex rel. Wilkinson v. Reed*,
    99 Ohio St.3d 106 (2003)...............................................20

*Will v. Mich. Dept. of State Police*,
    491 U.S. 58 (1989)..............................................................7

*Wurzelbacher v. Jones-Kelley*,
    675 F.3d 580 (6th Cir. 2012) .......................................11

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     Introduction and Plaintiff's factual allegations.**

Plaintiff Nicholas Meriwether, a Professor at Shawnee State University, filed the present lawsuit after he received a written warning following an investigation and the finding that he was discriminating against a transgender student in his classroom.  He also challenges the directive to address that same transgender student using a female title ("Miss" or "Ms.") and pronouns ("she/her") or by not using such pronouns or titles to address any of the students in the class. Meriwether objects to the latter directive in particular, citing his strongly-held personal, philosophical and/or religious beliefs, and contending the University's investigation and directive lends "credence to cultural ideas Dr. Meriwether does not share or wish to advance." *Doc. #34,* Amend. Comp. ¶ 4.  Meriwether's Complaint asserts nine (9) overlapping claims for relief based on the written warning he received for his conduct towards a transgender student in his classroom, and his objections to the "cultural ideas" the directive represents.

Meriwether has been a professor and member of the Shawnee State University faculty since 1996.  *Doc. #34*, Amend. Comp. ¶ 93.  In almost 300 paragraphs of factual allegations, Meriwether recounts interactions over a period of two years that he had with his Union and the University's administrators on the issue of transgenderism.  He alleges that in August 2016, he was notified by his then-Union President of a U.S. Department of Education "Dear Colleague" letter on issues of transgenderism, and that his Union President informed faculty members that they could face "disciplinary action from the University if they 'refused to use a [student's] requested name or pronoun.'" *Id.,* ¶¶ 106-07.  Based upon this notice from his Union, Meriwether alleges that he contacted Dr. Roberta Milliken, Dean of the University's College of Arts & Sciences, on or around October 27, 2016, inquiring what University policies required of

faculty on issues related to gender identity. *See id.* ¶¶ 32, 110. He alleges the Dean informed him at that time that faculty must use "a student's preferred pronoun" when addressing a student "regardless of the professor's convictions or views on the subject." *See id.,* ¶ 109. On or around November 3, 2016, Professor Meriwether also addressed the issue with Department Chair for the University's Department of English and the Humanities, Dr. Jennifer Pauley. *See id.,* ¶¶ 36-37, 117.[1] During this meeting, he alleges she made negative statements regarding "Christian doctrines" and "exhibited hostility toward … his religious beliefs." *See id.,* ¶¶ 118 – 122.

After Meriwether took a semester-long sabbatical in 2017, he returned to the University in January 2018, and began teaching a class titled "Political Philosophy." *Doc. #34,* Amend. Comp. ¶ 125. On January 9, 2018, the first day of class, Meriwether answered a student's question, "Yes, sir" because he viewed the student as male. *See id.,* ¶¶ 128-30. After class, the student approached Meriwether, and stated that the student was transgender, and asked to be addressed with "feminine titles and pronouns." *See id.,* ¶ 140. Meriwether alleges that, when he told the student that "he was not sure students can dictate how professors must refer to them[.]", the student uttered a profanity [c---], and circled Meriwether in a belligerent and threatening fashion, and "promised" to have Meriwether, a Professor with full tenure rights, fired if he did not "accede" to the student's demands. *See id.,* ¶¶ 141–44. Meriwether alleges that, after he notified the Dean of Students of this interaction, on January 11, 2018, Dean Milliken visited Meriwether's office and asked him to begin referring to students by their last names only, and

---

[1] Although Dr. Pauley serves as "Department Chairperson", under the collective bargaining agreement between the University and the Shawnee Education Association, Department Chairs are members of the bargaining unit. *Doc. #34,* Exhibit 4, Art. 5, § 1.A.3, p. 11. The Department Chair is not an administrator of University policy, and cannot impose discipline or materially affect the terms and conditions of Plaintiff's employment any more that other faculty members under the University's shared governance model.

"to eliminate all gender references from his expression." *See id.,* ¶¶ 153-54. Meriwether alleges that he would not agree to this, but instead proposed that he would continue to refer to his other students by "Mr.", "Mrs.", "Ms." or "Miss", but that he would refer to the objecting student by the student's last name only, and that Dean Milliken accepted this proposal. *See id.,* ¶¶ 157-58. Meriwether alleges that this arrangement continued for about two weeks, until January 25, 2018, when Dean Milliken came to speak with him and indicated that the student was unhappy with how he addressed the student in class and had indicated that student might file a Title IX grievance. *See id.,* ¶¶ 160-61. Meriwether also alleges, on February 1, 2018, he inadvertently referred to the student as "Mr." during class, and then corrected himself. *See id.,*¸ ¶ 165.

On February 13, 2018, Meriwether received a letter from Dean Milliken, outlining her position on the matter. *Doc. #34,* Amend. Comp. ¶ 185, Ex. 9 (letter). The letter stated it was formal notice that if Meriwether did not conform his conduct to the expectations of the University, it may lead to an investigation that could result in formal disciplinary action. *See id.* A formal investigation was subsequently initiated. *See id.,* ¶¶ 189-91. Meriwether alleges the initiation and conduct of the investigation violated several provisions of the collective bargaining agreement, *see id.* ¶¶ 196 – 207. The "Investigation Report", attached to the Amended Complaint as Exhibit 13, indicates that Meriwether was interviewed on March 15, 2018. *See id*, p. 1. The "Findings" of the report stated, "Professor Meriwether has been reluctant to address [the student] using she/her pronouns. When called upon in class, [the student] is referred to as "[last name]" whereas all other students are addressed using formal Mr. Surname and Ms. Surname. … Professor Meriwether refuses to use preferred pronouns when addressing transgender students. He views this as a matter of academic freedom and truth that he intends to exercise. Professor Meriwether on several occasions communicated that he does not recognize

transgenderism – he specifically stated that he believes transgender is a lie and mental illness and that Professors should not have to change." *See id.,* Ex. 13, pp. 3- 4. Based on interviews with students, and the interview with Meriwether, he was found to have been in violation of the University's non-discrimination/harassment policy. *See id.,* Ex. 13, p. 4.

On April 18, 2018, Dean Milliken notified Meriwether that based upon the finding of disparate treatment of the student, a conference would be scheduled with him and his Union representative. *See Doc. #34,* ¶ 233, and Ex. 14. Meriwether was allowed to reschedule a meeting with the Dean (and his Union representative) from April 27, 2018, to May 9, 2018. *See Doc. #34,* Ex. 16, p. 1. On May 29, 2018, he received a report from the Dean, summarizing the dates, investigation findings, and the Dean's recommendations. *See id.,* Ex. 17. Meriwether then met with the Provost. *See id.,* Ex. 18. The Provost adopted the Dean's recommendation for disciplinary action, and recommended that a "letter of warning" be placed in Professor Meriwether's personnel file on June 14, 2018. *See id.,* Exs. 19, 20.

On June 22, 2018, a written warning was placed in Professor Meriwether's personnel file, consistent with the collective bargaining agreement. *See Doc. #34,* Ex. 20. Meriwether contacted his Union, and pursued a grievance. *See id.,* Ex. 22. On or around August 16, 2018, Meriwether's Union filed a formal challenge to the written warning with the University. *See id.,* Ex. 23. Meriwether and his Union Representative met with the Provost on August 22, 2018. *See id.,* Ex. 25. The grievance was denied, and the decision to issue a written warning was upheld. *See id.* A subsequent appeal to the University's President was submitted, again consistent with the collective bargaining agreement. *See id.,* Ex. 26. Another grievance meeting was held, on or around September 14, 2018, including the attendance of Meriwether and his Union Representative, and a designee for the President, Labor Relations Director David Zender. *See id.*

4

In affirming the imposition of a written warning, the President's designee noted that the written warning was not based on any inadvertent slip-up or single incident.  *See id.,* Ex. 27, President's Grievance Response, Oct. 4, 2018. ("Meriwether acknowledged that he refused to stop singling out the student because of her gender identity after receiving the notice of the policy's requirements and options to accommodate his religious beliefs…. Meriwether's differential treatment of the student was a violation of SSU's anti-discrimination policy."  *Id.,* Ex. 27, PAGEID # 1799).  No facts are alleged that the Union took the matter to arbitration.

In the present lawsuit, Meriwether seeks to challenge the imposition of a written warning, challenging it under multiple, overlapping legal theories.  Meriwether's Amended Complaint also attaches two Shawnee State University policies and procedures he challenges:  (1) the "Non-Discrimination/Sexual Harassment" Policy, 5.01REV; and (2) "Reporting & Investigating Sexual Assault, Sexual Misconduct & Other Forms of Discrimination", 5.01:2REV.  *Doc. #34,* Amend. Comp. Exhs. 1 and 2.  He asserts similar, overlapping claims tied to his challenges to the written warning he received.

## II.    **Meriwether's pleading burden and the standard of review.**

The standard of review of a motion to dismiss for failure to state a claim was discussed in the Defendants' first motion to dismiss.  (Doc. #22).  The standard turns on whether the well-pled factual allegations state a claim for relief that is "plausible."  *See Dudenhoefer v. Fifth Third Bancorp,* 692 F.3d 410, 416 (6th Cir. 2012), *quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The Defendants' motion to dismiss focused heavily on *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006), and the fact that this lawsuit over a written warning because Meriwether would not simply address the student in a courteous manner through the use of titles ("Ms." or "Miss") or pronouns ("she/her") did not involve his speech as a "private citizen" but instead was part of his

duties as a public employee. Meriwether's attorneys apparently perceived the force of *Garcetti* in this case, since the Amended Complaint's only noteworthy change in the nine (9) "Cause of Action" portions from the first Complaint was to add the phrase "in and out of the classroom" seven times. *See Doc. #34,* ¶¶ 309, 318, 329, 333, 349, 357 and 365. This cosmetic change does not materially alter the arguments from the Defendants original motion to dismiss. Whether Meriwether's "speech" is protected by the First Amendment is a question of law for the Court. *See Fox v. Traverse City Area Pub. Schs. Bd. of Edn*., 605 F.3d 345, 350-51 (6th Cir. 2010).

Although so-called "heightened pleading" is not required, *see, e.g., Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002), a court is not required to accept a plaintiff's summary or conclusory allegations as true. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). The basis for Meriwether's lawsuit is not in dispute, and captured in his original Complaint, and the voluminous attachments thereto, and the Court need not accept the "unwarranted factual inferences" that the Amended Complaint attempts to create by adding a conclusory phrase like "in and out of the classroom." *See, e.g., Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). The plaintiff has an obligation to provide more than "formulaic recitations" to state a plausible claim. *See Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). As the Court explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the standard requires the Complaint to "state a claim to relief that is plausible on its face" and "mere conclusory statements do not suffice…" *Ashcroft*, 556 U.S. at 678, *citing Twombly*, 550 U.S. at 555 – 57. As will be discussed below, under this standard, the Court should dismiss all of Meriwether's claims, and this lawsuit.

## III.    Law & Argument.

The legal analysis that follows tracks the arguments made in the Defendants' original motion to dismiss. (Doc. #22). III.A. of the Argument explains why the individually-named

members of the Board of Trustees, and Department Chair Jennifer Pauley should be dismissed. III.B. of the Argument tracks the nine (9) "Cause of Action" sections of the Amended Complaint, which are nearly identical to the initial Complaint. (Doc. #33 – Redacted).

### A. The individually-named members of the Board of Trustees and Department Chair Jennifer Pauley should be dismissed.

The claims against the individually-named Board of Trustees members, and Department Chair Jennifer Pauley, should be dismissed. Meriwether asserts no fact, allegation, or even suspicion that any of the Trustees were involved in any of the actions at the core of his constitutional challenges. The Amended Complaint only generally alleges that the Trustees have "final policymaking authority for rules and regulations that govern the University" and that the Trustees "have not modified the policies challenged herein." *See Doc. #34,* Amend. Comp. ¶¶ 13 – 18. He does not allege any specific acts that the Trustees had anything to do with developing or instituting the policies he challenges, or that they were involved in communicating with him or carrying out the action he challenges under the University's policies. Having alleged no identifiable facts against the Trustees at all, he has failed to adequately plead a claim against them, and the Court should dismiss them as parties. *See Twombly,* 550 U.S. at 555. Lawsuits against state officials in their official capacities are the same as suits against the state itself. *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989). It is well settled in the Sixth Circuit that Ohio's public universities are instrumentalities of the state and, consequently, protected by the state's Eleventh Amendment immunity. *See, e.g., Hall v. Med. Coll. Of Ohio,* 742 F.2d 299, 307 (6th Cir. 1984). By naming the Trustees in their official capacity only, the state becomes the real party in interest by virtue of the Trustees' positions because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will,* 491 U.S. at 71. These defendants should be dismissed.

7

In addition, Department Chair Dr. Jennifer Pauley should be dismissed. The Amended Complaint makes the same conclusory allegations that Pauley "possesses the authority and responsibility for governing and regulating faculty in the Department of English and Humanities at the University" and that her duties include "overseeing" Professor Meriwether. *Doc. #34,* ¶¶ 37-38. However, the collective bargaining agreement states that the position of "Department Chairperson", is a position in the faculty bargaining unit. *Doc. #34*, Ex. 4, Art. 5, § 1.A.3, p. 11. The Department Chair is not an administrator of University policy, and cannot impose discipline or materially affect the terms and conditions of his employment, any more so than other faculty can under academia's shared governance system. *See id.,* Ex. 4, Art. 18.

**B.  Meriwether fails to state a claim upon which relief can be granted against any of the Defendants.**

Each of Meriwether's claims fails to state a claim upon which relief can be granted. Although some of the claims and controlling case law overlap, they will be discussed below in the order in which they are pled in Meriwether's Amended Complaint.

**1.  Meriwether's "First Cause of Action" does not state a claim upon which relief can be granted because his refusal to use a pronoun or title in addressing one student in his classroom was not "speech" protected by the First Amendment, the University was within its rights to direct him on how to address the student, and he did not suffer an adverse employment action.**

In his first claim, Meriwether alleges that he has been punished for "expressing his views regarding gender identity both in and out of the classroom." *Doc. #34,* ¶ 309. However, a plain reading of the Amended Complaint and interactions indicates that the <u>only</u> interaction that is the subject of the University's policies is Meriwether's refusal to respect the "choice of titles and pronouns" of one student in his classroom. *See id.,* ¶ 310. The simple, ministerial act of using a "title" and/or "pronoun" or not when addressing students is part of Meriwether's responsibilities as a Professor at the University, and not a forum for him to express his personal beliefs. To state

8

a claim for First Amendment retaliation, a public employee must show that: (1) his expressions were protected by the First Amendment; (2) he suffered an adverse employment action; and (3) the adverse action was motivated at least in part as a response to the exercise of his constitutional rights. *See Savage v. Gee,* 665 F.3d 732, 738 (6th Cir. 2012), *citing Fox v. Traverse City Area Pub. Schs. Bd. of Edn.*, 605 F.3d 345, 348 (6th Cir. 2010). Meriwether cannot meet any of these elements.

Whether a public employee's speech is protected by the First Amendment is a question of law for the court. *See Fox,* 605 F.3d at 350. The lengthy factual allegations and attachments to the Amended Complaint give the Court an ample record to resolve this legal issue. Meriwether's "speech" here is as a public employee, and not "as a citizen" in the language of *Connick v. Myers,* 461 U.S. 138, 146-47 (1983). A government employee's speech is not protected where it is made "pursuant to his duties." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). Meriwether cannot satisfy this *Garcetti* requirement because the simple act of the use of titles ("Ms." or "Miss") and pronouns ("she/her") relate to his position as a classroom instructor addressing students of the University in that capacity and are not protected by the First Amendment. The *Garcetti* case established that the restrictions the Constitution places upon the government in its capacity as lawmaker and sovereign are <u>not</u> the same restrictions that it places upon the government as an employer.

Neither are Meriwether's allegations that his use of titles and pronouns are part of his "academic freedom" protected by the First Amendment. The Sixth Circuit has held that teaching "methods" are not entitled to First Amendment protections in the way that academic arguments may be protected. *See Frieder v. Morehead State Univ.,* 770 F.3d 428, 430 (6th Cir. 2014). The Sixth Circuit has long recognized that the First Amendment does not make a university professor

"a sovereign unto himself", and the university may take action against a professor whose pedagogical attitude and teaching methods do not conform to institutional standards. *See Parate v. Isibor,* 868 F.2d 821, 827 (6th Cir. 1989). In *Savage v. Gee,* 665 F.3d 732 (6th Cir. 2012), the Court rejected First Amendment arguments from a plaintiff who was the Head of Reference and Library Instruction at a public university about the choice of a book that would be assigned to all incoming first year students at a university. *Savage,* 665 F.3d at 735. The Court rejected an argument that his advocacy for a particular book was protected by the First Amendment as "academic scholarship", holding that his speech was pursuant to his duties as Head of Reference and Library Instruction. *See id* at 738*.*

More broadly, Meriwether's alleged "speech" does not relate to the rights of a public employee to "participate in public affairs". *See Connick v. Meyers*, 461 U.S. 138, 144-45 (1983). The *Garcetti* Court distinguished the unprotected speech related to a public employee's duties, from the classic example of protected speech of a letter to a newspaper by a school teacher in *Pickering v. Board of Educ*., 391 U.S. 563 (1968), "whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Garcetti*, 547 U.S. at 422.[2] The First Amendment does not give public employees "a right to perform their jobs however they see fit." *Id.*, 547 U.S. at 422; nor does the First Amendment "'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420, *quoting Connick,* 461 U.S. at 154. Meriwether's Amended Complaint is based upon specific classroom interactions, the use of titles and pronouns to address a student, which the University has not only the right, but a responsibility to manage under a plethora of workplace rules and regulations.

---

[2] It is not necessary to reach the question of so-called *Pickering* balancing at this juncture of the case, but the Defendants do not waive their right to assert this argument at another time.

The written warning Meriwether challenges also fails to state any adverse employment action to support his First Amendment retaliation claim. *See Savage,* 665 F.3d at 738; *see also Poppy v. City of Willoughby Hills*, 96 Fed. Appx. 292, 295 (6th Cir. 2004) (review of employee time sheets, inspection of employee's records did not adversely affect employment or deter plaintiff from exercising her First Amendment rights); *Dennison v. Murray State Univ*., 465 F. Supp. 2d 733, 747 (W.D. Ky. 2006) (decrease in office size and "antiquated" telephone not a materially adverse employment action in First Amendment retaliation case). *De minimis* actions, including a state agency's review of a plaintiff's confidential files, do not constitute adverse actions that would deter a person of ordinary firmness from engaging in protected speech. *See Wurzelbacher v. Jones-Kelley,* 675 F.3d 580 (6th Cir. 2012). Neither do "an employer's commencement of an investigation, [or] . . . criticisms, accusations, threats, or 'bad mouthing'" constitute adverse actions in First Amendment retaliation cases. *Magley v. Wright*, 2001 U.S. Dist. LEXIS 4612 at *19 (W.D. Mich. Mar. 30, 2001) (citations omitted); *Hornbeak-Denton v. Myers*, 361 Fed. Appx. 684, 688 (6th Cir. 2010)(in First Amendment retaliation case, finding that "[m]ere threats . . . are generally not sufficient to satisfy the adverse action requirement") (*quoting Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)) (alterations in original).

Because Meriwether's "speech" was pursuant to his duties, and he did not suffer an adverse employment action, his First Amendment retaliation claim should be dismissed.

> **2. Meriwether's "Second Cause of Action" also fails to state a claim upon which relief can be granted as it does not base a claim upon "speech" protected by the First Amendment, and his claim of "content" or "viewpoint discrimination" is without merit.**

In the second claim for relief, Meriwether alleges again that his "speech", the use of a title and pronouns, is protected by the First Amendment, and that the "content" of his speech is subject to "viewpoint discrimination" in violation of the Constitution. *Doc. #34,* Amend. Comp.

¶¶ 318. As discussed above, this is "speech" about how to address students, which is not protected under *Garcetti.* The Amended Complaint only generally alleges the policies are overbroad, that is, that they prohibit a substantial amount of protected speech, *see, e.g., Leonardson v City of E. Lansing*, 89 F.2d 190, 195 (6th Cir. 1990). The Amended Complaint fails to allege any protected speech that is captured by these policies, since it focuses only on Meriwether's classroom interactions. This overbreadth challenge is really a challenge to the policy on its face, *see, e.g., Speet v. Schuette*, 726 F.3d 867, 872-73 (6th Cir. 2013), and fails to plausibly suggest that the policy is substantially overbroad, as required to state a claim for relief. *See id., quoting City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987); *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). In this context "substantial" overbreadth means that the policy prohibits a "substantial amount of protected speech both in an absolute sense and relative to [the policy's] plainly legitimate sweep[.]" *Speet, supra, quoting Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010). Meriwether relies only on his own misunderstood interpretation of the First Amendment, and fails to state an overbreadth claim.

Meriwether also only generally alleges that the University's policies are unconstitutionally vague. *See Leonardson, supr*a; *see also Dambrot v. Cent. Michigan Univ*., 55 F.3d 1177, 1183-84 (6th Cir. 1995). Meriwether generally alleges the policies grant University officials "unbridled discretion", *Doc. #34*, Comp. ¶ 321. The documentation attached to Meriwether's Amended Complaint shows that he was directed multiple times in how to address the student and given an option that would treat the student equally, and he chose not to follow those straightforward directives. He understood the guidance he was given, he simply disagreed with it and refused to follow it. The University's ultimate decision upholding the written warning indicated that it was not imposed because of any inadvertent slip-up or mistake on

Meriwether's part, but because he failed to stop unfairly singling out the student in a discriminatory manner. The "speech" in this instance occurred during Meriwether's class, during a course taught pursuant to University curriculum requirements, in a University classroom, and by a Professor who was compensated by the University and has been an employee of the University for over 20 years. Meriwether has not plausibly alleged that he was ever subject to potential discipline for conduct that occurred outside the University, and even if he did, a nexus could exist that would allow for the University to reasonably direct him to cease discriminatory conduct towards a student. *See, e.g., Piggee v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006).

Meriwether's lawsuit is a similar attempt to challenge <u>conduct</u>-related policies, prohibiting discriminatory <u>conduct</u> and harassing <u>conduct</u>, under a superficial First Amendment analysis. The same arguments made here could be made regarding policies on equal employment opportunities, non-discrimination and discriminatory harassment for every employer in the United States who complies with Title IX for institutions of higher education, and Title VII of the Civil Rights Act of 1964, and various other federal and state non-discrimination laws. The vagueness and overbreadth doctrines are prudential doctrines, which are only relied upon by courts to strike down statutes (or policies) "as a last resort." *See Staley v. Jones*, 239 F.3d 769, 776-77 (6th Cir. 2001)(*quoting Broadrick v. U.S.,* 413 U.S. 601, 613 (1973)). "Sustaining a facial attack to the constitutionality of a state law … is momentous and consequential. It is an 'exceptional remedy.'" *Speet, supra, quoting Carey v Wolnitzek,* 614 F.3d 189, 201 (6th Cir. 2010). Meriwether's difference of opinion with the University's administration does not a constitutional claim make.

**3. Meriwether's "Third Cause of Action" for "compelled speech" also should be dismissed.**

In his third cause of action, Meriwether does not state a claim for "compelled speech" for similar reasons cited in the arguments above, based above all on *Garcetti.*  Neither has Meriwether stated a claim for First Amendment retaliation, because he has not suffered an actionable injury, or "adverse employment action" under *Savage v. Gee, supra.*  On this claim of "compelled speech", Meriwether's argument is particularly weak, since he was offered an alternative by the Dean on multiple occasions to simply stop using all articles/titles (i.e. "Mr." or "Ms.") when he addressed students in his class, and he rejected this option.  *See Doc. #34,* Amend. Comp. ¶¶ 153-55, and Exhibit 17, Dean's Letter of May 29, 2018.

### 4. Meriwether's "Fourth Cause of Action" for violation of his rights to freely exercise his religion should be dismissed.

In the constitutional context, only a law that is <u>not</u> neutral or of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest."  *See Doe v. Cong. of the United States,* 891 F.3d 578, 591 (6th Cir. 2018) (free exercise challenge asserting that U.S. currency use of the motto "In God We Trust" motto promotes Christian monotheistic message), *quoting Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531-32 (1993).  The nondiscrimination policies challenged by this lawsuit are part of the University's obligations under Title IX and Title VII, and fall into this category of neutral rules of general applicability.  The Supreme Court has held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause[.]" *Doe,* 891 F.3d at 591, *quoting Holt v. Hobbs,* 135 S. Ct. 853, 859 (2015)(*citing Emp't Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 878-82 (1990)).  The nondiscrimination policy challenged here is neutral, based on federal and state laws prohibiting discrimination, and does not fall within precedents requiring a "compelling"

governmental interest or that need be "narrowly tailored."  A law, or the nondiscrimination policies challenged in this case, is not neutral "if the object of [the] law is to infringe upon or restrict practices because of their religious motivation," or if the "purpose of [the] law is the suppression of religion or religious conduct."  *Doe*, 891 F.3d at 591, *quoting Lukumi,* 508 U.S. at 533.  Meriwether does not, and cannot, point to any language in these policies that suppresses the Christian religion or religious practices.

Neither does the Amended Complaint state a claim for some "as applied" challenge to the implementation of the policies in this case.  His Amended Complaint states that he was first notified by his Union of the non-discrimination policy, and its applicability in the transgender context, back in August 2016.  *See Doc. #34,* Amend. Comp. ¶¶ 106-07.  He received written guidance from the Dean, had a fair and undisputed investigation, and received a written warning that he could and did challenge through his union.  The policy is neutral on its face, and, given the straightforward, undisputed nature of the conduct he admits, his attempts to cast this as prejudiced against his Christian beliefs ignores the neutral, general applicability of the policy. That same general directive was enforced throughout.

### 5. Meriwether's "Fifth Cause of Action" for being subject to "unconstitutional conditions" should be dismissed.

In his "Fifth Cause of Action", Meriwether baselessly contends that his "status as a professor in good standing at the University" and his employment at the University, are jeopardized by the "unconstitutional condition" the University has placed on him in violation of his First Amendment rights.  *Doc. #34*, Amend. Comp. ¶ 343.  He alleges that his "receipt of state benefits" (i.e., his employment and salary) is threatened unless he "surrenders" his "constitutionally protected rights to freedom of speech, free exercise of religion, due process, and equal protection."  *See id*., ¶¶ 344-46.  This claim essentially restates a First Amendment claim,

and should be dismissed.  The U.S. Supreme Court has recognized and applied a form of the "unconstitutional conditions" doctrine in public employment cases involving the First Amendment and "political patronage" challenges.  *See, e.g., O'Hare Truck Serv. v. City of Northlake,* 518 U.S. 712, 716-17 (1996); *Elrod v. Burns,* 427 U.S. 347 (1976); *see, also, McCloud v. Testa,* 97 F.3d 1536, 1550-51 (6th Cir. 1996).  Notably, Meriwether remains a faculty member with full tenure rights.  The only adverse action he challenges here is the written warning, and the only act he challenges is the manner in which he addresses the student in his classroom, including references to "titles" and "pronouns".  As discussed above, the ministerial act of referring to a student as "Ms." or "she" or by no sex identifier at all is not First Amendment protected speech.  Since this claim is derivative of his First Amendment claims, it should also be dismissed.

### 6. Meriwether's "Sixth Cause of Action" and Due Process Claim(s) that the University's non-discrimination policies are "overbroad" or "vague" are without merit and should be dismissed.

Also without merit is Meriwether's overlapping Sixth "Cause of Action" that the non-discrimination policies of the University are unconstitutionally overbroad or vague and "encompass a substantial amount of constitutionally protected speech" and that his "expression regarding gender identity is protected by the First Amendment." *See Doc. #34,* Amend. Comp. ¶¶ 350-51.  The simple act of the use of a title or a pronoun during a class discussion is not First Amendment protected speech, based on *Garcetti, supra.*  As discussed above in III.B.2., in determining whether a policy is unconstitutionally overbroad, the Court first looks at whether "the regulation reaches a substantial amount of constitutionally protected speech." *Leonardson v City of E. Lansing,* 89 F.2d 190, 195 (6th Cir. 1990).  Meriwether's argument fails on this point, as he only points to his own, unprotected speech to support his claims.  Only a policy that is

"substantially overbroad" fails on its face.  *See Speet v. Schuette,* 726 F.3d 867, 872-73 (6th Cir. 2013), *citing City of Houston, Tex. v. Hill,* 482 U.S. 451, 458 (1987); *New York v. Ferber,* 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601 (1973); *Carey v. Wolnitzek,* 614 F.3d 189, 208 (6th Cir. 2010).  Since Meriwether's lawsuit relies only on his own misunderstood interpretation of the First Amendment, he fails to state a claim that the policy is overbroad.

As in Section III.B.2 of this Motion, there is also no claim here that the University's policies are unconstitutionally vague.  *See Leonardson, supra; see also Dambrot v. Cent. Michigan Univ.,* 55 F.3d 1177, 1183-84 (6th Cir. 1995).  The conclusory argument that the policies are "unconstitutionally vague because they grant University officials unbridled discretion in deciding what constitutes 'gender identity' and 'gender identity discrimination'", *Doc. #34,* Comp. ¶ 354, is belied by the attachments to Meriwether's filing.  He was directed multiple times on how to address the student, and he chose to ignore that direction.  The Court should disregard the hypotheticals and speculation Meriwether invites, because he has not plausibly alleged any such confusion occurred under the University's policies or practices.  *See Doc. #34,* ¶ 74 (referring to an "infinite" number of possible pronouns based on the Univ. of Cal., Davis LGBTQIA Res. Ctr., which is not at issue in this case).   This is not a vagueness case where a Plaintiff can allege the policies either (1) deny fair notice of the standard of conduct applicable; or (2) constitute "an unrestricted delegation of power," inviting "arbitrary, discriminatory and overzealous enforcement."  *See, e.g., Leonardson,* 896 F.2d at 196, *quoting Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, (D.C. Cir. 1977).  Meriwether was notified by his Union of these standards in August 2016, and had multiple interactions with his Dean and Department Chair on the issue.  After a formal investigation, he was given only a written warning, which is not even an adverse action under well-established First Amendment

case law, and he was afforded the opportunity to challenge the action through his Union and the Union's grievance process, which he began but abandoned for unknown reasons.

### 7. Meriwether's "Seventh Cause of Action" for violation of his rights to Equal Protection under the Fourteenth Amendment does not state a claim based upon a suspect classification or fundamental right, and should be dismissed.

Meriwether's "Seventh Cause of Action" also misunderstands a claim under the Equal Protection clause, and should be dismissed. The Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005). Although the lawsuit generally alleges that Professor Meriwether is "similarly situated to other professors at the University", he alleges disparate treatment based upon his refusal to "endorse" concepts of "gender identity." *Doc. #34,* ¶¶ 358-59. His claim essentially restates his varied First Amendment claims which, as has been discussed above, are not based upon "speech" protected by the First Amendment. Essentially, the Amended Complaint alleges an archaic "class of one" theory of the Equal Protection Clause that has been dismissed by the U.S. Supreme Court. *See Engquist v. Oregon Dept. of Agriculture,* 553 U.S. 591, 598 (2008) ("[T]he class of one theory of equal protection does not apply in the public employment context."). Meriwether's claim is based on his conduct in the classroom, and that is his only argument for a denial of equal protection; it is not based upon any recognized theory of an "arbitrary classification" under the Equal Protection clause.

### 8. Meriwether's Eighth Cause of Action for his "Rights of Conscience and Free Exercise of Religion" under the Ohio Constitution's Art. I, § 7, should be dismissed, either based on sovereign immunity grounds, or for prudential reasons.

As discussed above, the Defendants contend that Meriwether's claims under the U.S. Constitution are all without merit and should be dismissed. Any state law claims against the Defendants should be dismissed as not within this Court's jurisdiction. Shawnee State

18

University is a public institution and "instrumentality of the state" of Ohio. *See, e.g.,* O.R.C. §§ 3362.01 *et seq.* Setting aside whether Meriwether's claims have any merit, his state law claims are barred in this Court by sovereign immunity as interpreted under the Eleventh Amendment. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120-21 (1984); *see also VIBO Corp., Inc. v. Conway, et al.,* 669 F.3d 675, 691 (6th Cir. 2012). "[T]he Eleventh Amendment bars suits for money damages or injunctive relief against SSU [Shawnee State University]…" *Reeves v. Shawnee State Univ.,* 2017 U.S. Dist. LEXIS 29764 (S.D. Ohio March 2, 2017)(Dlott, J.). The State of Ohio has not waived its sovereign immunity by consenting to federal courts' jurisdiction over claims against the State of Ohio. *See, e.g., Manning v. Ohio State Library Bd.,* 62 Ohio St. 3d 24 (1991); *Leaman v. Ohio Dept. of Mental Retardation & Developmental Disabilities,* 825 F.2d 946, 954 (6th Cir. 1987) (en banc). Rather, Ohio has waived its sovereign immunity only as to actions filed in the Court of Claims of Ohio. O.R.C. § 2743.02; *see also* O.R.C. § 2743.03(A)(2).

Alternatively, absent the jurisdictional argument, if Meriwether seeks to assert that the Ohio Constitution has protections that are broader or different than the U.S. Constitution, this Court should not, in the first instance, serve as a forum to so interpret Ohio's constitutional protections. The Court should abstain from hearing any claim for a different interpretation or novel extension of Ohio's constitution under doctrines, such as *Burford* abstention, which recognize that federal courts will not interpret difficult questions of state law in the first instance or where the exercise of federal review would be disruptive to state efforts to establish a coherent policy. *See New Orleans Pub. Serv. Inc. v. New Orleans,* 491 U.S. 350, 361 (1989)(internal quotations omitted). Assuming Meriwether seeks to proceed with this state constitutional claim independently of his other federal claims, Meriwether would be seeking to invoke Ohio's state

19

constitution to invalidate a nondiscrimination policy the University is obliged to use to comply with federal law. This claim should be dismissed.

> **9. Meriwether's "Ninth Cause of Action" for "Breach of Contract" should be dismissed, either on sovereign immunity grounds or because the collective bargaining agreement with the University is enforced exclusively through a grievance process that results in final and binding arbitration.**

Plaintiff's "breach of contract" claim does not state a claim upon which relief can be granted. As discussed above in III.B.8., Meriwether's state law claims are not in this Court's jurisdiction, and barred by sovereign immunity. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984). Under Ohio law, courts are generally without jurisdiction to entertain contractual disputes under R.C. Chapter 4117. *See, e.g., State ex rel. Wilkinson v. Reed,* 99 Ohio St.3d 106 (2003). R.C. § 4117.10(A) provides, that, "If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure…." The R.C. 4117 collective bargaining agreement here contains an Article on "Grievance Procedures" that culminates in binding arbitration. *See Doc. #34*, Amend. Comp. Ex. 4, Art. 19, pp. 107-110. Employees whose terms and conditions of employment are covered by a collective bargaining agreement that provides for binding arbitration must follow that procedure, except to the limited extent that the agreement explicitly provides to the contrary. *See Leon v. Boardman Twp*., 100 Ohio St.3d 335, 340 (¶ 17) (2003); *see also, Null v. Ohio Dep't of Mental Retardation & Developmental Disabilities,* 137 Ohio App.3d 152 (Franklin Ct. App. 2000); *Brannen v. Kings Local Sch. Dist. Bd. Of Educ*., 144 Ohio App. 3d 620, 628 (Ohio Ct. App. Warren 2001). Consequently, Meriwether's "breach of contract" claim fails to state a claim upon which relief can be granted; the language of the agreement is enforced through that agreement's grievance procedure and arbitration, not through some "breach of contract" lawsuit.

## **CONCLUSION**

For the foregoing reasons, Defendants submit that this Motion to Dismiss is well-taken and respectfully request that the Court dismiss Plaintiff's First Amended Complaint, and this lawsuit, in its entirety as a matter of law.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
elsreview@ohioattorneygeneral.gov

HANNAH STONEBURNER (0092480)
Associate Assistant Attorney General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(614) 644-7634 – Facsimile
Hannah.stoneburner@ohioattorneygeneral.gov

*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of February, 2019, a true and accurate copy of the foregoing *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
Principal Assistant Attorney General