**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **NICHOLAS K. MERIWETHER,** | : | |
| **Plaintiff,** | : | **CASE NO. 1:18-cv-00753** |
| **v.** | : | **JUDGE DLOTT** |
| **THE TRUSTEES OF SHAWNEE STATE UNIVERSITY, et al.,** | : | **MAGISTRATE JUDGE LITKOVITZ** |
| | : | |
| **Defendants.** | : | |
| | : | |

<u>**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS (DOC. #53) TO
THE REPORT & RECOMMENDATION (DOC. # 49)**</u>

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
HANNAH STONEBURNER (0092480)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(614) 644-7634 – Facsimile
Rory.callahan@ohioattorneygeneral.gov
Hannah.stoneburner@ohioattorneygeneral.gov

ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorney General
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
ELSreview@ohioattorneygeneral.gov

*Counsel for Shawnee State University
Defendants*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................... iii

RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT & RECOMMENDATION...1

I.     Introduction and Summary of Argument ............................................................1

II.    Law & Argument ............................................................................................6

     A.    Meriwether's Objections are without merit and the Court should dismiss all of his claims and this case should be dismissed ..............................................6

          1.    Objection 1: Meriwether's first objection is without merit and should be denied because the Magistrate's R & R followed the correct standard of review and reviewed the ample documentation Meriwether attached to his First Amended Complaint ..........................................................7

          2.    Objection 2: Meriwether's second objection, that his First Amendment retaliation claim should go forward, is without merit because he did not engage in speech protected by the First Amendment ...............................12

          3.    Objection 3: Meriwether's third objection, contending that his "content and viewpoint discrimination claims" should go forward, is without merit and should be dismissed.............................................................18

          4.    Objection 4: Meriwether's fourth objection that his "compelled speech" claim should go forward, is also without merit and should be dismissed..22

          5.    Objection 5: Meriwether's fifth objection that his "unconstitutional conditions" claim should go forward, should be dismissed......................22

          6.    Objection 6: Meriwether's sixth objection, that his "Free Exercise" claim should go forward, should also be dismissed ............................................23

          7.    Objection 7: Meriwether's seventh objection that his "overbreadth" claim should go forward is also without merit and should be dismissed ...........25

          8.    Objection 8: Meriwether's eighth objection that his "vagueness" claim is without merit and should be dismissed.....................................................28

          9.    Objection 9: Meriwether's ninth objection that his Equal Protection claim should go forward should be dismissed ....................................................29

B.      Meriwether's state law claims were not asserted in any response to the Motion(s) to Dismiss, and the Report & Recommendation properly recommended that the claims be dismissed................................................................................................31

CONCLUSION.................................................................................................................................31

CERTIFICATE OF SERVICE .........................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Trustees of Univ. of N.C. Wilmington*,
    640 F.3d 550 (4th Cir. 2011) ............................................................................................15, 16

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)............................................................................................................7, 10

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)..........................................................................................................26, 27

*Brown v. Armenti*,
    247 F.3d 69 (3rd Cir. 2001) ...................................................................................................13

*Carey v. Wolnitzek*,
    614 F.3d 189 (6th Cir. 2010) .................................................................................................26

*Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.*,
    386 F.3d 514 (3rd Cir. 2004) .................................................................................................20

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)...............................................................................................................30

*City of Houston, Tex. v. Hill*,
    482 U.S. 451 (1987)...............................................................................................................27

*Connick v. Myers*,
    461 U.S. 138 (1983)..........................................................................................12, 13, 16, 21

*Corlett v. Oakland U. Board of Trustees*,
    958 F.Supp.2d 795 (E.D. Mich. 2013)..............................................................................16, 17

*Dambrot v. Cent. Michigan Univ.*,
    55 F.3d 1177 (6th Cir. 1995) ............................................................................................26, 28

*Delay v. Rosenthal Collins Group LLC*,
    585 F.3d 1003 (6th Cir. 2009) .................................................................................................7

*Doe v. Cong. of the United States*,
    891 F.3d 578 (6th Cir. 2018) ............................................................................................24, 25

*Edwards v. Cal. Univ. of Pa.*,
    156 F.3d 488 (3d Cir. 1998)...................................................................................................13

*Engquist v. Oregon Dept. of Agriculture*,
    553 U.S. 591 (2008)........................................................................31

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992)........................................................................20

*Fox v. Traverse City Area Pub. Schs. Bd. of Edn.*,
    605 F.3d 345 (6th Cir. 2010) ..........................................................6

*Frieder v. Morehead State Univ.*,
    770 F.3d 428 (6th Cir. 2014) ................................................ *passim*

*Fritz v. Charter Twp. Of Comstock*,
    592 F.3d 718 (6th Cir. 2010) ..........................................................7

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)............................................................. *passim*

*Gorum v. Sessoms*,
    561 F.3d 179 (3rd Cir. 2009) ..........................................................4

*Harris v. Forklift Systems, Inc.*,
    510 U.S. 17 (1993)..........................................................................10

*Jackson v. Jamrog*,
    411 F.3d 615 (6th Cir. 2005) ........................................................31

*Johnson-Kurek v. Abu-Absi*,
    423 F.3d 590 (6th Cir. 2005) ..................................................9, 22

*Kerr v. Hurd*,
    694 F. Supp. 2d 817 (S.D. Ohio 2010) ....................................17, 18

*Lakewood v. Plain Dealer Pub. Co.*,
    486 U.S. 750 (1988)........................................................................20

*Leonardson v City of E. Lansing*,
    89 F.2d 190 (6th Cir. 1990) ............................................26, 27, 28

*Matwyuk v. Johnson*,
    22 F. Supp. 3d 812 (W.D. Mich. 2014) .........................................20

*Mayhew v. Town of Smyrna*,
    856 F.3d 456 (6th Cir. 2017) ..........................................................6

*New York v. Ferber*,
    458 U.S. 747 (1982)..................................................................26, 27

*Parate v. Isibor*,
    868 F.2d 821 (6th Cir. 1989) ........................................................................13

*Perry v. Sinderman*,
    408 U.S. 593 (1972)........................................................................................23

*Pickering v. Board of Educ.*,
    391 U.S. 563 (1968)........................................................................................16

*Piggee v. Carl Sandburg College*,
    464 F.3d 667 (7th Cir. 2006) ...................................................................21, 29

*Plyler v. Doe*,
    457 U.S. 202 (1987)........................................................................................30

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)........................................................................................19

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015).....................................................................................19

*Riley v. Natl. Fedn. Of Blind*,
    487 U.S. 781 (1988)........................................................................................20

*Rosenberger v. Rector & Visitors of the Univ. of Virginia*,
    515 U.S. 819 (1995)........................................................................................20

*Savage v. Gee*,
    665 F.3d 732 (6th Cir. 2012) ........................................................9, 14, 15, 17

*Southworth v. Bd. Of Regents of the Univ. of Wis. System*,
    307 F.3d 566 (7th Cir. 2002) .........................................................................20

*Speet v. Schuette*,
    726 F.3d 867 (6th Cir. 2013) ...........................................................26, 27, 28, 29

*Staley v. Jones*,
    239 F.3d 769 (6th Cir. 2001) .........................................................................29

*Turner Broad Sys., Inc. v. FCC*,
    512 U.S. 622 (1994)........................................................................................23

*Ward v. Polite*,
    667 F.3d 727 (6th Cir. 2012) .........................................................................24

*Weisbarth v. Geauga Park Dist.*,
    499 F.3d 538 (6th Cir. 2007) .........................................................................15

## RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT & RECOMMENDATION

### I.     Introduction and Summary of Argument.

Plaintiff Nicholas Meriwether's Objections to the Report and Recommendation (Doc. #53) ("Objections"), should be rejected and the Court should adopt the Report and Recommendation (Doc. #49) ("R&R") and dismiss this case. Most of Meriwether's arguments erroneously rely upon the First Amendment, and his claims are primarily foreclosed by the U.S. Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006), where the Court ruled that a public employee's speech is not protected where it is made "pursuant to his duties." In a more specific ruling analogous to Meriwether's claims, the Sixth Circuit has held that classroom teaching "methods" are generally not entitled to First Amendment protections. *See Frieder v. Morehead State Univ.,* 770 F.3d 428, 430 (6th Cir. 2014). Overall, the Objections simply rehash the arguments made in opposing the motion(s) to dismiss, and raise a series of academic and/or philosophical and/or political issues for debates that do not relate to the allegations in the Amended Complaint and attachments. The R&R correctly analyzed the legal issues; Meriwether simply thinks that the facts as alleged and the voluminous attachments he has provided in his Amended Complaint state a claim for violations of his constitutional rights when they do not.

Meriwether's nine objections frequently overlap and fail to state a viable legal claim. To summarize, his objections contend that: (1) the R & R applied the incorrect standard of review (it did not); (2) his First Amendment retaliation claim should not be dismissed; (3) his First Amendment claims of "content and viewpoint discrimination" should not be dismissed; (4) his claim of "compelled speech" should not be dismissed; (5) his claim of "unconstitutional conditions" should not be dismissed; (6) his "free exercise" of religion claim should not be

dismissed; (7) his "overbreadth" challenge to University policies should not be dismissed; (8) his "vagueness" challenge to University policies should not be dismissed; and (9) his "equal protection" claim should not be dismissed. None of these objections have merit, and all should be rejected and the Court should adopt the R & R (Doc. #49) and dismiss this case.

Overall, the allegations made by Meriwether and the record in the documents attached to the Amended Complaint actually show that the employees and officers of Shawnee State University took a measured, respectful and thoughtful approach to his conduct in the classroom in the spring of 2018. Indeed, as Meriwether's own Amended Complaint recounts, the issues he challenges in this case were first raised with his union in August 2016 (Doc. #34, Plaintiff's First Amend. Comp. – Redacted ¶¶ 106-09, Ex. 5 (emails)). Much later, in early 2018 when a student filed a complaint about treatment in Meriwether's classroom, the claim was investigated, a step the University's employees were required to take based on University policy, and federal and state non-discrimination laws. (Doc. #34, Amend. Comp. ¶¶ 185, 189-91, Ex. 9 (letter)). Based on the clear and undisputed findings of that investigation – which had been preceded by offers to Meriwether of options that were sensitive to religious concerns he raised -- the University issued a written warning to Meriwether. (*See id*. ¶¶ 196 – 207; Ex. 13, pp. 3- 4; ¶ 233, Ex. 14; Exhs. 16, 17, 19 and 20). Meriwether then had an ability to appeal that written warning to the Provost and the University President and, when the written warning was upheld through that review process, had an opportunity to file a grievance through his faculty union. (*See id*., Ex. 22). In denying the grievance, the President's designee summarized the matter in this way:

> [T]he warning was grounded on differential treatment based on transgender status. It is worth noting that Dr. Meriwether pointed out that in the initial classroom encounter discussed above, he was unaware that the student identified as a female. He also credibly stated that on a different occasion, in the course of a classroom discussion, he mistakenly referred to the student by her non-

preferred gender identifier. The written warning issued to Dr. Meriwether is not based upon these excusable, innocent mistakes, which were not a violation of policy.

Notably, however, Meriwether acknowledged that he refused to stop singling out the student because of her gender identity after receiving notice of the policy's requirements and options to accommodate his religious beliefs. The University espouses principles of non-discrimination. Board of Trustees Policy No. 5.01 prohibits discrimination based on race, color, genetic information, religion, age, disability, national origin, ancestry, sex, pregnancy, sexual orientation, gender identity, veteran status and military status. Procedure No. 5.01:2, which derives from Policy No. 5.01, provides in Section 18.3 that, "Negative or adverse treatment based on … gender identity … denies or limits the individual's ability to obtain the benefits of Shawnee State's programs or activities." Meriwether's differential treatment of the student was a violation of SSU's anti-discrimination policy.

. . . . Dr. Meriwether was not required to espouse a belief with which he disagreed. He was not forced to give up a pedagogical tool; in fact, Dean Milliken provided alternatives to the use of his pedagogical tool that would be consistent with Policy 5.01, but Meriwether rejected them.

(Doc. #34-27, First Amended Comp. [Redacted], Ex. 27, p. 13 of 44, PAGEID #1799). Meriwether's voluminous filings attached to the First Amended Complaint demonstrate a lengthy, thoughtful process used by the University defendants prior to issuing a written warning to Meriwether, and after the issuance of the written warning, afforded him a multi-level review of the decision as well as a grievance through his Union. The thorough R & R issued by the Court, (Doc. #49), likewise details at length the reasons why none of Meriwether's arguments state a claim for any violation of his constitutional rights, based on the allegations and documentation he submitted with his Amended Complaint.

In contrast to the reasoned approach of the University defendants in this case, Meriwether continues asserting unsupported legal arguments that the Recommendation to dismiss his claims

"censors and strip all university faculty of their cherished, historically protected constitutional rights . . . .", (Doc. #53, Objections p. 2, PAGEID # 2262), and that the Recommendation "concludes all professors have no First Amendment rights." (*See id.,* p. 4, PAGEID # 2264). Professor Meriwether's misguided hyperbole demonstrates an obvious point. It is abundantly clear from the many documents attached to the Amended Complaint that Meriwether could have taught the substance of his course and communicated his views on differing viewpoints on philosophy in a manner that was respectful of his personal religious and political beliefs, all without singling out the transgender student in his classroom for disparate treatment, either in person or by reference in a syllabus. That is not what occurred. The lengthy process the attachments to the Amended Complaint show demonstrate a debate with his fellow faculty members and Union leadership, an informal discussion with the Dean, a formal Title IX investigation, an appeal to the Provost and University President, followed by a grievance with union representation; the record demonstrates that Meriwether refused to be reasonable and insisted on a course of action that discriminated against the transgender student in his classroom.

The Objection(s) recognize none of this and generally fail to discuss the specific factual allegations in this case, and the measured and appropriate steps that the individually-named University employees and officers took during each step in this process. Throughout the Objection(s), Meriwether makes the far-fetched argument that his identification of students was implicated his "academic freedom" merely because it happened in a classroom. However, requiring Meriwether to tweak the way he referred to students (or just a single student in this case) in class did not "imperil academic freedom." *See, e.g., Gorum v. Sessoms,* 561 F.3d 179, 186 (3rd Cir. 2009). And Meriwether fares no better with his argument that his "speech" was on a matter of public concern. The only "public" who had a "concern" about the words Meriwether

used were the students sitting in that classroom, and Meriwether insisted on ignoring the University's non-discrimination policy, and targeting a transgender student.  Moreover, it is not plausible that there was a "message" in the honorifics used by Meriwether to anyone except Meriwether.  Instead, the Objection(s) continue to speak in generalities and cite to cases that primarily do not involve public employees or public university faculty or, in the few cases cited that do involve university faculty, arise out of facts where a faculty member was not renewed or terminated from employment or denied tenure – facts clearly distinguishable from this case where no such adverse actions were taken.  The Objection(s), throughout their analysis, ignore the clearly distinguishing factors of nearly every case they cite as compared to Meriwether's case.

Meriwether's own allegations also make clear that much of this controversy was created by his own decision to treat one student differently than others in his classroom. He chose not to use the first names only or last names only of his students in the classroom, a religion-neutral alternative option made available to him.  Meriwether's challenges to these directives have been triggered by his own refusal to use the first names of the students in the classroom.  He also challenges the directive to address that same transgender student using a female title ("Miss" or "Ms.") and pronouns ("she/her") or by not using such pronouns or titles to address any of the students in the class.  Meriwether objects, citing his strongly-held personal, philosophical and/or religious beliefs, and contending the University's investigation and directive lends "credence to cultural ideas Dr. Meriwether does not share or wish to advance."  (*Doc. #34,* Amend. Comp. ¶ 4).  Despite Meriwether's contentions, the University went to great lengths to offer alternatives to him that balanced his personal preferences with the rights of a student to be treated with the same respect as her peers and to not be singled-out and treated differently on the basis of her sex.

The Objection(s) avoid the simple, and meritless, nature of Meriwether's claims. The Court should reject Meriwether's contention that this case involves the "robust tradition of academic freedom" and comparisons to faculty speech about the government or controversial works of literature. Meriwether was not teaching anything about the nature of gender; he was calling on students. Nor was he compelled to "mouth support" for any viewpoint or express a message of any kind. Nothing in the Amended Complaint suggests that gender issues were part of his curriculum; his claim is about a method of teaching that he could have easily changed to treat the transgender student in his classroom in an equal and non-discriminatory manner; he refused and consequently received a written warning.

Finally, the Objections make no reference to Meriwether's state law claims in the Amended Complaint, which the R & R also analyzed and recommended dismissal. To the extent no objections were filed, the Court should also dismiss those claims.

## II. Law & Argument.

### A. Meriwether's Objections are without merit and the Court should dismiss all of his claims and this case should be dismissed.

The Defendants' motion to dismiss focused heavily on *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006), and the Objection(s) fail to demonstrate that *Garcetti* should not control almost all of Professor Meriwether's claims. It is clear that this lawsuit challenges the simple act of Meriwether's conduct in his classroom, not the broad and general propositions the Objection(s) attempt to use to gloss over the simple nature of this case. As discussed in the motion to dismiss, and recognized in the R & R, whether Meriwether's "speech" is protected by the First Amendment is a question of law for the Court. *See Mayhew v. Town of Smyrna,* 856 F.3d 456, 464 (6th Cir. 2017)*; see also Fox v. Traverse City Area Pub. Schs. Bd. of Edn*., 605 F.3d 345, 350-51 (6th Cir. 2010), and therefore makes it appropriate for review by the Court in the Rule 12

motion(s) filed.

    **1.**     **Objection 1: Meriwether's first objection is without merit and should be denied because the Magistrate's R & R followed the correct standard of review and reviewed the ample documentation Meriwether attached to his First Amended Complaint.**

In the first objection, Meriwether raises several arguments under the general contention that the R & R applied an incorrect standard of review in "failing to construe the [Amended] Complaint in Meriwether's favor." (Doc. #53, p. 5, PAGEID # 2265). The four-subheaders of the objection argue that: (1) the Report errs in framing this case as a "dispute over pedagogy" instead of as "compelled ideological conformity"; (2) the Report errs by concluding that Meriwether discriminated against the transgender student in his classroom; (3) the Report errs by finding that Meriwether's speech was not "sufficiently expressive" and (4) the Report errs by "minimizing the scope and effect of Defendants' restrictions on faculty speech". (*See id.,* pp. 5 – 18, PAGEID #s 2265 – 2278). The 12-13 pages of discussion for this objection offers almost no legal support for its arguments, with the exception of the discussion about whether Meriwether could be found to have discriminated against the student under Title VII of the Civil Rights Act of 1964, which is an irrelevant argument since that was not the standard the University applied during its Title IX investigation and not a legal issue that can support any of Meriwether's claims of violation of his constitutional rights.

The R & R applied the correct standard of review in recommending the dismissal of all of Meriwether's claims. Meriwether's legal conclusions couched as factual allegations need not be accepted as true in a Court's review of a motion to dismiss. *See Fritz v. Charter Twp. Of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *quoting Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009); *see also Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007); *see also Delay v. Rosenthal Collins Group LLC,* 585 F.3d 1003, 1005-06 (6th Cir. 2009). Meriwether's

labels of "compelled ideological conformity" and "pedagogical disputes" or "sufficiency of expression" are not factual allegations entitled to any deference by the Court at the pleading stage; they are simply labels unsupported by any distinguishing legal precedent.

The first sub-part of the objection, that the Amended Complaint states a First Amendment claim about "compelled ideological conformity" and not about a "dispute over pedagogy" (Doc. #53, Obj. p. 5, PAGEID # 2265), does not make a legal distinction based upon any legal precedent, but is instead a rhetorical point raised again and again throughout Meriwether's briefing. There was no dispute about the factual allegations in the Amended Complaint, the "speech" that is the subject of the Amended Complaint related solely to the classroom interactions that were well-documented through the Amended Complaint and its voluminous attachments, and the Court properly found that Plaintiff had failed to state a legal claim upon any of the legal theories advanced. Regardless of the rhetorical label Meriwether asserts, his "speech" in this case was part of his duties as a classroom instructor, not part of his "academic freedom" or scholarship or research that may or may not be excluded from the application of *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006) (finding that prosecutor's "speech" in a memorandum challenging the probable cause to support a search warrant was not protected by the First Amendment because it related to his official duties as a calendar deputy for the prosecutor's office).

In a more on-point precedent that Meriwether's objections fail to discuss, *Frieder v. Morehead State Univ.,* 770 F.3d 428, 430 (6th Cir. 2014), the Sixth Circuit recognized that classroom teaching "methods" are not entitled to First Amendment protections in the way that academic arguments may or may not be protected. The Court held that "teaching methods" are not constitutionally protected. *See Frieder,* 770 F.3d at 430. In the *Frieder* case, the Sixth

Circuit specifically noted that Frieder alleged his "idiosyncratic teaching methods" motivated the state university's adverse tenure decision, and that Frieder was "not the first plaintiff" to ask the Court to "convert the vague, inclusive term 'teaching methods' into a specific, protected form of speech that cannot be considered by a school administration in determining whether a nontenured teacher should be renewed." *Frieder,* 770 F.3d at 430, *quoting Hetrick v. Martin,* 480 F.2d 705, 709 (6th Cir. 1973). The *Frieder* Court noted that the Sixth Circuit has held "early and often" that a university may take action against a professor "whose pedagogical attitude and teaching methods do not conform to institutional standards." *Frieder,* 770 F.3d at 430, *quoting Parate v. Isibor,* 868 F.2d 821, 827 (6th Cir. 1989). The Sixth Circuit recognized the same issue when it held that a university could constitutionally require a professor to provide detailed advice to students about the administrative aspects of a course. *See Johnson-Kurek v. Abu-Absi,* 423 F.3d 590, 595 (6th Cir. 2005). Meriwether's primary argument in this lawsuit about his "academic freedom" simply misunderstands the First Amendment.

The Sixth Circuit also rejected these superficial "academic freedom" arguments in *Savage v. Gee,* 665 F.3d 732 (6th Cir. 2012), where the plaintiff was the Head of Reference and Library Instruction at a public university and argued that his statements while on a committee picking a book for the curriculum for first year students, and related statements to those committee members, was speech related to "academic scholarship or classroom instruction" exempt from the Court's holding in *Garcetti. See Savage,* 665 F.3d at 738. The Sixth Circuit rejected these arguments, holding that "Savage's speech was not protected by the First Amendment because the speech was made pursuant to his duties as Head of Reference and Library instruction." *Id.* Meriwether's distinction between "compelled ideological conformity" and a "dispute over pedagogy" is a legal argument, not a factual allegation, and is not supported

by any legal precedent and should be rejected.

In the second sub-part of this objection, Meriwether contends that "The Report errs by concluding Dr. Meriwether discriminated." (I.B., p. 7, PAGEID # 2267). This objection is without merit; the R & R analyzed Meriwether's constitutional claims and found that all were without merit. The R & R did <u>not</u> make a "finding" that Meriwether "discriminated" because Meriwether is not a defendant in this case. Neither is this lawsuit some sort of administrative appeal to challenge the University's investigation, nor is it a venue to re-argue the Title IX investigation and the written warning issued to Meriwether. Meriwether has the burden to at least state a *plausible* legal claim to allow his case to move forward, *see, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and this he has failed to do. Neither should this lawsuit be an attempt to reargue the findings of the Title IX investigation, or Meriwether's grievance based upon the collective bargaining agreement between his union and the University.

For this reason, the Objection's analysis and arguments about whether or not Professor Meriwether denied the transgender student an "educational benefit" under Title IX or created a "hostile environment" under Title VII case law is a red herring, and not based on any analysis from the R & R. The Report did not make any recommendation that Meriwether created a "severe or pervasive" environment of discrimination under *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). The student did not file a lawsuit against Professor Meriwether or the University asserting any such claim; Meriwether filed a lawsuit claiming his constitutional rights had been violated. The R & R analyzed Meriwether's constitutional claims and recommended that those claims be dismissed. Meriwether's arguments about the application of Title VII or Title IX sexual harassment cases to the allegations in his Amended Complaint are not relevant, because the R & R conducted no such analysis and made no "finding" that he created a "hostile

environment."

In the third sub-part of this first objection, Meriwether asserts that the Report erred by finding that Meriwether's speech was not "sufficiently expressive." (Doc. #53, p. 13, PAGEID # 2273). Again, this is a rhetorical point Meriwether makes, not a legal argument. Meriwether cites no legal precedent to support his argument; he simply continues to assert that his use of a pronoun or title ("Mr." or "Ms.") is the "expression" of his personal, sincerely held political or religious beliefs, and that this is a "fact" that the Report erroneously analyzed as a legal question. This attempt to label his legal argument as a factual issue is without merit, and this part of his objections should also be rejected.

In contrast, the Magistrate Judge carefully considered what was said, where it was said and how it was said. The Report noted that the proper inquiry is not what might be incidentally conveyed by the speech, but instead that, as a matter of law, Meriwether did not speak on a matter of public concern. (Doc. #49, R&R, p. 29, PAGEID # 2123).

In the fourth and last sub-part of this first objection, Meriwether argues that the Report errs by "minimizing the scope and effect of Defendants' restrictions on faculty speech" (Doc. #53, p. 16, PAGEID # 2276). As with most of the analysis in this first objection, these are policy or rhetorical arguments that are not supported by legal analysis or precedent. Meriwether simply argues that the Report leads to a result that is a rhetorical "slippery slope" or "parade of horribles" that is not based on legal analysis or legal precedent, and is not even based on the factual allegations of the Amended Complaint when the objection asserts that the Report supports "the absurdity of the avalanche of recently-invented identity-based pronouns" and "the impossibility of expecting third parties to keep track of gender identity when it is invisible and can fluctuate so easily." (Doc. #53, p. 18, PAGEID # 2278). These arguments are not based on

the factual allegations in this case and are not a basis for objecting to the analysis of the R & R.

The first objection to the R & R is without merit and should be rejected.

      **2.**      **Objection 2: Meriwether's second objection, that his First Amendment retaliation claim should go forward, is without merit because he did not engage in speech protected by the First Amendment.**

A plain reading of the First Amended Complaint indicates that the <u>only</u> interaction that is the subject of the University's policies is Meriwether's refusal to respect the "choice of titles and pronouns" of one student in his classroom. *See Doc. #34, ¶* 310. The simple act of using a "title" and/or "pronoun" or not when addressing students is part of Meriwether's responsibilities as a Professor at the University, and not a means or forum for him to express his personal beliefs. Importantly, Meriwether's "speech" here is as a public employee, and not "as a citizen" in the language of *Connick v. Myers,* 461 U.S. 138, 146-47 (1983). It is well-established that a government employee's speech is not protected where it is made "pursuant to his duties." *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006). As is made clear in the Amended Complaint and its attachments, Meriwether was not instructed to acknowledge the student by any particular pronoun, but instead instructed not to treat the student differently than others in the class. Proper conduct towards students is an employment responsibility for faculty. The *Garcetti* Court established that the restrictions the Constitution places upon the government in its capacity as lawmaker and sovereign are <u>not</u> the same restrictions that it places upon the government as an employer. Meriwether cannot satisfy this *Garcetti* requirement because the simple act of the use of titles ("Ms." or "Miss") and pronouns ("she/her") relate to *his position* as a classroom instructor for the University addressing students of the University in that capacity and, therefore, are not protected by the First Amendment as a matter of well-established case law.

The R & R correctly applied *Garcetti* to Meriwether's First Amendment retaliation claim,

because his "speech" in the classroom was pursuant to his official duties, and "Plaintiff has failed to state a claim for retaliation under the First Amendment for this reason." (Doc. #49, R & R p. 25, PAGEID # 2119). Meriwether's Objection on this point both mischaracterizes the holding in *Garcetti*, and erroneously mis-represents Justice Souter's dissenting opinion as a "concurrence." (Doc. #53, p. 21, PAGEID # 2281). In addition to the Supreme Court's pronouncements in *Garcetti*, the Sixth Circuit Court of Appeals has held that teaching "methods" are not entitled to First Amendment protections in the way that academic arguments may be protected. *See Frieder v. Morehead State Univ.*, 770 F.3d 428, 430 (6th Cir. 2014). The Objections have no discussion of the *Frieder* case, despite the clear and unambiguous holding of the Sixth Circuit that "teaching methods" are not protected by the First Amendment. *See Frieder,* 770 F.3d at 430.

Moreover, the Sixth Circuit has long recognized that the First Amendment does not make a university professor "a sovereign unto himself", and the university may take action against a professor whose pedagogical attitude and teaching methods do not conform to institutional standards. *See Parate v. Isibor*, 868 F.2d 821, 827 (6th Cir. 1989). *See also Connick*, 461 U.S. at 154 (holding that the First Amendment does not require an employer to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships"). *See also Brown v. Armenti,* 247 F.3d 69, 74-75 (3rd Cir. 2001) (holding that a public university professor does not have a First Amendment right to expression via schools' grade assignment procedures, because grading is pedagogic: the assignment of the grade is subsumed under the university's freedom to determine how a course is to be taught). The institution, not the teacher, has control over the "four essential freedoms" that comprise academic freedom: the right of an institution to choose "who may teach, who may be taught, how it shall be taught, and who may be admitted to study." *Edwards v. Cal. Univ. of Pa.,* 156

F.3d 488, 492 (3d Cir. 1998) (quoting *Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265 (1979).

The Objections also appear to contend that the Sixth Circuit's decision in *Savage v. Gee,* 665 F.3d 732 (6th Cir. 2012) does not apply because Savage was a "librarian" not a "professor", (Doc. #53, p. 26, PAGEID # 2286), but this superficial analysis ignores the holding in *Savage.* In *Savage*, the plaintiff was the Head of Reference and Library Instruction at a public university, who also joined a committee formed to choose a book that would be assigned to all incoming first year students at the university. *Savage,* 665 F.3d at 735. Savage served on the committee with, among others, two faculty members and the university's Student Affairs Director. *See id.* A disagreement over which book to assign to first year students resulted in a "discrimination/harassment" complaint being filed by a faculty member against Savage, to which Savage replied by filing his own "complaint of harassment" against multiple faculty members "for filing false complaints of sexual harassment against him." *Savage,* 665 F.3d at 736. The university investigated both complaints and found no basis for either. *See id.*

Savage also filed a lawsuit in federal court, alleging retaliation against him by virtue of his "speech" during his membership on the committee "related to academic scholarship or classroom instruction." *Savage,* 665 F.3d at 738. The Sixth Circuit rejected this argument, holding that his speech related to the committee was pursuant to his duties as Head of Reference and Library Instruction. *See id.* The *Savage* court noted that Savage did not disagree with the finding that his speech on the committee related to his official duties, but instead argued that his speech related to "academic scholarship or classroom instruction" and that this made the "speech" exempt from the *Garcetti* Court's holding. *Savage,* 665 F.3d at 738. The Sixth Circuit rejected Savage's argument and held that "Savage's speech was not protected by the First Amendment because the speech was made pursuant to his duties as Head of Reference and

Library Instruction." *See id, citing Evans-Marshall v. Bd. of Educ.,* 624 F.3d 332, 339-40 (6th Cir. 2010) (finding that "curricular and pedagogical choices" made "in connection with [plaintiff's] official duties as a teacher" are not protected by the First Amendment)(citations omitted); *see also Weisbarth v. Geauga Park Dist.,* 499 F.3d 538, 543-44 (6th Cir. 2007) (applying *Garcetti* to ad hoc duties even though they may not be within employee's official responsibilities).  In the *Weisbarth* case, the employee was speaking with an outside consultant about employee morale; although this *ad hoc* discussion was not part of any formal "job description", it was still deemed to be speech pursuant to the employee's duties and not protected by the First Amendment.  *Weisbarth,* 499 F.3d at 543-44.  The *Savage* holding applies to Meriwether's claims and demonstrate that his "speech" in this case was not protected by the First Amendment.

The Objection only cites general language from *Garcetti* about a possible exception for academic speech; this does not apply in this case, and does not limit the University's authority based on the allegations.  Neither does the decision of the Fourth Circuit in *Adams v. Trustees of Univ. of N.C. Wilmington*, 640 F.3d 550, 564-65 (4th Cir. 2011), have any relevance to this case, since that "speech" involved publications by the Plaintiff faculty member, such as "Welcome to the Ivory Tower of Babel" and "Indoctri-Nation:  How universities are destroying America." *Adams,* 640 F.3d at 554.  No such academic publications, or academic speech outside the classroom is at issue in this case, and those concerns are not implicated by the factual allegations in Meriwether's First Amended Complaint.

As the R & R also found, even assuming Meriwether's "in-class speech" was not pursuant to his official duties, the "speech did not touch on a matter of public concern."  (Doc. #49, p. 29, PAGEID # 2123).  As the Report noted, Meriwether's limited speech in the

classroom did relate to "gender identity", his classroom interactions "did not implicate the broader social concerns surrounding the issue." *Id.* More broadly, Meriwether's alleged "speech" does not relate to the rights of a public employee to "participate in public affairs" under long established case law. *See Connick v. Meyers*, 461 U.S. 138, 144-45 (1983). As the Report noted, Meriwether's limited speech, in the form of not using an honorific for a single student in his classroom did not "'elevate the speech to a matter of 'public concern[.]'" (Doc. #49, p. 30, PAGEID # 2124). The *Garcetti* Court distinguished the unprotected speech related to a public employee's duties, from the classic example of protected speech of a letter to a newspaper by a school teacher in *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), "whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." *Garcetti*, 547 U.S. at 422.[1] The First Amendment does not give public employees "a right to perform their jobs however they see fit." *Id.*, 547 U.S. at 422; nor does the First Amendment "'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420, *quoting Connick,* 461 U.S. at 154. Meriwether's attempts to turn his dispute about how to address a student in his classroom into a constitutional lawsuit was correctly rejected in the Report & Recommendation.

As the Report noted towards the conclusion of its First Amendment retaliation analysis, the decision in *Corlett v. Oakland U. Board of Trustees,* 958 F.Supp.2d 795, 809 (E.D. Mich. 2013), was instructive, when it rejected arguments that a student's "expressions of lust" for his teacher, and his writing assignment "Hot for Teacher" which included descriptions of her

---

[1] The Report & Recommendation noted that, in light of its findings, it need not reach the question of so-called *Pickering* balancing under *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968) or whether Meriwether was subject to an adverse action to support a First Amendment retaliation claim. (See Doc. #53, p. 33 fn. 1, PAGEID # 2127).

physical appearance, was speech entitled to First Amendment protection.  (Doc. #49, p. 32, PAGEID # 2126). The *Corlett* Court noted, "'Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.'"  *Corlett,* 958 F.Supp. 2d at 809, *quoting Settle v. Dickson County School Board,* 53 F.3d 152 (1995); *quoting Epperson v. Arkansas,* 393 U.S. 97 (1968).  Meriwether's Objections on his First Amendment retaliation claim are without merit and should be rejected.

The Objections rely heavily on the decision in *Kerr v. Hurd,* 694 F. Supp. 2d 817 (S.D. Ohio 2010), holding that a doctor employed by a University medical school as a faculty, who alleged he lost his medical privileges at the University hospital and was forced out over a disagreement with his department chair over advocating the use of forceps for "vaginal delivery over unnecessary cesarian procedures and lecturing … residents on the proper and appropriate use of forceps."  *Kerr,* 694 F. Supp. 2d at 834.  The Court's decision in *Kerr* should not apply in this case.  First, the Court's decision in *Kerr* specifically noted that it did not identify any binding Sixth Circuit precedent to apply to its analysis, and applied the "academic" exception in *Garcetti* to the case.  Since the decision in *Kerr v. Hurd* in 2010, the Sixth Circuit ruled in *Savage v. Gee,* 665 F.3d 732 (6th Cir. 2012)*,* and *Frieder v. Morehead State Univ.,* 770 F.3d 428, 430 (6th Cir. 2014), where these arguments vaguely labelled as "teaching methods" have been identified as part of the duties of a classroom instructor.  Notably, the Objections make no mention of the *Frieder* decision.  Although the District Court in *Kerr v. Hurd,* in March 2010, viewed itself as bound by earlier District Court precedents, the Sixth Circuit decisions should control here.  Second, the *Kerr v. Hurd* case is factually distinguishable since it related to what the Court viewed as an academic dispute, related to Kerr's alleged disagreements with his

Department Chair over the instruction and training of forceps use, the frequency with which forceps should be used, versus what Kerr allegedly argued was the overuse of surgery and caesarean delivery. *Kerr* is not a basis to allow Meriwether's claims over the way he called on students in his class to become speech protected by the First Amendment.

The Report correctly recommended dismissal of Meriwether's First Amendment retaliation claim, because Meriwether's "speech" at issue was pursuant to his responsibilities as University faculty, and was not on a matter of public concern. Meriwether's Objections are not supported by legal precedent, and are without merit. The Court should adopt the Report & Recommendation and dismiss this claim.

> **3.** **Objection 3: Meriwether's third objection, contending that his "content and viewpoint discrimination claims" should go forward, is without merit and should be dismissed.**

Professor Meriwether's third objection, that his "content and viewpoint discrimination" claims under the First Amendment should go forward, is without merit and should be dismissed. The litany of cases cited to support this objection demonstrates that they have nothing to do with the facts alleged in his Amended Complaint. The cases cited relate to city ordinances and/or state laws, and do not involve public employees in situations analogous to Meriwether's allegations. As discussed in the briefing in this case, and in the argument above related to Meriwether's First Amendment retaliation cases, the decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), recognizes a broad distinction in the application of the First Amendment in cases where the government is acting as sovereign over private citizens versus the ability of the government as an employer regulating the speech and conduct of its employees related to their official duties. *See Garcetti,* 547 U.S. at 419, *citing Waters v. Churchill,* 511 U.S. 661, 671 (1994)("[T]he government as employer indeed has far broader powers than does the government

as sovereign.") "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti,* 547 U.S. at 419, *citing Connick v. Myers,* 461 U.S. 138, 143 (1983)("[G]overnment offices could not function if every employment decision became a constitutional matter.") None of the cases cited to support these "content" or "viewpoint discrimination" claims are relevant to analysis of Meriwether's claims and this objection should be rejected.

The University defendants did not engage in "content" or "viewpoint discrimination", contrary to the unsupported arguments in the Objection(s). (Doc. #53, pp. 43 - 48, PAGEID #s 2303 - 2308). First, as the Report noted, Meriwether's speech in the classroom is not protected by the First Amendment, based on *Garcetti.* The Report also noted that Meriwether "has not stated a plausible claim that the Shawnee State nondiscrimination policies are overbroad on their face." (Doc. #49, p. 41, PAGEID # 2135). The Objections cite to a string of cases involving state laws and city ordinances about speech activities and public events that have nothing to do with public employers, and the ability of public institutions to regulate the speech of employees pursuant to their official duties. (Doc. # 53, Objections, pp. 44 – 47, PAGEID #s 2304 – 2307). The Objections cite *R.A.V. v. City of St. Paul,* 505 U.S. 377 (1992), a case involving a criminal ordinance and the prosecution of a citizen for burning a cross. It does not involve a public employee in the workplace, and again ignores the bright line the U.S. Supreme Court has drawn between the government regulating the speech of private citizens as a sovereign, and the government managing the conduct of its employees. As discussed above, this is "speech" about how to address students, which is not protected under *Garcetti.*

The other cases cited in support of this Objection are similarly irrelevant: *Reed v. Town*

*of Gilbert,* 135 S. Ct. 2218 (2015) (a town's Land Development Code placing more stringent restrictions on signs directing the public to meetings for a nonprofit group than it did on signs conveying other messages were content-based restrictions subject to strict scrutiny); *Riley v. Natl. Fed'n. Of Blind,* 487 U.S. 781 (1988) (the North Carolina Charitable Solicitations Act creation of multiple levels of "reasonable fees" and licensure requirements were a violation of right to free speech); *Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992) (county ordinance violated the First Amendment by tying the fee for assembling or parading to the content of the speech involved); *Rosenberger v. Rector & Visitors of the Univ. of Virginia,* 515 U.S. 819 (1995) (University administrators violated First Amendment by refusing to pay for printing costs of student publication based on the content of the publication, which was religious in nature but did not implicate Establishment Clause concerns); *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. Sch. Dist.,* 386 F.3d 514 (3rd Cir. 2004) (school district violated First Amendment by failing to treat plaintiff group the same as other community groups with regard to the distribution and posting of literature about the group's after school club and access to the school's property); *Southworth v. Bd. Of Regents of the Univ. of Wis. System,* 307 F.3d 566 (7th Cir. 2002) (plaintiff students challenged the mandatory student activity system fee system and the distribution of the funds in a way that was not viewpoint neutral); *Matwyuk v. Johnson,* 22 F. Supp. 3d 812 (W.D. Mich. 2014) (allowing First Amendment challenge to go forward to a Michigan state law allowing limitation of personalized vehicle license plates that "might carry a connotation offensive to good taste and decency"); *Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750 (1988) (a newspaper's challenge to a city ordinance prohibiting the placement of coin-operated newspaper stands on city sidewalks was a violation of the First Amendment). All of these cases involve the government as sovereign, where different legal analysis applies than in

this case, where the Plaintiff's claims are governed by caselaw interpreting the government's ability to regulate speech as an employer in this case, as recognized in *Garcetti* and *Connick v. Myers.*

Meriwether's main argument here seems to be that the nondiscrimination policies grant "unbridled discretion" to University administrators to regulate speech. However, since Meriwether's classroom "speech" was pursuant to his official duties, these arguments are without merit. The case law he cites does not support this legal argument for public employees at a University. Neither is this argument consistent with the factual allegations of the Amended Complaint. Meriwether's filings and the voluminous attachments, show a lengthy process. He received guidance multiple times in how to address the student and was given multiple options that would treat the student equally, and even though he understood the guidance he was given, he failed to follow those straightforward directives. The University's ultimate decision to uphold the written warning was not imposed because of any inadvertent slip-up or mistake on Meriwether's part during one classroom interaction, but because he repeatedly and unfairly singled out the student in a discriminatory manner. The "speech" in this instance occurred during Meriwether's class, during a course taught pursuant to University curriculum requirements, in a University classroom, and by a Professor who was compensated by the University and has been an employee of the University for over 20 years. Meriwether has not plausibly alleged that he was ever subject to potential discipline for conduct that occurred outside the University, and even if he did, a nexus could exist that would allow for the University to reasonably direct him to cease discriminatory conduct towards a student. *See, e.g., Piggee v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006).

The University's non-discrimination policy does not grant "unbridled discretion" to any

"government official"; Meriwether's own Amended Complaint demonstrates the extensive process available to him to protect him from a misapplication of the policy and an ability for him to challenge its application to his conduct.  Meriwether's third objection to the R & R is without merit, and should be rejected.

        **4.**        **Objection 4:  Meriwether's fourth objection that his "compelled speech" claim should go forward, is also without merit and should be dismissed.**

In his fourth objection, Meriwether does not state a claim for "compelled speech" for similar reasons cited in the arguments above, based above all on *Garcetti.*  The Objection merely cites to cases for general propositions that are not analogous to the facts alleged, or records attached to the Amended Complaint.  The Report recognizes that Meriwether was not even mandated to use any particular terms of speech to refer to the student.  (Doc. #49, p. 35, PAGEID # 2129).  Again, Meriwether's "speech" here was part of his responsibilities, and the Sixth Circuit has recognized that a university may constitutionally require a professor to provide detailed advice to students about the administrative aspects of a course.  *See Johnson-Kurek v. Abu-Absi,* 423 F.3d 590, 595 (6th Cir. 2005).

On this claim of "compelled speech", Meriwether's argument is particularly weak, since the Dean offered him the option of simply using the students' first names or last names, without articles/titles (i.e. "Mr." or "Ms.") when he addressed students in his class, and he rejected this option.  *See Doc. #34,* Amend. Comp. ¶¶ 153-55, and Exhibit 17, Dean's Letter of May 29, 2018.  The Objection(s) simply make the conclusory argument that these choices were "unreasonable" without any meaningful analysis or case law to support the position.  This claim should be dismissed.

        **5.**        **Objection 5:  Meriwether's fifth objection that his "unconstitutional conditions" claim should go forward, should also be dismissed.**

The Objections, as with previous briefing, continues to cite the U.S. Supreme Court's decisions in *Perry v. Sinderman,* 408 U.S. 593, 597 (1972), and *Turner Broad Sys., Inc. v. FCC,* 512 U.S. 622, 641 (1994) for broad, general propositions of First Amendment protections in support of the "unconstitutional conditions" argument asserted in the First Amended Complaint. The Objection does not respond to the reasoning in the Report & Recommendation, or cite to any caselaw undercutting the analysis of the Report.  Meriwether has still "not shown how his claim that he has been denied a benefit or will be denied a benefit on a ground that violates his free speech rights differs in any respect from his First Amendment retaliation claim, which fails for the reasons discussed *supra."*  (Doc. #49, p. 44, PAGEID # 2138).  Professor Meriwether has lost no salary and had no change in title or responsibilities as a tenured professor as a result of the "written warning" he received in 2018.  Since this "Fifth Cause of Action" simply restates Professor Meriwether's First Amendment retaliation arguments, and the perfunctory analysis in the Objections only addresses those issues in the most superficial way, this claim should be dismissed as well.

> **6. Objection 6:  Meriwether's sixth objection that his "Free Exercise" claim should go forward, should be dismissed.**

As with all of his claims, Meriwether's "Free Exercise" claim ignores controlling case law, recognizing the ability of the University to exercise control and discretion in a way that is neutral and generally applicable.  The R & R cited to a number of cases recognizing that the First Amendment's Free Exercise clause are not violated by laws and rules that are neutral and of general applicability.  (Doc. #49, R&R, p. 46, PAGEID # 2140).  Public officials may enforce neutral and generally applicable rules even if there is some incidental burden on faith-based conduct in the process.  *See Ward v. Polite,* 667 F.3d 727, 738 (6th Cir. 2012).  The Objections

again fail to discuss the specific factual allegations in this case, again reverting to general propositions of law instead of specific analysis. As discussed above in regard to the First Amendment retaliation claims, the classroom is not Professor Meriwether's personal forum to express his own political and religious ideas, it is a forum that is the responsibility of the University to maintain and he is an employee of the University. The Objections on this point again cite to general propositions of law without finding case law that applied these principles in a similar context to a public employee performing his duties. These policies are neutral and of general applicability; only a law that is <u>not</u> neutral or of general applicability "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *See Doe v. Cong. of the United States,* 891 F.3d 578, 591 (6th Cir. 2018) (free exercise challenge asserting that U.S. currency use of the motto "In God We Trust" motto promotes Christian monotheistic message), *quoting Church of the Lukumi Bablu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531-32 (1993). The nondiscrimination policies challenged by this lawsuit are part of the University's obligations under Title IX and Title VII, and fall into this category of neutral rules of general applicability.

The Objection(s) simply call the Defendants actions "hostile" without engaging in any meaningful analysis supported by precedent. The Supreme Court has held that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause[.]" *Doe,* 891 F.3d at 591, *quoting Holt v. Hobbs,* 135 S. Ct. 853, 859 (2015)(*citing Emp't Div., Dept. of Human Resources of Oregon v. Smith,* 494 U.S. 872, 878-82 (1990)). The nondiscrimination policy challenged here is neutral, based on federal and state laws prohibiting discrimination, and does not fall within precedents requiring a "compelling" governmental interest or that need be "narrowly tailored." A law, or the nondiscrimination

policies challenged in this case, is not neutral "if the object of [the] law is to infringe upon or restrict practices because of their religious motivation," or if the "purpose of [the] law is the suppression of religion or religious conduct." *Doe*, 891 F.3d at 591, *quoting Lukumi,* 508 U.S. at 533. Meriwether does not, and cannot, point to any language in these policies that suppresses his Christian religion beliefs or religious practices.

Neither does the Amended Complaint state a claim for some "as applied" challenge to the implementation of the policies in this case. His Amended Complaint states that he was first notified by his Union of the non-discrimination policy, and its applicability in the transgender context, back in August 2016. *See Doc. #34,* Amend. Comp. ¶¶ 106-07. He received written guidance from the Dean, had a fair and undisputed investigation, and received a written warning that he could and did challenge through his union. The policy is neutral on its face, and, given the straightforward, undisputed nature of the conduct he admits, his attempts to cast this as prejudiced against his Christian beliefs ignores the neutral, general applicability of the policy. That same general directive was enforced throughout.

Lastly, the Magistrate Judge was correct in discounting as implausible Meriwether's claim that the Defendants displayed "hostility" toward religion based on a non-supervisory colleague's alleged comments from more than a year before the events at issue, and the then-Provost's alleged "laugh" during a grievance meeting that covered a multitude of topics. (Doc. # 49, R&R, pp. 48-49, PAGEID # 2142-2143). To the contrary, the Defendants' respect for and sensitivity to Meriwether's religious briefs, and efforts to accommodate them, are evident throughout the attachments to the Amended Complaint.

Meriwether's objection on this point is without merit and should be overruled.

      **7. Objection 7: Meriwether's seventh objection that his "overbreadth" claim should go forward is also without merit and should be**

**dismissed.**

Professor Meriwether does not have a claim for due process violations, and the Objection(s) fail to identify any claim he can pursue on this point. Also without merit is Meriwether's (overlapping) claim, whether denominated as "due process" or "First Amendment" claim that the non-discrimination policies of the University are unconstitutionally overbroad or vague and "encompass a substantial amount of constitutionally protected speech" and that his "expression regarding gender identity is protected by the First Amendment." *See Doc. #34,* Amend. Comp.  ¶¶ 350-51.  The simple act of the use of a title or a pronoun during a class discussion is not First Amendment protected speech, based on *Garcetti, supra.*  In determining whether a policy is unconstitutionally overbroad, the Court first looks at whether "the regulation reaches a substantial amount of constitutionally protected speech."  *Leonardson v City of E. Lansing,* 89 F.2d 190, 195 (6th Cir. 1990).  Meriwether's argument fails on this point, as he only points to his own, unprotected speech to support his claims.  Only a policy that is "substantially overbroad" fails on its face.  *See Speet v. Schuette,* 726 F.3d 867, 872-73 (6th Cir. 2013), *citing City of Houston, Tex. v. Hill,* 482 U.S. 451, 458 (1987); *New York v. Ferber,* 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma,* 413 U.S. 601 (1973); *Carey v. Wolnitzek,* 614 F.3d 189, 208 (6th Cir. 2010).  Since Meriwether's lawsuit relies only on his own misunderstood interpretation of the First Amendment, he fails to state a claim that the policy is overbroad.

The Amended Complaint only generally alleges the policies are overbroad, that is, that they prohibit a substantial amount of protected speech, *see, e.g., Leonardson v City of E. Lansing*, 89 F.2d 190, 195 (6th Cir. 1990).  The Objection(s), as with the Amended Complaint, fail to identify any protected speech that is captured by these policies, since it focuses only on Meriwether's classroom interactions. Meriwether's overbreadth analysis fails to identify how the

policy is overbroad on its face, based on any applicable legal precedent, and simply repeats the same talking points, without examples and analysis. *See, e.g., Speet v. Schuette*, 726 F.3d 867, 872-73 (6th Cir. 2013); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 458 (1987); *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).  In this context "substantial" overbreadth means that the policy prohibits a "substantial amount of protected speech both in an absolute sense and relative to [the policy's] plainly legitimate sweep[.]" *Speet, supra, quoting Carey v. Wolnitzek*, 614 F.3d 189, 208 (6th Cir. 2010).  Professor Meriwether relies only on his own misunderstood interpretation of the First Amendment, and fails to state an overbreadth claim.  This objection should be overruled, and this claim should be dismissed.

> **8.  Objection 8:  Meriwether's eighth objection based on his "vagueness" claim is without merit and should be dismissed.**

The Objections reiterate many of the same overlapping arguments, based on case law that does not apply in this case, to contend that the University's non-discrimination policies are unconstitutionally "vague" and grant too much power to "less accountable university administrators."  (Doc. #53, p. 63, PAGEID # 2323).  As in the overbreadth analysis above, there is no due process claim that the University's policies are unconstitutionally vague.  *See Leonardson, supra; see also Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1183-84 (6th Cir. 1995).  The R&R cited to Plaintiff's own Amended Complaint and the numerous attachments, to recognize that the non-discrimination policies required professors to address and refer to students by pronouns and titles consistent with their gender identities and that using male pronouns and titles to address and refer to the student, and doing this in a manner inconsistent with how Meriwether addressed other students in his class, did not comply with the policy.  (Doc. #49, R&R pp. 55-56, PAGEID #s 2149 – 2150).

The conclusory argument that the policies are "unconstitutionally vague because they

grant University officials unbridled discretion in deciding what constitutes 'gender identity' and 'gender identity discrimination'", *Doc. #34,* Comp. ¶ 354, is belied by the attachments to Meriwether's filing.  He was notified multiple times on nondiscriminatory ways he could address the student, and he chose to ignore those notifications.  This is not a vagueness case where a Plaintiff can allege the policies either (1) deny fair notice of the standard of conduct applicable; or (2) constitute "an unrestricted delegation of power," inviting "arbitrary, discriminatory and overzealous enforcement."  *See, e.g., Leonardson,* 896 F.2d at 196, *quoting Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, (D.C. Cir. 1977).  Meriwether was notified by his Union of these standards in August 2016, and had multiple interactions with his Dean and Department Chair on the issue.  After a formal investigation, he was given only a written warning, which is not even an adverse action under well-established First Amendment case law, and he was afforded the opportunity to challenge the action through his Union and the Union's grievance process, which he began but abandoned for unknown reasons.

Professor Meriwether also only generally alleges that the University's policies are unconstitutionally vague.  *See Leonardson, supr*a; *see also Dambrot v. Cent. Michigan Univ*., 55 F.3d 1177, 1183-84 (6th Cir. 1995).  Meriwether again makes the conclusory argument that the policies grant University officials "unbridled discretion", (*Doc. #53*, p. 63, PAGEID# 2323).  Meriwether's filings and the voluminous attachments, however, show a lengthy process.  He received guidance multiple times in how to address the student and given multiple options that would treat the student equally, and even though he understood the guidance he was given, he failed to follow those straightforward directives.  The University's ultimate decision to uphold the written warning was not imposed because of any inadvertent slip-up or mistake on Professor Meriwether's part during one classroom interaction, but because he repeatedly and unfairly

singled out the student in a discriminatory manner. The "speech" in this instance occurred during Meriwether's class, during a course taught pursuant to University curriculum requirements, in a University classroom, and by a Professor who was compensated by the University and has been an employee of the University for over 20 years. Meriwether has not plausibly alleged that he was ever subject to potential discipline for conduct that occurred outside the University, and even if he did, a nexus could exist that would allow for the University to reasonably direct him to cease discriminatory conduct towards a student. *See, e.g., Piggee v. Carl Sandburg College*, 464 F.3d 667 (7th Cir. 2006).

Professor Meriwether's lawsuit is a similar attempt to challenge <u>conduct</u>-related policies, prohibiting discriminatory <u>conduct</u> and harassing <u>conduct</u>, under a superficial First Amendment analysis. The same arguments made here could be made regarding policies on equal employment opportunities, non-discrimination and discriminatory harassment for every employer in the United States who complies with Title IX for institutions of higher education, and Title VII of the Civil Rights Act of 1964, and various other federal and state non-discrimination laws. The vagueness and overbreadth doctrines are prudential doctrines, which are only relied upon by courts to strike down statutes (or policies) "as a last resort." *See Staley v. Jones*, 239 F.3d 769, 776-77 (6th Cir. 2001)(*quoting Broadrick v. U.S.,* 413 U.S. 601, 613 (1973)). "Sustaining a facial attack to the constitutionality of a state law … is momentous and consequential. It is an 'exceptional remedy.'" *Speet, supra, quoting Carey v Wolnitzek,* 614 F.3d 189, 201 (6th Cir. 2010). Meriwether's difference of opinion with the University's administration does not a constitutional claim make.

**9. Objection 9: Meriwether's ninth objection that his Equal Protection claim should go forward should be dismissed.**

Professor Meriwether's Objection(s) also fail to make any meaningful Objection to the

Defendants' Motion to Dismiss his Equal Protection claim, other than to cite general propositions from *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985), and *Plyler v. Doe,* 457 U.S. 202 (1987). The latter case involved a challenge to the state of Texas denying a public education to undocumented school age children, while the former case involved zoning regulations that arbitrarily excluded the developmentally disabled residents of group homes from an entire city in Texas. The R & R recommended dismissal of Meriwether's Equal Protection arguments and noted that "Plaintiff's equal protection claim is essentially a re-packaging of his First Amendment challenges, which for the reasons discussed above, fail to state a claim for relief." (Doc. #49, R&R, p. 61, PAGEID # 2155).

The Objection(s) contain almost no other analysis of Professor Meriwether's equal protection claims, and should arguably be treated as waived. To the extent he argues "Defendants' policies and actions have impinged on … [his] fundamental rights (*e.g.,* free speech, free exercise)", (Doc. #53, p. 66, PAGEID # 2326), his arguments are without merit, because he has not stated a claim for relief under the First Amendment. Although the lawsuit generally alleges that Meriwether is "similarly situated to other professors at the University", he alleges disparate treatment based upon his refusal to "endorse" concepts of "gender identity." *Doc. #34,* ¶¶ 358-59. His claim essentially restates his varied First Amendment claims which, as has been discussed above, are not based upon "speech" protected by the First Amendment.

Meriwether's equal protection claim simply misunderstands the Equal Protection clause. The Equal Protection Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally." *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005). Essentially, the Amended Complaint alleges an archaic "class of one" theory of the Equal Protection Clause that has been dismissed by the U.S. Supreme Court. *See Engquist v. Oregon*

*Dept. of Agriculture,* 553 U.S. 591, 598 (2008) ("[T]he class of one theory of equal protection does not apply in the public employment context."). Meriwether's claim is based on his conduct in the classroom, and that is his only argument for a denial of equal protection; it is not based upon any recognized theory of an "arbitrary classification" under the Equal Protection clause.

Because he has failed to put forth any meaningful analysis as to why his equal protection claim should go forward, the claim should be dismissed.

**B.** **Meriwether's state law claims were not asserted in any response to the Motion(s) to Dismiss, and the Report & Recommendation properly recommended that the claims be dismissed**

Meriwether essentially waived his state law claims by failing to respond to the arguments in the Motion(s) to dismiss, and again failing to include these arguments in his Objections. The Report & Recommendation also found that these state law claims were without merit. (Doc. #49, pp. 61-62, PAGEID # 2155-56).

No discussion is made of these state law claims, so the Court should dismiss them as well.

## CONCLUSION

For the foregoing reasons, the Shawnee State University Defendants submit that the Plaintiff's Objections to the Report & Recommendation are without merit, and the Court should adopt the R & R and dismiss this case.

Respectfully submitted,

DAVE YOST (0056290)
Ohio Attorney General

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*

HANNAH STONEBURNER (0092480)
Assistant Attorneys General
Education Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215-3167
(614) 644-7250 – Telephone
(614) 644-7634 – Facsimile
Rory.callahan@ohioattorneygeneral.gov
Hannah.stoneburner@ohioattorneygeneral.gov

ANNA M. SEIDENSTICKER (0046761)
Principal Assistant Attorneys General
Ohio Attorney General's Office
Employment Law Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215-3167
(614) 644-7257 – Telephone
(614) 752-4677 – Facsimile
elsreview@ohioattorneygeneral.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November, 2019, a true and accurate copy of the foregoing *Defendants' Response to Plaintiff's Objections (Doc. #53) to the Report & Recommendation (Doc. #49)* was electronically filed. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Rory P. Callahan*

RORY P. CALLAHAN (0072021)
*Trial Counsel*
Principal Assistant Attorney General